PRYOR CASHMAN LLP
  Ilene S. Farkas (*pro hac vice forthcoming*)
  ifarkas@pryorcashman.com
  M. Mona Simonian (*pro hac vice forthcoming*)
  msimonian@pryorcashman.com
  Marion R. Harris (*pro hac vice forthcoming*)
  mharris@pryorcashman.com
  Brian M. Maida (*pro hac vice forthcoming*)
  bmaida@pryorcashman.com
7 Times Square
New York, New York 10036
Phone: (212) 421-4100
Fax: (212) 326-0806

BRAUNHAGEY & BORDEN LLP
  Adam S. Cashman (State Bar No. 255063)
  cashman@braunhagey.com
747 Front Street, 4th Floor
San Francisco, California 94111
Phone: (415) 599-0210
Fax: (415) 599-0210

Attorneys for Plaintiff *Epidemic Sound, A.B.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| EPIDEMIC SOUND, AB,<br><br>            Plaintiff,<br><br>    vs.<br><br>META PLATFORMS, INC., f/k/a FACEBOOK, INC.,<br><br>            Defendants. | CASE NO. 3:25-cv-10355<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Epidemic Sound, AB ("Epidemic" or "Plaintiff"), by its attorneys, Pryor Cashman LLP and BraunHagey & Borden LLP, as and for its complaint against defendant Meta Platforms, Inc., f/k/a Facebook, Inc. ("Meta" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1.     On July 20, 2022, Epidemic sued Meta for its massive infringement across Epidemic's music catalog (the "First Suit").[1]  Since that time, Meta has continued to infringe Epidemic's catalog of works, which now includes over 50,000 works.  Despite having been on notice of its infringement of Epidemic's works, despite having been sued in July 2022 by Epidemic for infringement, and despite that the fact that Meta was actively and repeatedly infringing the representative works in the First Suit's complaint even during the pendency of the suit, Meta's infringement continues, and now extends to Epidemic's newly-released works as well.  A representative list of infringed works that have been identified as of the date of this Complaint are listed on Exhibit A hereto, which list may be amended as additional infringed works are discovered (the "Works").  Each of the Works was registered after the First Suit was commenced.  This action seeks to hold Meta responsible for its continued and willful theft of Epidemic's music.

2.     Epidemic is the owner of both the sound recordings and underlying musical compositions within its catalog.  When its works are exploited without authorization, Epidemic fiercely protects its intellectual property rights, not only for itself but for its licensed content creators.

3.     Meta has not secured a license from Epidemic for the use of its copyrighted music on its platforms or paid Epidemic or its artists a penny for the infringing uses of its music at issue herein.  Yet, Meta is offering Epidemic's music to Meta's billions of users for free in Meta's audio library and is also enabling massive infringement through its Original Audio tool that promotes and permits viral free synchronization of Epidemic's copyrighted music to its users without authorization from or remuneration to Epidemic.

---

[1] The First Suit is captioned, *Epidemic Sound, AB v. Meta Platforms, Inc.*, Case No. 3:22-cv-04223-JSC, and remains active before Judge Jacqueline Scott Corley.

COMPLAINT
CASE NO. 3:25-CV-10355

4. Meta has ignored Epidemic's repeated notices of Meta's own infringement of Epidemic's works for years. Meta has continued to refuse Epidemic's repeated requests for access to the appropriate tools Meta offers other rightsholders that would help Epidemic identify and stop infringement. And Meta has refused to cease its infringement, to obtain the necessary authorization to use Epidemic's works, or to compensate Epidemic and its artists. In fact, Meta's direct infringement of copyrighted works has only become more brazen.

5. Epidemic is a global music label, publisher and technology company whose mission is to support music creators so that they can be paid for what they do: create music for the world to enjoy. Epidemic is the owner of a catalog of over 50,000 top quality music works in over 160 genres – all of which were created by Epidemic's artists, for Epidemic. Epidemic's music is also often used in video content, in television and film productions, podcasts and is available on music streaming platforms. Epidemic collaborates with both up-and-coming producers, composers, musicians, and artists from around the globe and established artists (such as Grammy-nominated and multi-platinum artist Jordin Sparks; Grammy-winning artist Ebo Krdum; and Arc De Soleil, a composer, producer and multi-instrumentalist with millions of monthly listeners on Spotify, to name a few), offering continuous and comprehensive support for the creation of the cutting-edge music that makes up its catalog.

6. This action seeks to address the continued theft of music created by hundreds of musicians, songwriters, producers and vocalists, theft occurring knowingly, intentionally and brazenly by Meta on its social media platforms on a daily basis, without authorization from or compensation to Epidemic. Defendant Meta is not merely aware of this infringement. It is actively infringing, as well as participating in, encouraging, enabling and profiting from such infringement.

7. In fact, Meta has created and offered tools to its billions of users, whose primary purpose is to increase the amount of theft of unlicensed music on its platforms, including Facebook, Instagram and WhatsApp. Meta is stealing at least thousands of Epidemic's songs at any given moment, though only Meta knows the true extent of its infringement because Meta purposefully handcuffs Epidemic's ability to discover the unauthorized use of its works on Meta's platforms.

8.    Specifically, Meta has been offering Epidemic's works through its "Audio Library" – Meta's curated collection of purportedly (but not actually) licensed music tracks made available to its billions of users to exploit in connection with content posted on Meta's platforms.

9.    Meta also created and continued to develop tools such as "Original Audio" – which allow its users to steal Epidemic's unlicensed music from another user's posted video content and synchronize Epidemic's music with their own subsequent videos, resulting in exponential infringements on Meta's platform, at Meta's hands.

10.    The Original Audio and Reels Remix tools are available on Meta's platforms. In fact, these tools have been expanded since the First Suit was commenced. Meta now makes unlicensed "Original Audio" available in its Audio Library, allowing its users to search for, select, and incorporate unlicensed "original audio" into its content from its curated Audio Library. This has only compounded the manner and frequency in which Epidemic's music is being infringed.

11.    This case is not about individual users posting infringing works in user-generated content ("UGC") that Meta has failed to take down. Rather, this case is about Meta *itself* actively and directly infringing Epidemic's works by offering these unlicensed works in Meta's Audio Library and by enabling features that allow and encourage users to easily rip, search for, select, reproduce and synchronize Epidemic's music without authorization and without compensation to Epidemic. Put simply, this case is about *Meta's conduct*, not its users.

12.    Epidemic has repeatedly put Meta on notice of its infringement and has tried to engage in a meaningful dialogue with Meta so that Epidemic's intellectual property can be protected and licensed, to no avail.

13.    Epidemic hereby sues for: (i) Meta's direct and/or secondary infringement of Epidemic's copyrights in and to the sound recordings of the Works; (ii) Meta's direct and/or secondary infringement of Epidemic's copyrights in and to the musical compositions of the Works; (iii) a finding that such infringements are willful; (iv) a permanent injunction enjoining Meta's infringing conduct; (v) damages, statutory or otherwise for Meta's infringement of the Works; (vi) Epidemic's costs, including reasonable attorneys' fees; (vii) prejudgment and post-judgment

1    interest according to law; and (viii) such other and further relief as this Court deems just and

2    proper.

3                                           **PARTIES**

4        14.    Plaintiff Epidemic is a global leader in the music industry and is the owner,

5    producer, and distributor of over 50,000 world-class music tracks.

6        15.    Epidemic partners with its songwriters, artists and producers in creating new music,

7    facilitating the distribution of their works on music streaming platforms, and licensing the use of

8    their music in online video content, podcasts, television and film production, and other media so

9    that they can share their music, increase their visibility, and be compensated for their work.

10       16.    Epidemic is organized under the laws of Sweden (company registration number

11   556781-0899) with its principal place of business at Vastgotagatan 2, 118 27 Stockholm, Sweden.

12       17.    Upon information and belief, Defendant Meta is one of the most well-known social

13   media and technology companies in the world.  Meta owns and operates, among other things, the

14   widely used social media platforms and apps Facebook, Instagram and WhatsApp.  Meta has over

15   80 offices worldwide with its headquarters located at 1 Meta Way, Menlo Park, California 94025.

16                                **JURISDICTION AND VENUE**

17       18.    This Court has jurisdiction over this action pursuant to 17 U.S.C. §§ 101 *et seq*., 28

18   U.S.C. §§ 1331, 1338, and 1367 because the action involves claims arising under the Copyright

19   Act.

20       19.    Upon information and belief, this Court has personal jurisdiction over Defendant

21   Meta as it maintains its principal place of business within the State of California and transacts

22   business within the State of California.

23       20.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the

24   events or omissions giving rise to the claim occurred, and Meta maintains a principal place of

25   business within the Northern District of California.

26

27

28

COMPLAINT
CASE NO. 3:25-CV-10355

**DIVISIONAL ASSIGNMENT**

21.     Under Northern District of California Local Rule 3-2(d), this case is properly assigned to the San Francisco or Oakland Divisions because a substantial part of the events or omissions giving rise to the claim occurred in San Mateo County.

**FACTUAL ALLEGATIONS**

I.     **META'S INFRINGEMENT OF EPIDEMIC'S MUSIC**

22.     Epidemic owns all rights in and to the sound recordings and the underlying musical compositions for all works in its music catalog, including the Works.

23.     In order to use Epidemic's extensive catalog of music, Epidemic requires users to enter into a license with Epidemic.

24.     Epidemic's tracks, including the Works, are made available for license to commercial users including social media platforms, streaming services, production companies, and other commercial entities through license agreements, subject to specific negotiated written terms.

25.     Despite the lack of any license to Meta permitting it to make Epidemic's tracks available for its billions of users, and despite the repeated demands made by Epidemic to Meta to cease its infringement, Meta has been offering, and continues to offer, Epidemic's music, including the Works, to all users on Meta's platforms such as Facebook and Instagram, through its Audio Library and through its Original Audio and Reels Remix tools, without authorization.

26.     Attached hereto as **Exhibit A** is a list of the 1000 Works that provide a representative sample of Epidemic tracks that Meta is infringing through its Audio Library and/or its Original Audio feature, which list may be amended as discovery reveals additional infringed works.  The federal copyright registration numbers for each of the Works deposited with the U.S. Copyright Office are also identified on Exhibit A**.**

27.     Each of the Works was registered after the commencement of the First Suit.

**A.  The Works In The Audio Library**

28.     Meta has been storing, curating, reproducing, performing, distributing, and otherwise exploiting Epidemic's music on a daily basis, without a license.  Meta has created a

curated library of music that Meta populates, stores, manages, organizes makes available to its users of its social media platforms – the Audio Library – for saving, streaming, and synchronization of such music in video content and posts.

29.     Meta has included at least 500 of the Works in its Audio Library and has stored, reproduced, made available, and distributed these Works to its users without a license.

30.     Each of these Works was registered by Epidemic with the United States Copyright Office after Epidemic's filing of the First Suit. [2]

31.     Meta's inclusion of the Works in its Audio Library enables billions of unlicensed Meta users to, among other things, save, stream, and synchronize Epidemic's music with visual content posted on Meta's platforms, without authorization from or compensation to Epidemic.  In fact, Meta recognizes that it must pay for these uses; it pays third parties with no ownership rights in any of the Works.

32.     Meta itself controls the selection of music in its Audio Library.  Meta decides whether it wants to include a company's music in the Audio Library and, when it does, it enters into a license to do so.  When Meta decides it no longer wants to include a company's music in the Audio Library (or when the aforementioned licenses expire and are not renewed, for whatever reason), Meta removes the company's music from the Audio Library.

33.     Epidemic has not authorized Meta, nor any record label, music publisher, administrator, or distributor to make the Works available in the Audio Library.

34.     Meta is deriving substantial financial benefit through advertising revenues and increased user engagement derived from the inclusion of the Works in its Audio Library.

35.     Meta has not shared, and is not sharing, any portion of such revenues with Epidemic in connection with the unauthorized use of the Works (or any other music owned by Epidemic) and has not renumerated Epidemic in any way for the use of such Works (or any other music owned by Epidemic) in the Audio Library.  Instead, Meta has paid third parties hundreds of

---

[2] As shown in Exhibit A, Epidemic has registered its rights in the sound recording and/or embodied musical composition for the Works.  To be clear, however, Epidemic owns all rights in the sound recording and embodied musical composition for its catalog, including the Works.

millions of dollars while they (along with Meta) profit from their unauthorized use of Epidemic's works.

**B. The Original Audio And Reels Remix Features**

36.     The Works are also being infringed by Meta's tools, such as "Original Audio" and "Reels Remix" features, which Meta makes available to users to enable, encourage, and contribute to the massive infringement of Epidemic's works.

37.     Meta users are given the ability by Meta to create and post audiovisual content called "Reels," which, upon information and belief, are video posts often accompanied by an audio component, such as music.  True and correct copies of the public pages on Instagram's website entitled "Record a reel on Instagram" and Facebook's website entitled "Create a reel on Facebook" are attached hereto as **Exhibit B**.

38.     Upon information and belief, Reels can be as long as 20 minutes on Instagram.  (Ex. B at 1.)

39.     In addition to accessing Meta's Audio Library to add music to a Reel, a user may also add to a Reel their own music or the music from another user to the post.  Meta refers to this unlicensed music as "original audio."  A true and correct copy of the public pages of Facebook and Instagram's websites describing how music is added to a Reel on the respective platforms is attached hereto as **Exhibit C**.

40.     Meta's Instagram website describes Original Audio as "unique audio you created, either while filming your reel in the Instagram app or in a video you uploaded, or unique audio by another Reels creator."  A true and correct copy of the public page from the Instagram website entitled "What audio you can use in your reel on Instagram" is attached hereto as **Exhibit D**.

41.     The site further states "When you post a reel on a public account, anyone on Instagram, the Meta AI app or Meta AI website can record a reel using your original audio. . . If you upload licensed audio as original audio, we may change the description to the artist's name and song."  (Ex. D at 1.)

42.     Meta's Instagram website distinguishes Original Audio from "Licensed" audio, describing the latter as "copyrighted audio available on the Instagram audio library and includes

things like music, movies, TV shows and sound effects. All licensed audio must be attributed or linked to the artist and include the name of the track." (*Id.*)

43. Meta defines Original Audio as all audio that is not the licensed audio available in the Audio Library.

44. Meta's Original Audio tool allows the "original audio" to be "ripped" or separated from the video content of any public Reel, and a copy of that audio used, including by downloading, saving it to a personal music library, or synchronizing it in that user's own Reel, post or other audiovisual content.

45. Meta acknowledges that this unlimited copying, sharing, synchronization and distribution of unlicensed music is the intention behind the Original Audio feature, stating publicly on Instagram's website: "[w]hen you post a reel on a public account, anyone on Instagram, the Meta AI app or Meta AI website can record a reel using your original audio." (*Id.*)

46. Meta's Facebook website page entitled "How your original audio in reels is shared on Facebook" also includes a similar acknowledgement, stating "When you share a reel on Facebook with a public audience, if the reel doesn't have added music or someone else's original audio from the Audio Library, the sound in the reel will be attributed to you as your original audio. Other people can use your original audio in their reels and your attribution will appear in their reel." A true and correct copy of that Facebook website page is attached hereto as **Exhibit E**.

47. Upon information and belief, when users engage the Original Audio feature, Meta's systems extract, or separate the music from the original video content in which it was incorporated, and reproduce it.

48. Upon information and belief, Meta actually stores and maintains the original audio reproductions on its systems

49. Upon information and belief, Meta itself reproduces and distributes the unlicensed music through its Original Audio and Reels Remix features, to any of its billions of users to incorporate into their own video content.

50. Epidemic's music, including several of the Works, have been ripped and reused from Reels by Meta and its users multiple times without a license or proper authorization.

51.    In addition to allowing exponential reproduction and reuse of unlicensed music with the Original Audio feature, Meta has also expanded the feature to incorporate "original audio" into its Audio Library, allowing its users to search for, select, and incorporate popular "original audio" directly from the Audio Library.

52.    By incorporating such "original audio," or unlicensed music, Meta has allowed, and actively markets, music that it knows to be unlicensed to be utilized across its platforms, financially benefiting from this activity.

53.    In addition to the Original Audio feature, Meta also offers the Reels Remix feature, which is a tool offered to Meta's users that allows a user to incorporate another user's Reel into their own, including any audio that was included in the original Reel, thereby creating a new and original "remix" of the original Reel.

54.    Meta acknowledges that this is the intended use of the feature, stating publicly on its website:  "When you remix a reel, your reel will be shown with the original reel.  Your remixed reel will use the audio from the original reel, unless you replace it with your own original audio."  A true and correct copy of a Facebook "Help Center" webpage concerning use of Reels Remix is attached hereto as **Exhibit F**.

55.    This Reels Remix feature enables, encourages, and contributes to exponential infringement of works, by allowing one user's use of copyrighted music to be replicated in other users' Reels without limitation irrespective of whether Meta or the user has a license to use the music in this manner.

56.    Upon information and belief, when the Reels Remix tools is used, Meta's systems reproduce and distribute the audiovisual content being remixed, including the music content being remixed.

57.    A substantial number of Epidemic's Works have been and are being reproduced without authorization on Meta's platforms through Meta's Original Audio and Reels Remix features.

58.    By providing its users with the tools like Original Audio and Reels Remix, Meta has provided its billions of users with tools that are intended to and do encourage all of its users to

1    take Epidemic's Works and synchronize them to their Reels and other content on Meta's platforms

2    without a license.

3        59.    Epidemic's Works have been reproduced and distributed by Meta through the

4    Original Audio and Reels Remix tools without authorization.

5    **II.    META REFUSES EPIDEMIC ACCESS TO THE TOOLS DESIGNED TO HELP**

6        **MUSIC RIGHTSHOLDERS IDENTIFY AND ADDRESS INFRINGEMENT**

7        60.    Meta has stonewalled Epidemic's efforts to protect its valuable catalog, including

8    the Works at issue.

9        61.    Meta, like other media platforms, offers content creators and licensors certain rights

10   management tools for the purpose of identifying, protecting and monitoring the unauthorized use

11   of its content.

12       62.    Meta publicly describes its right management tool, called "Rights Manager," as a

13   "copyright management tools that help rights holders manage, authorize and protect their video,

14   audio and image content on Facebook and Instagram."  A true and correct copy of the "Rights

15   Manager and content protection eligibility requirements" page available on the facebook.com

16   webpage is attached hereto as **Exhibit G**.

17       63.    Meta states that such rights management tools are intended "for content creators

18   who want to protect their works on Facebook and Instagram at scale." A true and correct copy of

19   the "Request access to Rights Manager" page on the facebook.com webpage is attached hereto as

20   **Exhibit H**.

21       64.    While Meta allowed Epidemic to access its rights management tool for video

22   content (called "Rights Manager Pro"), it has repeatedly refused Epidemic's requests for access to

23   its rights management tool specifically designed for owners of music content (called "Rights

24   Manager for Music").  The names speak for themselves.

25       65.    Upon information and belief, Meta readily provides other rightsholders in the music

26   industry with access to Rights Manager for Music to help them monitor and protect their

27   intellectual property.

28

COMPLAINT
CASE NO. 3:25-CV-10355

66.     Meta has withheld this tool from Epidemic, despite repeated requests for such access, leaving Epidemic without proper recourse or the ability to deal with the rampant infringement of the Works on Meta's platforms.

67.     Epidemic's requests for Rights Manager for Music continued during the First Suit, but Meta has not provided Epidemic with access to Rights Manager for Music.

68.     Rather, Meta threatened to restrict or revoke Epidemic's access to Rights Manager altogether.

69.     Meta's unjustified, unexplained and knowing refusal to provide Epidemic with access to Rights Manager for Music has hampered Epidemic's ability to protect its copyrighted music, including the Works, and has enabled and continues to contribute to Meta's infringement of Epidemic's music on Meta's platforms.

**III.    META'S INFRINGEMENT IS WILLFUL**

70.     Meta is and has been on notice for years of its infringement of Epidemic's music on its platforms, including in Meta's own Audio Library and through Meta's Original Audio and Reels Remix tools.

71.     In advance of the commencement of the First Suit, Epidemic repeatedly advised Meta of the infringement of its works in Meta's Audio Library and through the Original Audio and Reels Remix tools.

72.     Upon information and belief, the infringement of the Works at issue herein has been identified by Meta's own systems.

73.     Despite being on notice of the infringement, Meta continues to infringe the Works through its Audio Library and through its Original Audio and Reels Remix tools.

74.     Upon information and belief, Meta has taken no steps to prevent further infringement of Epidemic's music, including the infringement of Epidemic's Works.

75.     Meta is aware that it requires a license from copyright owners such as Epidemic to offer copyrighted music in the Audio Library.

76.     It is public knowledge that Meta has entered into, and continues to enter into, licenses with record labels, music publishers, distributors, and other music rightsholders and

administrators, and pays to license this music and make it available to its users for use in audiovisual content, including through the Audio Library and the Original Audio and Reels Remix tools, without violating the intellectual property rights of the content owners.

77.    Meta itself has claimed that its agreements with music rightsholders "are designed to protect artists, songwriters, and their works."  A true and correct copy of the relevant Facebook webpage, and the relevant Instagram webpage, are attached hereto as **Exhibit I**.

78.    Meta's knowing, intentional use of Epidemic's copyrighted works without authorization constitutes willful infringement of the Works.

**FIRST CAUSE OF ACTION**

**(Direct Copyright Infringement, Sound Recordings)**

79.    Epidemic incorporates the allegations contained above in paragraphs 1 through 78 as if fully restated herein.

80.    Epidemic owns all right, title and interest, including, where reflected on Exhibit A, a federally registered copyright, in and to the sound recordings of the Works.

81.    Without authorization, Meta was and is storing, reproducing, distributing, and performing to the public Epidemic's sound recordings embodied in the Works in violation of Epidemic's rights under 17 U.S.C. §§ 106 and/or 114.

82.    Without authorization, Meta is distributing, or causing to be distributed, unauthorized reproductions of Epidemic's copyrighted sound recordings embodied in the Works , by offering, reproducing, and distributing the Works for streaming, synchronization and other uses to users through the Audio Library and its Original Audio and Reels Remix tools, in violation of Epidemic's exclusive reproduction and distribution rights under 17 U.S.C. §§ 106 and/or 114.

83.    Upon information and belief, each time a user requests a copy of one of Epidemic's copyrighted Works through the Audio Library, Meta makes a perfect, fixed digital copy of the sound recording and transfers it to the user in violation of Epidemic's exclusive reproduction and distribution rights under 17 U.S.C. §§ 106 and/or 114.

84.    Upon information and belief, each time a user requests to stream a copy of one of Epidemic's copyrighted Works available through its Audio Library, Meta publicly performs the

1    sound recording through a digital audio transmission to the user in violation of Epidemic's

2    exclusive reproduction and performance rights under 17 U.S.C. §§ 106 and/or 114.

3         85.    Upon information and belief, each time a user requests to synchronize a copy of

4    one of Epidemic's copyrighted Works available through its Audio Library into a user's on-

5    platform content, Meta reproduces, distributes and synchronizes the sound recording into the

6    user's content in violation of Epidemic's exclusive rights under 17 U.S.C. §§ 106 and/or 114.

7         86.    Upon information and belief, each time a user employs Meta's Original Audio and

8    Reels Remix tools from a post containing an Epidemic Work, Meta reproduces a perfect, fixed

9    digital copy of Epidemic's copyrighted sound recording and distributes same to users in violation

10    of Epidemic's exclusive reproduction and distribution rights under 17 U.S.C. §§ 106 and/or 114.

11         87.    Meta's acts of infringement are willful, intentional and purposeful, in disregard and

12    indifferent to Epidemic's rights.

13         88.    As a direct and proximate result of Meta's infringement of Epidemic's copyrights

14    and exclusive rights under copyright, Epidemic is entitled to maximum statutory damages,

15    pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or

16    such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Epidemic's

17    election, pursuant to 17 U.S.C. §504(b), Epidemic shall be entitled to their actual damages,

18    including Meta's profits from infringement, as will be proven at trial.

19         89.    Epidemic is also entitled to its costs, including reasonable attorneys' fees, pursuant

20    to 17 U.S.C. § 505.

21         90.    Meta's conduct is causing and, unless enjoined by this Court, will continue to cause

22    Epidemic great and irreparable injury that cannot be fully compensated or measured in money

23    damages.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Epidemic is

24    entitled to a permanent injunction prohibiting infringement of Epidemic's copyrights and exclusive

25    rights under copyright.

26

27

28

**SECOND CAUSE OF ACTION**

**(Direct Copyright Infringement, Musical Compositions)**

91.     Epidemic incorporates the allegations contained above in paragraphs 1 through 78 as if fully restated herein.

92.     Epidemic owns all right, title, and interest, including, where reflected on Exhibit A, a federally registered copyright, in and to the musical compositions embodied in the Works as listed on Exhibit A.

93.     Without authorization, Meta was and is storing, reproducing, distributing, and performing to the public Epidemic's copyrighted musical compositions embodied in the Works in violation of 17 U.S.C. § 106.

94.     Without authorization, Meta is distributing, unauthorized reproductions of Epidemic's copyrighted musical compositions embodied in the Works by offering such works for streaming, saving, synchronization and other uses to users through the Audio Library and its Original Audio and Reels Remix tools, in violation of Epidemic's exclusive reproduction and distribution rights under 17 U.S.C. §106.

95.     Upon information and belief, each time a user requests a copy of one of Epidemic's copyrighted musical compositions embodied in the Works available through the Audio Library, Meta makes a perfect, fixed digital copy of the musical composition and transfers it to the user in violation of Epidemic's exclusive reproduction and distribution rights under 17 U.S.C. §106.

96.     Upon information and belief, each time a user requests to stream a copy of an Epidemic's copyrighted musical compositions embodied in the Works available through its Audio Library, Meta publicly performs the work through a digital audio transmission to the user, in violation of Epidemic's exclusive reproduction and performance rights under 17 U.S.C. § 106.

97.     Upon information and belief, each time a user requests to synchronize a copy of an Epidemic's copyrighted musical compositions embodied in the Works available through its Audio Library, Meta reproduces, distributes and synchronizes the musical composition embodied in the Work, in violation of Epidemic's exclusive rights under 17 U.S.C. § 106.

98.     Upon information and belief, each time a user employs Meta's Original Audio and Reels Remix tools, Meta reproduces a perfect, fixed digital copy of Epidemic's copyrighted musical compositions embodied in the Works and distributes same to users in violation of Epidemic's exclusive reproduction and distribution rights under 17 U.S.C.§ 106.

99.     Meta's acts of infringement are willful, intentional and purposeful, in disregard and indifferent to Epidemic's rights.

100.    As a direct and proximate result of Meta's infringement of Epidemic's copyrights and exclusive rights under copyright, Epidemic is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Epidemic's election, pursuant to 17 U.S.C. § 504(b), Epidemic shall be entitled to their actual damages, including Meta's profits from infringement, as will be proven at trial.

101.    Epidemic is also entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

102.    Meta's conduct is causing and, unless enjoined by this Court, will continue to cause Epidemic great and irreparable injury that cannot be fully compensated or measured in money damages.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Epidemic is entitled to a permanent injunction prohibiting infringement of Epidemic's copyrights and exclusive rights under copyright.

**THIRD CAUSE OF ACTION (In the Alternative)**

**(Inducement of Copyright Infringement, Sound Recordings)**

103.    Epidemic incorporates the allegations contained above in paragraphs 1 through 78 as if fully restated herein.

104.    Epidemic owns all right, title and interest, including, where reflected on Exhibit A, a federally registered copyright, in and to the sound recordings of the Works.

105.    The sound recordings of the Works have been and are being illegally reproduced, distributed, and publicly performed without authorization on Meta's platforms in violation of 17 U.S.C. § 501 et seq.

106.    Meta is secondarily liable under the Copyright Act for its users' direct infringement of Epidemic's exclusive right to reproduction each time they save, stream or synchronize a copy of Epidemic's Works from Meta's Audio Library and each time a user uses the Original Audio and/or Reels Remix tools to create a video incorporating the Works.

107.    Meta operates, maintains and controls the Audio Library and the Original Audio and Reels Remix tools, which are intended, and encourage its users, to infringe Epidemic's copyrighted sound recordings in the Works.

108.    Meta's Audio Library and the Original Audio and Reels Remix tools provide Meta's users with the ability and tools to infringe.  Meta's inducement of copyright infringement is apparent from, among other things, the predominantly infringing Epidemic content available on Meta's platforms; Meta's unauthorized inclusion of Epidemic's Works in its curated Audio Library; the promotion, ease, and accessibility of the Original Audio and Reels Remix features, which allow users to reproduce Epidemic's Works without authorization through a single click; Meta's expansion of the Original Audio feature, which now curates unlicensed music and permits users to incorporate that music, including Epidemic's Works, from the Audio Library, alongside and in the same manner as music Meta pays for; and Meta's business model, which is dependent on the Audio Library and Original Audio and Reels Remix tools to keep up with other video content platforms at the expense of copyright owners.

109.    Meta is capable of removing infringing works from the Audio Library and disabling the Original Audio and Reels Remix tools.  It did not do so.

110.    Meta unlawfully induced the direct infringement of Epidemic's copyrighted sound recordings, including those listed in Exhibit A, in violation of Epidemics' exclusive rights under the copyright laws of the United States.  17 U.S.C. §§ 106 and/or 114.

111.    Meta's acts of infringement are willful, intentional and purposeful, in disregard and indifferent to Epidemic's rights.

112.    As a direct and proximate result of Meta's Audio Library and Original Audio and Reels Remix tools, which infringe on Epidemic's copyrights and exclusive rights under copyright, Epidemic is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount

of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Epidemic's election, pursuant to 17 U.S.C. §504(b), Epidemic shall be entitled to their actual damages, including Meta's profits from infringement, as will be proven at trial.

113.  Epidemic is also entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

114.  Meta's conduct is causing and, unless enjoined by this Court, will continue to cause Epidemic great and irreparable injury that cannot be fully compensated or measured in money damages.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Epidemic is entitled to a permanent injunction prohibiting infringement of Epidemic's copyrights and exclusive rights under copyright.

**FOURTH CAUSE OF ACTION (In the Alternative)**

**(Inducement of Copyright Infringement, Musical Compositions)**

115.  Epidemic incorporates the allegations contained above in paragraphs 1 through 78 as if fully restated herein.

116.  Epidemic owns all right, title, and interest, including where reflected on Exhibit A, a federally registered copyright, in and to the musical compositions embodied in the Works.

117.  The musical compositions embodied in the Works have been and are being illegally reproduced, distributed, and publicly performed without authorization on Meta's platforms in violation of 17 U.S.C. § 501 et seq.

118.  Meta is secondarily liable under the Copyright Act for its users' direct infringement of Epidemic's exclusive right to reproduction each time they save, stream or synchronize a copy of Epidemic's Works from Meta's Audio Library and each time a user uses the Original Audio and/or Reels Remix tools to create a video incorporating the Works.

119.  Meta operates, maintains and controls the Audio Library and the Original Audio and Reels Remix tools, which are intended to encourage Meta's users to infringe Epidemic's copyrighted musical compositions embodied in the Works.

120.    Meta's Audio Library and its Original Audio and Reels Remix tools provide Meta's users with the ability and tools to infringe.  Meta's inducement of copyright infringement is apparent from, among other things, the predominantly infringing Epidemic content available on Meta's platforms; Meta's unauthorized inclusion of Epidemic's Works in its curated Audio Library; the promotion, ease, and accessibility of the Original Audio and Reels Remix features, which allow users to reproduce Epidemic's Works without authorization through a single click; Meta's expansion of the Original Audio feature, which now curates unlicensed music and permits users to incorporate that music, including Epidemic's Works, from the Audio Library, alongside and in the same manner as music Meta pays for; and Meta's business model, which is dependent on the Audio Library and the Original Audio and Reels Remix tools to keep up with other video content platforms at the expense of copyright owners.

121.    Meta is capable of removing infringing works from the Audio Library and disabling the Original Audio and Reels Remix tools.  It did not do so.

122.    Meta unlawfully induced the direct infringement of Epidemic's copyrighted musical compositions embodied in the Works, in violation of Epidemics' exclusive rights under the copyright laws of the United States.  17 U.S.C. § 106.

123.    Meta's acts of infringement are willful, intentional and purposeful, in disregard and indifferent to Epidemic's rights.

124.    As a direct and proximate result of Meta's Audio Library and Original Audio and Reels Remix tools which infringe on Epidemic's copyrights and exclusive rights under copyright, Epidemic is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Epidemic's election, pursuant to 17 U.S.C. §504(b), Epidemic shall be entitled to their actual damages, including Meta's profits from infringement, as will be proven at trial.

125.    Epidemic is also entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

126.    Meta's conduct is causing and, unless enjoined by this Court, will continue to cause Epidemic great and irreparable injury that cannot be fully compensated or measured in money damages.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Epidemic is entitled to a permanent injunction prohibiting infringement of Epidemic's copyrights and exclusive rights under copyright.

### FIFTH CAUSE OF ACTION

### (Contributory Copyright Infringement, Sound Recordings)

127.    Epidemic repeats and realleges every allegation contain in paragraphs 1 through 78 as if fully set forth herein.

128.    Epidemic owns all right, title and interest, including where reflected on Exhibit A, a federally registered copyright, in and to the sound recordings of the Works.

129.    The sound recordings of the Works have been and are being illegally reproduced, distributed, and publicly performed without authorization on Meta's platforms in violation of 17 U.S.C. § 501 et seq.

130.    Meta is secondarily liable under the Copyright Act for its users' direct infringement of Epidemics' exclusive right to reproduction each time they save, stream or synchronize a copy of Epidemic's works from Meta's Audio Library and each time a user uses the Original Audio or Reels Remix tools to create a video incorporating the Works.

131.    Meta is liable as a contributory copyright infringer.  Meta has actual and constructive knowledge of the infringing activity that occurs on its platforms.  Through the creation, maintenance and operation of Meta's Audio Library and the Original Audio and Reels Remix tools, Meta is providing tools to its users to enable them to reproduce distribute, synchronize, and perform Epidemic's sound recordings without authorization.  Meta thereby knowingly causes and materially contributes to such unlawful reproduction, distribution and performance of Epidemic's copyrighted sound recordings, including the Works listed on Exhibit A hereto, in violation of Epidemic's exclusive rights under the copyright laws of the United States. 17 U.S.C. §§ 106 and/or 114.

132.    Meta's acts of infringement are willful, intentional and purposeful, in disregard and indifferent to Epidemic's rights.

133.    As a direct and proximate result of Meta's Audio Library and Original Audio and Reels Remix tools which infringe on Epidemic's copyrights and exclusive rights under copyright, Epidemic is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).    Alternatively, at Epidemic's election, pursuant to 17 U.S.C. §504(b), Epidemic shall be entitled to their actual damages, including Meta's profits from infringement, as will be proven at trial.

134.    Epidemic is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

135.    Meta's conduct is causing and, unless enjoined by this Court, will continue to cause Epidemic great and irreparable injury that cannot be fully compensated or measured in money damages.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Epidemic is entitled to a permanent injunction prohibiting infringement of Epidemic's copyrights and exclusive rights under copyright.

## SIXTH CAUSE OF ACTION

### (Contributory Copyright Infringement, Musical Compositions)

136.    Epidemic repeats and realleges every allegation contain in paragraphs 1 through 78 as if fully set forth herein.

137.    Epidemic owns all right, title, and interest, including where reflected on Exhibit A, a federally registered copyright, in and to the musical compositions embodied in the Works.

138.    The musical compositions embodied in the Works and/or works that infringe Epidemic's rights in and to the Works musical compositions have been and are being illegally reproduced, distributed, and publicly performed without authorization on Meta's platforms in violation of 17 U.S.C. § 501 et seq.

139.    Meta is secondarily liable under the Copyright Act for its users' direct infringement of Epidemics' exclusive right to reproduction each time they save, stream or synchronize a copy

of Epidemic's works from Meta's Audio Library and each time a user uses the Original Audio or Reels Remix tools to create a video incorporating the Works.

140. Meta is liable as a contributory copyright infringer. Meta has actual and constructive knowledge of the infringing activity that occurs on its platforms. Through the creation, maintenance and operation of Meta's Audio Library and its Original Audio and Reels Remix tools, Meta is providing tools to its users to enable them to reproduce distribute, synchronize, and perform Epidemic's musical compositions without authorization. Meta thereby knowingly causes and materially contributes to such unlawful reproduction, distribution and performance of Epidemic's copyrighted musical compositions, including those embodied in the Works listed on Exhibit A hereto, in violation of Epidemic's exclusive rights under the copyright laws of the United States. 17 U.S.C. § 106.

141. Meta's acts of infringement are willful, intentional and purposeful, in disregard and indifferent to Epidemic's rights.

142. As a direct and proximate result of Meta's Audio Library and Original Audio and Reels Remix tools, which infringe on Epidemic's copyrights and exclusive rights under copyright, Epidemic is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at Epidemic's election, pursuant to 17 U.S.C. §504(b), Epidemic shall be entitled to their actual damages, including Meta's profits from infringement, as will be proven at trial.

143. Epidemic is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

144. Meta's conduct is causing and, unless enjoined by this Court, will continue to cause Epidemic great and irreparable injury that cannot be fully compensated or measured in money damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Epidemic is entitled to a permanent injunction prohibiting infringement of Epidemic's copyrights and exclusive rights under copyright.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

A.      For a declaration that Meta has directly and/or secondarily infringed Epidemic's copyrights for the sound recordings of the Works under the Copyright Act;

B.      For a declaration that Meta has directly and/or secondarily infringed Epidemic's copyrights for the musical compositions of the Works under the Copyright Act;

C.      For a declaration that such infringement is and/or was willful;

D.      For a permanent injunction enjoining Meta and Meta's agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, from directly and/or secondarily infringing, and/or aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the infringement of, any of Epidemic's copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created;

E.      For all damages to which Epidemic may be entitled, including for statutory damages in the maximum amount allowed by law, or in the alternative and at Epidemic's election, all actual damages including Meta's profits in such amount as may be found at trial;

F.      For Epidemic's costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

G.      For prejudgment interest according to law; and

H.      For such other and further relief as this Court deems just and proper.

1

## DEMAND FOR JURY TRIAL

2    Epidemic hereby demands a trial by jury as to all issues so triable in this action.

3    Date:  December 2, 2025                    Respectfully submitted,

4                                               BRAUNHAGEY & BORDEN LLP

5

6    By:    _____
             Adam S. Cashman (State Bar No. 255063)
7             cashman@braunhagey.com
             747 Front Street, 4th Floor
8             San Francisco, California 94111
             Phone: (415) 599-0210
9             Fax: (415) 599-0210

10            PRYOR CASHMAN LLP

11            Ilene S. Farkas (*pro hac vice forthcoming*)
             ifarkas@pryorcashman.com
12            M. Mona Simonian (*pro hac vice forthcoming*)
             msimonian@pryorcashman.com
13            Marion R. Harris (*pro hac vice forthcoming*)
             mharris@pryorcashman.com
14            Brian M. Maida (*pro hac vice forthcoming*)
             bmaida@pryorcashman.com

15            7 Times Square
16            New York, NY 10036
             (212) 421-4100

17            *Attorneys for Plaintiff Epidemic Sound, AB*

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
CASE NO. 3:25-CV-10355