LATHAM & WATKINS LLP
    Joseph R. Wetzel (SBN 238008)
    Brittany N. Lovejoy (SBN 286813)
505 Montgomery Street, Suite 2000
San Francisco, California  94111
Telephone:  415.391.0600
Email:  *Joe.Wetzel@lw.com*
        *Britt.Lovejoy@lw.com*

LATHAM & WATKINS LLP
    Allison L. Stillman (*pro hac vice*)
1271 Avenue of the Americas
New York, New York  10020
Telephone:  212.906.1200
Email:    *Alli.Stillman@lw.com*

LATHAM & WATKINS LLP
    Sarang V. Damle (*pro hac vice*)
    Brent T.F. Murphy (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
Telephone:  202.637.2200
Email:  *Sy.Damle@lw.com*
        *Brent.Murphy@lw.com*

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EPIDEMIC SOUND, AB,<br><br>                    Plaintiff,<br><br>        vs.<br><br>META PLATFORMS, INC.,<br><br>                    Defendant. | CASE NO. 3:25-cv-10355-JSC<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF EPIDEMIC SOUND, AB'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Related Case:  *Epidemic Sound, AB v. Meta Platforms, Inc.*, No. 3:22-cv-04223-JSC<br><br>The Honorable Jacqueline Scott Corley<br>Hearing Date: May 14, 2026<br>Hearing Time: 10:00 am<br>Courtroom: 8, 19th Floor |

META'S MOTION TO DISMISS
CASE NO. 3:25-cv-10355-JSC

## NOTICE OF MOTION AND MOTION

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 14, 2026, at 10:00 am, or as soon thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley of the United States District Court for the Northern District of California, at the San Francisco Courthouse, Courtroom 8 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Meta Platforms, Inc. ("Meta") by and through its undersigned counsel will, and hereby does, move this Court for an order dismissing Plaintiff Epidemic Sound, AB ("Epidemic")'s Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Meta's Motion to Dismiss is based on this Notice, the supporting Memorandum of Points and Authorities below, and any additional material and arguments as may be considered in connection with the hearing.

### ISSUE TO BE DECIDED

Whether Epidemic's Complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated:  April 8, 2026

**LATHAM & WATKINS LLP**

By ___*/s/ Joseph R. Wetzel*___

Joseph R. Wetzel (SBN 238008)
 *Joe.Wetzel@lw.com*
Brittany N. Lovejoy (SBN 286813)
 *Britt.Lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111
Telephone:  415.391.0600

Allison L. Stillman (*pro hac vice*)
 *Alli.Stillman@lw.com*
1271 Avenue of the Americas
New York, New York  10020
Telephone:  212.906.1200

Sarang V. Damle (*pro hac vice*)
 *Sy.Damle@lw.com*
Brent T.F. Murphy (*pro hac vice*)
 *Brent.Murphy@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
Telephone:  202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND ......................................................................................................... 1

     A.   Meta and Its Services ..................................................................................... 1

     B.   Meta's Rights Manager Tool .......................................................................... 3

     C.   Epidemic and Its Services .............................................................................. 4

     D.   Procedural History ......................................................................................... 4

          1.   Epidemic's First Lawsuit (EvM I) ...................................................... 4

          2.   This Lawsuit (EvM II) ........................................................................ 6

III. LEGAL STANDARD ................................................................................................. 6

IV.  ARGUMENT ............................................................................................................... 7

     A.   Epidemic Fails to State a Claim for Direct Copyright Infringement ..................... 7

     B.   Epidemic Fails to State a Claim for Contributory Copyright
          Infringement ................................................................................................. 10

          1.   Epidemic Has Not Plausibly Alleged That Meta Induced
               Infringement ..................................................................................... 10

          2.   Epidemic Has Not Plausibly Alleged That Original Audio
               or Reels Remix Are Services Tailored to Infringement ......................... 13

V.   CONCLUSION .......................................................................................................... 16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

META'S MOTION TO DISMISS
CASE NO. 3:25-cv-10355-JSC

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Andersen v. Stability AI Ltd.*,
744 F. Supp. 3d 956 (N.D. Cal. 2024) ................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................1, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................8

*Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co.*,
149 F. Supp. 3d 1167 (N.D. Cal. 2015) ................................................................................9

*Cobbler Nevada, LLC v. Gonzales*,
901 F.3d 1142 (9th Cir. 2018) ............................................................................................14

*Cox Communications, Inc. v. Sony Music Entertainment*,
146 S. Ct. 959 (2026) .................................................................................................. *passim*

*Epidemic Sound, AB v. Meta Platforms, Inc.*,
No. 3:22-cv-4223 (N.D. Cal.) (*EvM I*).................................................................................1

*Evans v. NBCUniversal Media, LLC*,
2021 WL 4513624 (C.D. Cal. July 23, 2021).......................................................................10

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) ...............................................................................12

*Jangle Vision, LLC v. Alexander Wang*,
2023 WL 7042518 (9th Cir. Oct. 26, 2023)...........................................................................8

*Kalem Co. v. Harper Bros.*,
222 U.S. 55 (1911)..........................................................................................................11, 13

*Livingston v. Morgan*,
2006 WL 8459602 (N.D. Cal. July 31, 2006)........................................................................9

*Luvdarts, LLC v. AT&T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) ............................................................................................14

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
922 F.3d 946 (9th Cir. 2019) .................................................................................................7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)...................................................................................................11, 12, 13

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ................................................................................................10

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) ..................................................................................................10

*Plakhova v. Hood*,
  2017 WL 10592315 (C.D. Cal. June 20, 2017) ......................................................................10

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) (en banc) ..................................................................................7

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984)..........................................................................................................13, 14

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
  93 F.4th 222 (4th Cir. 2024) ...................................................................................................11

*Tangle, Inc. v. Aritzia, Inc.*,
  125 F.4th 991 (9th Cir. 2025) ...................................................................................................7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)...................................................................................................................6

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ...................................................................................................14

*Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc.*,
  815 F. App'x 158 (9th Cir. 2020) ..............................................................................................7

**RULES**

Rule 8 .............................................................................................................................................1

Rule 11 ................................................................................................................................... *passim*

Rule 12(b)(6)..................................................................................................................................6

**TREATISES**

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13D.06 (rev. ed.
  2026) ..........................................................................................................................................7

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

META'S MOTION TO DISMISS
CASE NO. 3:25-cv-10355-JSC

## I.    INTRODUCTION

This case is yet another improper attempt by Epidemic to stockpile and leverage nebulous copyright infringement claims as a business model.  As the Court is aware, Epidemic's prior case is at the end of its fourth year, yet Epidemic remains equivocal about the works it is accusing there. *See* Dkt. 490 (Mar. 9, 2026 Hr'g Tr.) at 45:12-46:19, *Epidemic Sound, AB v. Meta Platforms, Inc.*, No. 3:22-cv-4223 (N.D. Cal.) (*EvM I*).    That equivocation reflects Epidemic's continued unwillingness to put Meta on notice of its claims, which has led to untold wasted time and resources in *EvM I*.

Epidemic's approach to *EvM II* is no different.  Despite having access to Rights Manager for almost a decade, Epidemic fails to identify a single allegedly infringing use of any of the 1,000 asserted tracks.  *See* Dkt. 1 (Compl.) ¶¶ 61-64.  That is so notwithstanding that Epidemic must have had examples of each to have a Rule 11 basis for bringing this latest round of claims.  And when Meta asked Epidemic to identify these works in an effort to resolve one of the bases for this Motion without the Court's intervention, Epidemic did not deny it was already in possession of information that would satisfy its Rule 8 notice pleading obligations under *Twombly* and *Iqbal*. Instead, it deliberately withheld that information and denied Meta what it called "immediate discovery."  But contrary to Epidemic's view, Rule 8 notice is not discovery.  And its failure to identify a work that allegedly infringes *any* of its Asserted Works, let alone each of the 1,000 asserted tracks, warrants dismissal.

Epidemic also fails to state a claim for contributory infringement for the independent reason that it does not plausibly allege that Meta induced infringement or that Meta sold a service tailored to infringement, which the Supreme Court recently held are the *only* two ways to establish contributory copyright infringement in *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959, 967 (2026).  The Court should dismiss Epidemic's Complaint.

## II.    BACKGROUND

### A.    Meta and Its Services

Meta is one of the world's leading social media and technology companies.  Compl. ¶ 17. It owns and operates a wide variety of services that help people share life's moments, nurture and

build relationships, find and develop communities, and grow businesses. Facebook and Instagram are two of Meta's social networking services, which individuals from all around the world use every day to connect with others and share vast amounts of creative content. *Id.*

Among the tools offered on Facebook and Instagram is Reels, a video feature that allows users to record, edit, and share videos with audio and other effects. *Id.* ¶ 37. Reels usually have an audio component, with audio sourced from (1) the Audio Library, Meta's licensed catalog of music that users can add to their videos, or (2) Original Audio, audio that users upload as part of their videos, such as the ambient sound captured when the audio was recorded, or a voiceover.[1] *Id.* ¶¶ 39-40, 42-43; *see* Dkt. 1-3 (Compl., Ex. C). A user can select audio for her Reel from the Audio Library, her own Original Audio, or another user's Original Audio. *See* Dkt. 1-4 (Compl., Ex. D). Any time audio is used, attribution to the source of the audio will appear in the Reel. *See* Dkt. 1-5 (Compl., Ex. E).

Meta gives users full control over how to share their Reels and Original Audio. Users can choose "privacy settings" for their Reels, which determine whether other users can view or share their Reels and any accompanying Original Audio. Compl., Ex. B. If a user chooses a "public" setting, her Reels can be shared, and her Original Audio can be used in other users' videos. *See id.*; Compl. ¶¶ 41, 45. But if a user chooses a "private" or "non-public" setting, "only [her] chosen audience (such as [her] friends or followers) can view [her] content," and her Original Audio "cannot be reused by others." Compl., Ex. B. And if a user changes the setting of a Reel "from public to private," or if the user deletes the original Reel, "any content that reused [the user's] original audio will be muted." *Id.*; *see also* Compl., Ex. E. In any case, "[i]f someone creates a reel using [another user's] original audio" and "they download their reel, the downloaded version will be muted." Compl., Ex. E. In short, Meta does not permit users to download audio classified as Original Audio. *See id.*

---

[1] Epidemic sometimes uses the phrase "Audio Library" to refer to all sources of audio that users may incorporate into their content on Meta's platforms. *See, e.g.*, Compl. ¶ 51. But as it acknowledges elsewhere in its Complaint, such use is imprecise and conflates the two sources of audio for Reels. *See, e.g., id.* ¶¶ 31, 42-43. As it has throughout briefing in the parties' other pending litigation before the Court, Meta refers to its licensed catalog of music as "Audio Library," and user-uploaded audio as "Original Audio."

One available feature of Reels is "Reels Remix," which allows a user to stitch their own, new audiovisual clip to another user's existing Reel. Compl. ¶ 53. The resulting video includes the first user's existing Reel (including its audio, unless the audio is replaced), as well as new audio and/or visual content from the second user, often commenting on or responding to the content in the first user's existing Reel. *See id.*; Dkt. 1-6 (Compl., Ex. F). Users can choose whether "to allow remixes of their reel and can change this [permission] at any time." Compl., Ex. F. "Only reels shared as public can be remixed." *Id.* If a Reel's owner deletes the Reel or changes its privacy setting to non-public, all remixes of the Reel will no longer be viewable. *Id.*

**B.      Meta's Rights Manager Tool**

Meta provides rightsholders with numerous tools to protect their copyrighted content on its services. One such tool is Meta's "IP reporting forms," which a rightsholder can use if it believes content on one of Meta's services infringes its copyright. Compl., Ex. G. "Rights Manager" is another tool Meta makes available to some rightsholders. It is a content management tool designed to help rightsholders protect, authorize, and manage their intellectual property at scale across Meta's services. *See* Compl. ¶¶ 61-62; Compl., Ex. G.

Rightsholders must meet certain eligibility criteria to gain access to Rights Manager. "To access [this] scaled copyright management tool[]," users must, at a minimum, "have rights to enforce on Facebook and Instagram." Compl., Ex. G. When granting access to Rights Manager, Meta considers, among other things, (1) "[c]ontent eligibility," i.e., whether the user "predominantly post[s] content that is considered wholly original" and "own[s] or control[s] [the] exclusive rights to [its] video, audio or image content"; (2) "[c]ontent catalog," i.e., whether the user has "multiple pieces of original content that [it] want[s] to protect"; (3) "[p]ast infringement or violations," i.e., whether the user has previously "post[ed] content without permission" or been subject to takedown notices or revocation of access to protection tools; and (4) "[i]ntegrity status," i.e., whether the user's "Facebook Page or profile and/or Instagram account [are] in good standing" and "compliant with Meta's community guidelines." *Id.* Even after these factors are satisfied, Meta still has discretion in determining whether to provide a user with Rights Manager. Meta does

not guarantee access to Rights Manager or grant access to Rights Manager as a matter of right. *See id.*; Dkt. 1-8 (Compl., Ex. H).

### C.    Epidemic and Its Services

Epidemic is a production music library that owns a catalog of approximately 50,000 tracks. Compl. ¶ 5. Epidemic licenses these works through paid subscriptions, *id.* ¶ 23, thereby permitting licensees to incorporate Epidemic's tracks into their own content, such as "online video content, podcasts, television and film production, and other media," *id.* ¶ 15. As noted, Epidemic has had access to a Rights Manager account since 2017. See *id.* ¶ 64; see also Dkt. 383-31 at Request for Admission No. 17, *EvM I*.

### D.    Procedural History

#### 1.    *Epidemic's First Lawsuit (EvM I)*

On July 10, 2022, Epidemic sued Meta, alleging direct and contributory copyright infringement. Epidemic alleged that Meta engaged in direct copyright infringement by storing Epidemic's works in its Audio Library and by allowing the use of its audio via Original Audio and Reels Remix. *See* Dkt. 1 (*EvM I* Compl.) ¶¶ 61–62, *EvM I*. And it alleged that Meta engaged in contributory copyright infringement by "provid[ing] its users with the ability and tools to infringe"—namely, Audio Library, Original Audio, and Reels Remix. *Id.* ¶ 69 (inducement theory); *see also id.* ¶ 76 (material contribution theory). The Complaint identified 952 "representative" Epidemic tracks that were allegedly infringed on Meta's services. *See* Dkt. 1-1, *EvM I*. But it did not identify *any* specific instances of alleged infringement. *See generally EvM I* Compl.

As the litigation progressed, Meta repeatedly asked Epidemic to identify the specific instances of alleged infringement for which it was seeking to recover, as the Copyright Act requires. Meta explained that this list of accused works was necessary to, among other things, determine the proper scope of discovery and properly investigate Epidemic's allegations of infringement. Epidemic repeatedly refused to provide this information. For example, although Meta propounded an interrogatory seeking the basis for Epidemic's infringement claims, including identification of the content on Meta's platforms that Epidemic accused of infringing its works,

Epidemic refused to disclose that information until ordered to do so by the Court. Dkt. 68, *EvM I*. Likewise, Epidemic refused to revise its list of accused content even after it demanded—and Meta provided—sweeping discovery into every conflict and match that Meta's systems generated for the reference files that Epidemic identified as corresponding to its asserted works. *Cf.* Dkt. 429-9 at ¶ 2, *EvM I*. In both instances, Epidemic left Meta to guess at what, precisely, Epidemic accused of infringement.

In July 2023, after Epidemic's compelled identification of accused works led to the discovery of ethical conflicts for Epidemic's counsel, Epidemic withdrew 52 of those works from the case, resulting in 900 asserted tracks and the withdrawal of accusations of infringement against numerous works previously accused of infringing those tracks. *See* Dkts. 95 & 98, *EvM I*. And in July 2025, well after the close of fact discovery, Meta learned that various entities who had been notified that Epidemic accused their works as infringing in *EvM I* (following Epidemic's compelled interrogatory response) had previously contacted Epidemic to dispute the accusation that their works were infringing. *See e.g.*, Dkts. 335-1 & 335-2, *EvM I*. Rather, as they explained, the asserted and accused works merely shared common, preexisting elements (like loops or samples). *Id.* Meta only learned of the existence of these communications after fact discovery in *EvM I* had closed and while it was in the process of negotiating with Epidemic a potential stipulation regarding the similarity of audio files produced by Epidemic in discovery and certain tracks available on Meta's platforms at some point. *See* Dkt. 278-2, *EvM I*. Only after Meta confronted Epidemic with this correspondence, which had been improperly withheld by Epidemic during fact discovery, did Epidemic withdraw its infringement accusations against multiple additional works. *See* Dkt. 384-34, *EvM I*. This result could have occurred at the time *EvM I* was filed (or earlier) had Epidemic properly identified these works at the outset, and actually undertaken the necessary investigation into the works it chose to assert and accuse of infringement to determine whether those tracks were actually substantially similar in a way that was allegedly infringing. Indeed, it was not until November 19, 2025, in conjunction with its summary judgment motion, and after almost three years of extensive discovery, that Epidemic provided an updated list of asserted works and accused tracks "for which Epidemic intends to seek judgment against

Meta in this action." Dkt. 350, *EvM I*.  That list identified only 869 of the 900 previously asserted tracks as being associated with *any evidence* of an allegedly infringing post on Meta's services identified *before* or during discovery.  *Id.*  In other words, there were 31 asserted works for which the parties conducted full discovery *without a single corresponding accused work*, much less one Epidemic knew of at the time Epidemic brought its complaint.

*EvM I* remains pending before this Court.

### 2. *This Lawsuit (EvM II)*

Midway through briefing summary judgment motions in *EvM I*, Epidemic sued Meta again, alleging a "continu[ation]" of the conduct in *EvM I* but as to a different set of 1,000 "representative" asserted tracks (the "Asserted Works").  Compl. ¶¶ 1, 6, 26; Compl., Ex. A. Epidemic does not allege that this list of Asserted Works is exhaustive; rather, it contends that the "list may be amended as additional infringed works are discovered"—as distinguished from allegedly infringed works Epidemic had discovered at the time of its Complaint.  *Id.* ¶ 1; *see also id.* ¶ 26 (similar).  Nevertheless, as with *EvM I*, the Complaint does not identify any specific user posts or other works on Meta's platforms that allegedly infringe any of Epidemic's Asserted Works.  The Court promptly related the cases on December 9, 2025.  *See* Dkt. 17.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Instead, a claim is "plausible" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

## IV.    ARGUMENT

### A.    Epidemic Fails to State a Claim for Direct Copyright Infringement

To state a claim of copyright infringement, a plaintiff must allege: (1) ownership of a valid copyright, and (2) copying of aspects of the work that are original. *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). To satisfy the second element, a plaintiff must plead facts plausibly showing that (i) the defendant actually copied the plaintiff's work; and (ii) "unlawful appropriation," i.e., that the copying is illegal because a "substantial similarity" exists between the defendant's work and protectable elements of the plaintiff's work. *Id.* The Ninth Circuit uses "a two-part test to determine whether the defendant's work is substantially similar to the plaintiff's copyrighted work." *Id.* "At the pleading stage," a court assesses "whether—based on articulable, objective factors—*any* reasonable juror could find that the allegedly infringing work is substantially similar to the copyrighted expression." *Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 997 (9th Cir. 2025). For a court to make this assessment, a plaintiff must identify each allegedly infringing work and must then allege, with some degree of specificity, how that work is substantially similar to protectable elements of each of the plaintiff's works. *See id.*

Even "[a]t the pleading stage," the substantial similarity analysis requires "*compar[ing]*" the Asserted Works with the allegedly infringing works. *Tangle*, 125 F.4th at 998 (emphasis added) (citation omitted); *accord* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13D.06 (rev. ed. 2026) ("[T]he factfinder compares the two works in suit to examine their similarities—the presence of sufficient similarities between them allows the inference of factual copying, whereas the absence of sufficient similarities allows the opposite inference."); *Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158, 159 (9th Cir. 2020) ("The copyrighted and allegedly infringing works must be presented to the court, such that the works are 'capable of examination and comparison.'" (citation omitted)); *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 953 (9th Cir. 2019) (conducting a "[s]imilarity [c]omparison" on a motion to dismiss, and reversing dismissal of copyright claim after detailed comparison of works and where "most importantly, [plaintiff] provide[d] side-by-side pictures that make the

similarities apparent"); *Jangle Vision, LLC v. Alexander Wang*, 2023 WL 7042518, at \*1-2 (9th Cir. Oct. 26, 2023) (affirming dismissal of copyright claim based on lack of substantial similarity after comparing plaintiff's work (the Jangle Vision Twins) with defendant's allegedly infringing work (a character in an advertisement for a handbag)).  Such comparison is impossible in the absence of allegations identifying the allegedly infringing works.

Here, Epidemic does not plead adequate facts to support a claim of infringement.  It does not identify *any* specific allegedly unauthorized content on Meta's platforms that contains audio substantially similar to *any* of Epidemic's Asserted Works (much less satisfy its burden as to each of its 1,000 Asserted Works).  This is a fatal flaw because, without such allegations, Meta lacks notice of the scope and contours of Epidemic's copyright claims and, critically, cannot determine what *precisely* Meta is alleged to have done to infringe.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (defendant is entitled "fair notice of what the . . . claim is and the grounds upon which it rests" (citation omitted)).  Although the Court previously concluded that Epidemic's allegations about various asserted works, also with no corresponding accused work identified, were sufficient to "provide[] fair notice" to Meta, Dkt. 37 at 1, *EvM I* (citation omitted), the experience of litigating *EvM I* demonstrated that not to be true.[2]  Epidemic's continuous refusal to identify allegedly infringing works in *EvM I* led to copious waste and needless discovery, and hindered Meta's efforts to focus its defense on Epidemic's actual claims.  Epidemic ultimately dropped nearly a hundred asserted tracks from that lawsuit, as well as allegations of alleged infringement against numerous Audio Library tracks and user-generated posts that, when forced to articulate its actual claims, Epidemic finally concluded were associated with *zero evidence* of infringement.  Unless Epidemic is required to allege specific acts of infringement or specific infringing works *now*—knowledge it should already possess under its Rule 11 obligations—past is almost certainly prologue here.

---

[2] The Court also denied Meta's motion in part based on its conclusion that "Defendant's motion relie[d] on materials outside the complaint—such as pre-suit investigations and Plaintiff's website information."  Dkt. 37 at 1, *EvM I.*  Here, however, Meta's arguments are based entirely on the allegations in the Complaint, and any references to *EvM I* are provided solely for context.

Once again, Meta has no way of knowing which Reels, among the billions Meta hosts on its platforms, or which Audio Library tracks, among the many tens of millions licensed by Meta, gave rise to Epidemic's most recent claims of infringement.  Any claim based only on the identification of an asserted work, but with no allegations about a corresponding accused work, is inherently incomplete.  Without allegations that "identify the specific acts of infringement by [defendant]," a plaintiff fails to "'put [the] [d]efendant[] or the Court on sufficient notice of the copyright claim.'"  *Livingston v. Morgan*, 2006 WL 8459602, at *3 (N.D. Cal. July 31, 2006) (citation omitted).

*Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co.* is illustrative.  There, the plaintiffs alleged that the defendants infringed fifty of their copyrights.  149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015).  The complaint alleged that "[d]ozens of characters from [defendant's work] are derived from and substantially similar to [plaintiffs'] characters"; that "all or nearly all of [defendants'] publicly disclosed [characters] are copied"; and that "[m]any if not all of these character portraits are copied or derived from images of characters in [plaintiffs' works]."  *Id.* (citations omitted).  The court explained that these "general" and "sweeping allegations fail to apprise [defendants] or the Court of which [of defendants'] characters infringe *which* characters from *which* of [plaintiffs'] numerous games, 'related products and merchandise.'"  *Id.*  Absent such notice in the form of "acts of infringement," the court explained that it could not "meaningfully evaluate the plausibility of [the] [p]laintiffs' allegations regarding the appropriation of [their] copyrighted . . . content" and thus dismissed the complaint.  *Id.*  This rationale applies with even more force here—where Epidemic has alleged 1,000 Asserted Works and millions of videos are uploaded to and shared on Facebook and Instagram each day.  *See, e.g.*, Compl. ¶ 7 (alleging that Meta is infringing "at least thousands of Epidemic's songs at any given moment").

The need for a plaintiff to identify the allegedly infringing works is no mere technicality or formality.  Indeed, when articulating the plausibility pleading standard in *Twombly*, the Supreme Court emphasized that "discovery can be expensive," and thus "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  550 U.S. at 558 (citation omitted).  These concerns, in part, animate why

courts routinely reject copyright claims at the motion to dismiss stage when, like here, they are based on conclusory generalizations of infringement instead of on comparisons of the asserted and accused works. *See, e.g.*, *Plakhova v. Hood*, 2017 WL 10592315, at *2 (C.D. Cal. June 20, 2017) (dismissing copyright infringement claim when "[t]he complaint . . . failed to list any identifiable instances of copying"); *Evans v. NBCUniversal Media, LLC*, 2021 WL 4513624, at *5 (C.D. Cal. July 23, 2021) (dismissing copyright infringement claims because the plaintiff offered only "general, conclusory allegations" that defendants' "infringing film copied numerous copyrightable elements of [p]laintiff's work"). The Court should dismiss Epidemic's direct copyright infringement claim as inadequately pleaded here.

### B.    Epidemic Fails to State a Claim for Contributory Copyright Infringement

"Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) (citation omitted). Epidemic's failure to identify any allegedly infringing work, *see supra* § IV.A, similarly bars any claim for secondary copyright infringement. Regardless, Epidemic's contributory copyright infringement claims are inadequately pleaded for an equally fundamental reason, which is an independent basis for dismissal here.

Just two weeks ago, the Supreme Court clarified that "[t]he provider of a service is contributorily liable for [a] user's infringement only if it intended that the provided service be used for infringement." *Cox*, 146 S. Ct. at 967. "The intent required for contributory liability can be shown *only* if [1] the party induced the infringement or [2] the provided service is tailored to that infringement." *Id.* (emphasis added). Here, Epidemic has not plausibly alleged either affirmative inducement by Meta, or that Meta's Original Audio and Reels Remix features are services tailored to infringement. Nor can it possibly do so consistent with Rule 11. Its contributory liability claims must therefore be dismissed.

### 1.    *Epidemic Has Not Plausibly Alleged That Meta Induced Infringement*

Epidemic has not stated a claim of contributory infringement based on inducement. "A provider induces infringement if it actively encourages infringement through specific acts." *Id.*; *see also Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 672 (9th Cir. 2017). In *Cox*, the Court

highlighted the facts of *Grokster* as a paradigmatic example of inducement: the companies there "promoted and marketed their software as a tool to infringe copyrights," and "[t]he 'principal object' of their business models 'was use of their software to download copyrighted works.'" *Cox*, 146 S. Ct. at 967 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 926 (2005)); *see also Kalem Co. v. Harper Bros.*, 222 U.S. 55, 62-63 (1911) (defendant "not only expected but invoked by advertisement the use of its films" for infringement of copyright).

The Supreme Court found no contributory infringement even where the trial record below "viewed in the light most favorable to Sony, showed more than the mere failure to prevent infringement." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 236 (4th Cir. 2024). That record included: (1) "evidence that Cox knew of specific instances of repeat copyright infringement occurring on its network"; (2) "that Cox traced those instances to specific users; (3) "that Cox chose to continue providing monthly internet access to those users despite believing the online infringement would continue because it wanted to avoid losing revenue." *Id.* It included "extensive evidence about Cox's increasingly liberal policies and procedures for responding to reported infringement, which Sony characterized as ensuring that infringement would recur." *Id.* And it included internal Cox emails and chats that could be interpreted as "displaying contempt for laws intended to curb online infringement." *Id.* at 236-37.

Notwithstanding that record, the Supreme Court concluded that Cox could not be found liable for having induced infringement when the plaintiffs "provided no 'evidence of express promotion, marketing, and intent to promote' infringement" by Cox. *Cox*, 146 S. Ct. at 968 (quoting *Grokster*, 545 U.S. at 926). A theory based on "supplying a product with knowledge that the recipient will use it to infringe copyrights" is not enough to support inducement liability. *Id.* at 968-69 (citation and alteration omitted). As the Supreme Court observed, such a theory "conflict[s] with this Court's repeated admonition that contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." *Id.* at 969.

Epidemic's allegations here fail to plead inducement for the same reasons the plaintiffs in *Cox* could not establish inducement. As in *Cox*, Epidemic has not alleged a single example of Meta "express[ly] promoti[ng]" or "marketing" Original Audio or Reels Remix for infringing uses.

*Id.* at 968. Nor are there any plausible allegations of Meta "actively encourag[ing] infringement through specific acts." *Id.* at 967 (citing *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)). Instead, Epidemic alleges that Meta is liable for contributory infringement because its "Audio Library and the Original Audio and Reels Remix tools provide Meta's users with the *ability* and *tools* to infringe." Compl. ¶¶ 108, 120 (emphasis added). But these allegations amount to the same theory rejected in *Cox*—that Meta should be liable merely for supplying a product that potentially can be misused for infringement. *Cox* makes clear that such a theory goes "beyond the two forms of liability recognized in *Grokster* and *Sony*" and is insufficient for inducement liability. 146 S. Ct. at 969; *see also Grokster*, 545 U.S. at 939 n.12 ("[A] court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement.").

Moreover, as in *Cox*, Epidemic's own allegations make clear that Meta *prohibits* misuse of Original Audio and Reels Remix for infringement and has a robust system in place for combatting infringement and empowering rightsholders to protect their intellectual property. *See Cox*, 146 S. Ct. at 968 (rejecting inducement liability in light of Cox's enforcement efforts). For example, Meta's terms of use prohibit users from "shar[ing] anything . . . [t]hat you do not own or have the necessary rights to share" or "[t]hat infringes or violates someone else's rights, including their intellectual property rights," "such as by infringing another's copyright." *Meta Terms of Service* § 3.2, Facebook, https://www.facebook.com/terms/ (last visited Apr. 8, 2026) ("*Terms of Service*"); *see also id.* § 3.3 (providing that users grant a broad license to Meta for the use of any content they upload, subject to these requirements).[3] Meta also gives users full control over the privacy settings of their Reels. If a user chooses a "private" or "non-public" setting, her Original Audio "cannot be reused by others," and therefore cannot be put to the allegedly infringing re-uses about which Epidemic complains. Compl., Ex. B. Meta also expressly warns users that "[i]f music rights change" on its services, and a user has "added a song to [her] reel that Meta no longer has the rights to, [the] reel will be blocked from being viewed by other people." Compl., Ex. C; *see*

---

[3] "Public terms of service and privacy policies are proper subjects of judicial notice." *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1026 n.2 (N.D. Cal. 2021).

*also* Compl., Ex. D ("Keep in mind that as we make sure to uphold our agreements with music rights holders, audio tracks in your posts can become muted as a result of any changes made to these agreements."). Meta also maintains "IP reporting forms," which rightsholders like Epidemic can use to report content on Meta platforms that they believe infringes their copyrights. Compl., Ex. G. And Meta has developed "Rights Manager," a content management tool designed to help rightsholders protect, authorize, and manage their intellectual property across Meta's platforms and at scale. *See id.*; Compl. ¶¶ 61-62. Tellingly, and unlike the plaintiffs in *Cox*, Epidemic does not even allege it ever used Meta's tools to report any content on Meta's services as infringing. Nor does it allege that it has ever used Rights Manager to block allegedly infringing content that matched to any of Epidemic's tracks.

For all of these reasons, Epidemic has failed to state a claim of contributory infringement based on inducement.

### 2. *Epidemic Has Not Plausibly Alleged That Original Audio or Reels Remix Are Services Tailored to Infringement*

Epidemic also fails to state a claim of contributory infringement based on the theory that Meta's Original Audio and Reels Remix features are services "tailored to infringement." *Cox*, 146 S. Ct. at 967 (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)).

"A service is tailored to infringement if it is 'not capable of substantial or commercially significant' noninfringing uses." *Id.* A service or product lacks substantial or commercially noninfringing uses when it "ha[s] been 'especially' made" for infringing uses, *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 436, 440 (1984) (quoting *Kalem*, 222 U.S. at 63), or when it "is 'good for nothing else' but infringement," *Grokster*, 545 U.S. at 932 (citations omitted).

In *Grokster*, for example, there was significant evidence that the companies sought to tailor their services to infringing uses, including evidence that "each company showed itself to be aiming to satisfy a known source of demand for copyright infringement, [i.e.,] the market comprising former Napster users"; their "software function[ed] as Napster did except that it could be used to distribute more kinds of files, including copyrighted movies and software programs"; and "neither company attempted to develop filtering tools or other mechanisms to diminish the infringing

activity using their software."  545 U.S. at 939.  All of this evidence suggested a service designed to enable and promote copyright-infringing uses.

By contrast, the Supreme Court rejected contributory infringement liability premised on the mere sale of the Betamax videotaping product in *Sony*, finding that the Betamax was "capable of substantial noninfringing uses" because it "[wa]s widely used for legitimate, unobjectionable purposes," including "'time-shifting'—the practice of recording a program to view it once at a later time, and thereafter erasing it," which the Court concluded constituted fair use.  464 U.S. at 423, 440-42.  The same was true in *Cox*.  There, as in *Sony*, the Supreme Court held that Cox did not "provid[e] a service tailored to infringement" because "Internet service [i]s clearly 'capable of "substantial" or "commercially significant" noninfringing use,'" since "Internet access, . . . is used for many purposes other than copyright infringement."  *Cox*, 146 S Ct. at 968; *see also Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1149 (9th Cir. 2018) ("Providing internet access can hardly be said to be distributing a product or service that is not 'capable of substantial' or 'commercially significant noninfringing uses.'" (citation omitted)).  Courts have similarly acknowledged substantial noninfringing uses about services like Zillow's real estate websites, AT&T's mobile wireless services, and even Stability AI's artificial intelligence software.  *See, e.g.*, *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019); *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013); *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 968 (N.D. Cal. 2024).

So too here.  Although Epidemic includes conclusory allegations that "the intention behind the Original Audio feature" is "unlimited copying, sharing, synchronization, and distribution of unlicensed music" and that "Reels Remix . . . enables, encourages, and contributes to exponential infringement of works," it does not include any factual allegations that would support those assertions or make them plausible.  Compl. ¶¶ 45, 55.  That is because no such allegations are possible consistent with Epidemic's Rule 11 obligations.

Meta's services indisputably have overwhelming valid, lawful, and noninfringing uses.  Reels is a video feature that allows users to record, edit, and share videos on Facebook and Instagram.  *See* Compl. ¶ 37.  "All videos posted to Facebook [and Instagram] will be shared as

reels." Compl., Ex. B. Epidemic could not plausibly allege that all (or all but an insubstantial number of) Reels posted on Meta's platforms are infringing, or that the purpose of allowing videos to be posted on Meta's platforms is exclusively or even predominantly infringement of copyrighted sound recordings. Indeed, as the materials incorporated by reference in the Complaint illustrate, users do not have to add audio to their videos at all. *See* Compl., Ex. B.

And when users do decide to add audio to their Reels, any user-uploaded audio is contributed subject to Meta's terms of use (which warrants the user has the necessary rights to any audio and licenses any re-use of that audio on Meta's services), *see Terms of Service*, *supra*, §§ 3.2 & 3.3; or users can incorporate audio from Meta's Audio Library—the vast majority of which Epidemic admits is licensed and does not allege is infringing, *see* Compl. ¶ 32 (Meta "enters into a license" to "include a company's music in the Audio Library"). With respect to Original Audio and Reels Remix specifically, Epidemic cannot plausibly allege that all (or all but an insubstantial number of) uses of these features are infringing, or that the purposes of these features are exclusively or even predominantly infringement of copyrighted sound recordings. To the contrary, the Complaint acknowledges that Original Audio can be "unique audio [a user] created, either while filming [their] reel in the Instagram app or in a video they uploaded," and Epidemic does not (and cannot) allege that this "unique audio," such as ambient background noises or a user's original voiceover or musical performance, is always (or even often) infringing. Compl. ¶ 40; *see also id.* ¶¶ 39, 42-43. And again, any uses are subject to Meta's terms of use, which make clear that Meta does not intend these features to be used for infringement. *See Terms of Service*, *supra*, §§ 3.2 & 3.3.

Epidemic's contrary theory of liability cannot overcome this. Epidemic asserts that Meta should be found contributorily liable because it "provid[es] tools to its users to enable them" to engage in copyright infringement and has "actual and constructive knowledge of the infringing activity that occurs on its platforms." Compl. ¶¶ 131, 140. Even accepting those allegations as true, *Cox* squarely forecloses this theory of liability. The Supreme Court explained that it "has repeatedly made clear that mere knowledge that a service will be used to infringe is insufficient to establish the required intent to infringe." *Cox*, 146 S. Ct. at 968. And it reversed the Fourth

Circuit's contrary holding that "supplying a product with knowledge that the recipient will use it to infringe copyrights is sufficient for contributory infringement." *Id.* at 968-69 (citation and alteration omitted). This Court should follow the same path and reject Epidemic's theory of contributory liability here.

## V.    CONCLUSION

For the foregoing reasons, Meta's motion should be granted and Epidemic's Complaint should be dismissed. Requiring Epidemic to provide proper notice of its claims by identifying allegedly infringing works forming the Rule 11 basis for its Complaint and eliminating its unsustainable secondary liability theories at the outset will spare the parties and the Court significant time and resources and promote the efficient resolution of Epidemic's claims.

Dated:  April 8, 2026

**LATHAM & WATKINS LLP**

By      */s/ Joseph R. Wetzel*
Joseph R. Wetzel (SBN 238008)
 *Joe.Wetzel@lw.com*
Brittany N. Lovejoy (SBN 286813)
 *Britt.Lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111
Telephone:  415.391.0600

Allison L. Stillman (*pro hac vice*)
 *Alli.Stillman@lw.com*
1271 Avenue of the Americas
New York, New York  10020
Telephone:  212.906.1200

Sarang V. Damle (*pro hac vice*)
 *Sy.Damle@lw.com*
Brent T.F. Murphy (*pro hac vice*)
 *Brent.Murphy@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
Telephone:  202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*