PRYOR CASHMAN LLP
 Ilene S. Farkas (*pro hac vice*)
 *ifarkas@pryorcashman.com*
 M. Mona Simonian (*pro hac vice*)
 *msimonian@pryorcashman.com*
 Marion R. Harris (*pro hac vice*)
 *mharris@pryorcashman.com*
 Brian M. Maida (*pro hac vice*)
 *bmaida@pryorcashman.com*
7 Times Square
New York, New York 10036
Phone: (212) 421-4100
Fax: (212) 326-0806

BRAUNHAGEY & BORDEN LLP
 Adam S. Cashman (State Bar No. 255063)
 *cashman@braunhagey.com*
747 Front Street, 4th Floor
San Francisco, California 94111
Phone: (415) 599-0210
Fax: (415) 599-0210

Attorneys for Plaintiff *Epidemic Sound, A.B.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EPIDEMIC SOUND, AB,<br><br>             Plaintiff,<br><br>    vs.<br><br>META PLATFORMS, INC.,<br>   f/k/a FACEBOOK, INC.,<br><br>             Defendant. | Case No. 3:25-cv-10355-JSC<br><br>**PLAINTIFF EPIDEMIC SOUND, AB'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS**<br><br>Related Case: *Epidemic Sound, AB v. Meta Platforms, Inc.*, No. 3:22-cv-04223-JSC<br><br><u>Hearing</u>:<br>Date: June 18, 2026<br>Time: 10:00 a.m.<br>Place: Courtroom 8 |

*Pryor Cashman LLP*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES............................................................................................................ii

I.   PRELIMINARY STATEMENT ...........................................................................................1

II.  STATEMENT OF FACTS ...................................................................................................4

    A.  The Parties.....................................................................................................................4

        1.  *Meta's Infringement Via the Audio Library*............................................................5

        2.  *Meta's Infringement Via the OA/RR Features*.......................................................5

        3.  *Meta's Secondary Infringement Via the Audio Library and the*
            *OA/RR Features* ...................................................................................................7

    B.  Meta's Obstructionist and Willful Conduct ................................................................7

    C.  *EvM I* ............................................................................................................................8

III. ARGUMENT .......................................................................................................................9

    A.  The Liberal Pleading Standard.....................................................................................9

    B.  Epidemic Sufficiently Pleaded Its Direct Infringement Claim ..................................10

        1.  *Epidemic Alleged Direct Copyright Infringement By Meta*..................................10

        2.  *The Court Should (Again) Reject Meta's Incorrect Pleading*
            *Standard* ..............................................................................................................13

    C.  Epidemic Sufficiently Pleaded Its Alternative Contributory Infringement
        Claim...........................................................................................................................17

        1.  *Epidemic Sufficiently Pleaded Inducement*.........................................................18

        2.  *Epidemic Sufficiently Pleaded Material Contribution*.........................................19

IV. CONCLUSION ..................................................................................................................21

Pryor Cashman LLP

i

**TABLE OF AUTHORITIES**

**CASES**                                                                                          **PAGE(s)**

*Amazon Content Servs. LLC v. DeBarr*,
   793 F. Supp. 3d 1242 (C.D. Cal. 2025) ................................................................................19

*Andersen v. Stability AI Ltd.*,
   744 F. Supp. 3d 956 (N.D. Cal. 2024) ............................................................................19, 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................1, 8, 9, 13

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*,
   No. 23-cv-06012 (SI), 2024 WL 1772833 (N.D. Cal. Apr. 23, 2024)....................................19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................1, 8, 9, 13

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
   149 F. Supp. 3d 1167 (N.D. Cal. 2015) .................................................................................15

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   No. 10-cv-03428 (LHK), 2011 WL 1044899 (N.D. Cal. Mar. 23, 2011) ...................11, 12, 14

*Clifton v. Houghton Mifflin Harcourt Publ'g Co.*,
   152 F. Supp. 3d 1221 (N.D. Cal. 2015) ...........................................................................10, 15

*Clifton v. Pearson Educ., Inc.*,
   No. 11-cv-03640 (EJD), 2012 WL 1565236 (N.D. Cal. May 2, 2012) ..................................15

*Cobbler Nevada, LLC v. Gonzales*,
   901 F.3d 1142 (9th Cir. 2018) .....................................................................................17, 18

*Columbia Pictures Indus., Inc. v. Fung*,
   710 F.3d 1020 (9th Cir. 2013) .....................................................................................18, 19

*Cox Communications v. Sony Music Entertainment*,
   146 S. Ct. 959 (2026)......................................................................................... *passim*

*Elektra Ent. Grp., Inc. v. Barker*,
   551 F. Supp. 2d 234 (S.D.N.Y. 2008)...................................................................................12

*Epidemic Sound, AB v. Meta Platforms, Inc.*,
   No. 22-cv-4223 (JSC), 2022 U.S. Dist. LEXIS 213659
   (N.D. Cal. Nov. 28, 2022)................................................................................... *passim*

*Etereo Spirits, LLC v. James R. Ling*,
   No. 21-cv-00302 (JVS), 2021 WL 3914256 (C.D. Cal. July 15, 2021) ....................12, 13, 16

ii

Pryor Cashman LLP

**Pryor Cashman LLP**

*Evans v. NBCUniversal Media, LLC*,
2021 WL 4513624 (C.D. Cal. July 23, 2021) ................................................................16

*Facebook v. Power Ventures, Inc.*,
No. 08-cv-5780 (JF) (RS), 2009 WL 1299698 (N.D. Cal. May 11, 2009) ..................... *passim*

*Famous Birthdays, LLC v. SocialEdge, Inc.*,
No. 21-cv-9562 (PA), 2022 WL 1591723 (C.D. Cal. Apr. 15, 2022) .........................9, 11, 12

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) ...........................................................................................20

*Jangle Vision, LLC v. Alexander Wang, Inc.*,
No. 22-55642, 2023 WL 7042518 (9th Cir. Oct. 26, 2023) .......................................15

*Krafton, Inc. v. Apple, Inc.*,
No. 22-cv-209 (GW), 2023 WL 2628068 (C.D. Cal. Feb. 24, 2023) .......................16

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .........................................................................................14

*Luvdarts, LLC v. AT & T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) .......................................................................................17

*Mahon v. Mainsail, LLC*,
20-cv-01523 (YGR), 2020 WL 4569597 (N.D. Cal. Aug. 7, 2020) .................................10, 12

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
922 F.3d 946 (9th Cir. 2019) .........................................................................................15

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)........................................................................................................18

*Novation Sols., Inc. v. Issuance Inc.*,
No. 23-cv-00696 (WLH), 2023 WL 5505908 (C.D. Cal. June 27, 2023) ............................14

*Papasan v. Dometic Corp.*,
No. 16-cv-02117 (HSG), 2017 WL 4865602 (N.D. Cal. Oct. 27, 2017)................................14

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
167 F. Supp. 2d 1114 (C.D. Cal. 2001) .........................................................................10, 16

*Plakhova v. Hood*,
2017 WL 10592315 (C.D. Cal. June 20, 2017) .......................................................16

*Sulit v. Sound Choice Inc.*,
No. 06-cv-00045 (MJJ), 2006 WL 8442163 (N.D. Cal. Nov. 14, 2006)................................9

*Take-Two Interactive Software, Inc. v. PlayerAuctions, Inc.*,
No. 25-cv-01880 (ODW), 2025 WL 2459553 (C.D. Cal. Aug. 26, 2025) .................12, 13, 16

iii

*Tangle, Inc. v. Aritzia, Inc.*,
125 F.4th 991 (9th Cir. 2025) ...........................................................................................15

*Warren v. John Wiley & Sons, Inc.*,
952 F. Supp. 2d 610 (S.D.N.Y. 2013)...............................................................................10

*Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc.*,
815 F. App'x 158 (9th Cir. 2020) ....................................................................................15

**STATUTES AND RULES**

17 U.S.C. § 106.......................................................................................................................10

Fed. R. Civ. P. Rule 8 ...........................................................................................................2, 9

Fed. R. Civ. P. Rule 12(b)(6) ..........................................................................................1, 8, 9

**OTHER AUTHORITIES**

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.09 (rev.
ed. 2026) ..........................................................................................................................17

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13D.06 (rev.
ed. 2026) ..........................................................................................................................17

**Pryor Cashman LLP**

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

Plaintiff Epidemic Sound, AB ("Epidemic" or "Plaintiff") respectfully submits this memorandum of points and authorities in opposition to the motion of Defendant Meta Platforms, Inc. f/k/a Facebook, Inc. ("Meta" or "Defendant") to dismiss Epidemic's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) (ECF 48, the "Motion").

## I.    PRELIMINARY STATEMENT

Meta's motion to dismiss is based on the same arguments this Court already rejected in Epidemic's prior (and still-pending) lawsuit against Meta, *Epidemic Sound, AB v. Meta Platforms, Inc. f/k/a Facebook, Inc.*, No. 22-cv-4223 (JSC) (N.D. Cal.) ("*EvM I*"), which is premised on nearly identical allegations of infringement.  In denying Meta's motion to dismiss Epidemic's complaint in *EvM I*, this Court held:  "The complaint provides 'fair notice of what the . . . claim is and the grounds upon which it rests,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up), and Plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)." *Epidemic Sound, AB v. Meta Platforms, Inc.*, No. 22-cv-4223 (JSC), 2022 U.S. Dist. LEXIS 213659, at *1-2 (N.D. Cal. Nov. 28, 2022).

This Complaint was necessitated by Meta's continued mass infringement of Epidemic's copyrighted sound recordings and musical compositions.  The works at issue in this case were all registered with the U.S. Copyright Office after the commencement of *EvM I*.  The Complaint in this action is otherwise substantively the same as the complaint in *EvM I*, and like that previous complaint, satisfies the liberal pleading standard.  Just as this Court dismissed Meta's motion to dismiss in *EvM I*, Epidemic's Complaint in this action sufficiently pleads causes of action for copyright infringement against Meta and Meta's dilatory Motion should be denied.

Meta's Motion simply reiterates the same baseless arguments that were rejected in its failed attempt to dismiss *EvM I* on the pleadings.  Namely, Meta argues that, to state a cause of action for direct copyright infringement, it is not enough for Epidemic to allege that copies of Epidemic's actual sound recordings (and the musical compositions embodied therein) are stored in, reproduced, and distributed from Meta's own curated music library (the "Audio Library") and

-1-

Pryor Cashman LLP

were copied and distributed without authorization via the its content reuse features like Original Audio and Reels Remix (the "OA/RR Features"). Meta argues that Epidemic must plead specific examples of content *infringing* Epidemic's works at issue on Meta's platforms – even though Epidemic has plead that Epidemic's works themselves have been copied on Meta's platforms and by Meta itself. Not only did this Court already reject that argument, it is inconsistent with the law.

As with *EvM I*, Epidemic has sufficiently pleaded its claims for direct infringement through detailed factual allegations which identify: (i) the representative list of 1,000 music tracks at issue; (ii) Epidemic's copyright registrations and ownership of those tracks, including the sound recording and/or musical composition copyrights embodied therein, as set forth on Exhibit A to the Complaint (the "Epidemic Tracks" or the "Works"); and (iii) how copies of those Epidemic Tracks themselves are being directly stored, reproduced, distributed, performed, synchronized, and exploited by Meta without authorization through the Audio Library and the OA/RR Features. Such allegations warrant denial of Meta's Motion, as already held by this Court.

Meta attempts to justify its second attempt at the same motion by referencing ***discovery*** in *EvM I*, which Meta claims is somehow relevant to the adequacy of Epidemic's allegations here. But discovery in a separate case is irrelevant and cannot alter or heighten the pleading standard on a motion to dismiss beyond that required by Rule 8 of the Federal Rules of Civil Procedure. Epidemic has alleged in its Complaint in ***this*** action, that it owns the works at issue and Meta infringed those Epidemic Tracks because they are being exploited without authorization in the Audio Library and have been used without authorization via the OA/RR Features. That is all Epidemic need allege to satisfy its pleading requirement and to warrant denial of Meta's Motion.

Nor does Meta's reference to discovery in *EvM I* serve Meta's argument in any event. Meta points to Epidemic's withdrawal of a handful of works at issue in *EvM I*, which were withdrawn without prejudice and for reasons that, as Meta and the Court know, have absolutely nothing to do with the validity of Epidemic's claims. Neither that withdrawal of a very limited set of works, nor anything else that took place during discovery in *EvM I*, indicates that Epidemic had previously failed to state a claim for infringement. In fact, discovery revealed just the opposite: Meta identified, from data and information in its own systems, ***over 5,000 infringing works*** on its

-2-

Pryor Cashman LLP

platforms infringing at least 869 of Epidemic's sound recordings and musical compositions, the vast majority of which infringing works Epidemic could never have identified in a pleading because only Meta had access to the requisite information. Discovery worked as it should have in *EvM I*.[1]

Moreover, Meta's argument conflates the ultimate burdens of proof with basic pleading requirements. Nothing that took place after the pleading stage in *EvM I*, whether it be in discovery or at summary judgment, changes the fact that the claims in that action were adequately pleaded to begin with. A plaintiff is not required to plead ***and prove*** its claims in its Complaint. Epidemic has adequately pleaded its claims of infringement of the Epidemic Tracks in this case for the same reasons this Court found it adequately pleaded them in *EvM I*.

Meta also moves to dismiss Epidemic's claims for contributory copyright infringement, claiming that the Supreme Court's recent decision in *Cox Communications v. Sony Music Entertainment*, 146 S. Ct. 959 (2026) warrants dismissal of Epidemic's claims. It does not. *Cox* in no way altered the existing Ninth Circuit standard for pleading inducement liability, and, as in *EvM I*, Epidemic adequately alleges that Meta actively and publicly promotes the use of the Audio Library and the OA/RR Features, features that were created and promoted by Meta to target and enable the exponential reuse of audio that by Meta's own definition is ***unlicensed content***. These allegations equally satisfy the *Cox* standard for material contribution by establishing that the tools were tailored to infringement. Thus, Epidemic has adequately pleaded that through these features, Meta is inducing and materially contributing to its users' infringement of Epidemic's works. Epidemic's Complaint states a claim under even the strictest contributory liability standard, and Meta fails to cite a single case that dismissed a contributory infringement claim on facts remotely similar to the infringement alleged here. The Court should (again) deny Meta's Motion in its entirety.

---

[1] All of the Epidemic Tracks are in Meta's Rights Manager system, which scans the audio and identifies matches and the "percentage match" overlap. Beyond the indisputable fact that Epidemic has adequately plead infringement, there is no credible argument that Meta does not have notice of the alleged infringement.

-3-

Pryor Cashman LLP

## II.    STATEMENT OF FACTS

### A.    The Parties

Epidemic is a global music label, publisher and technology company, and is the owner of a catalog of over 50,000 top quality music works in over 160 genres.  (ECF 1, ("Cplt."), ¶ 5.) Epidemic owns all rights in and to both the sound recordings and the underlying musical compositions for all works in its music catalog.  (*Id.*, ¶¶ 2, 22.)

Meta is one of the most well-known social media and technology companies in the world and owns and operates, among other things, the widely used social media platforms and apps Facebook, Instagram and WhatsApp.  (*Id.*, ¶ 17.)

In its Complaint, Epidemic alleges direct and secondary copyright infringement against Meta arising from its storage, reproduction, performance, and distribution of at least 1,000 Epidemic Tracks that were (i) registered with the United States Copyright Office after the commencement of *EvM I* (*id.*, ¶¶ 22, 26-27 & Ex. A), and (ii) have been infringed on Meta's platforms through Meta's online Audio Library and its "Original Audio" and "Reels Remix" content sharing tools, without a license.  (*Id.*, ¶¶ 3, 25.)  The representative list of infringed Epidemic Tracks are identified on Exhibit A to the Complaint.[2]  (*Id.*, Ex. A.)  For each of the Epidemic Tracks, Epidemic identified the song title, artist, the unique ISRC number[3] for the sound recording of the track, and the federal copyright registration number and registration date for the sound recordings and/or musical works at issue.  (*Id.*)  As alleged in the Complaint, the Epidemic Tracks have been infringed by Meta in two distinct ways:  (1) via Meta's Audio Library, and (2) via Meta's content sharing tools, "Original Audio" and "Reels Remix."  (*Id.*, ¶¶ 8-10, 28-33, 36-50.)  The alleged infringements are direct copies of the actual sound recordings embodied in the

---

[2] While Epidemic owns all sound recordings and musical compositions embodied therein for each song in its catalog (including for all of the Epidemic Tracks), in certain instances, the work at issue in this case is either solely the sound recording or the musical composition of the Epidemic Track, as indicated on Exhibit A.  Such limitation is not an indicator that, and should not be construed to indicate that, Epidemic does not own any portion of the Epidemic Track. Rather, Epidemic's inclusion of only one side of the Epidemic Track is merely a function of the date the copyright registrations were issued.  (*Id.* ¶ 30 n.2.)

[3] An "ISRC" number is a universally recognized identification code for sound recordings, used throughout the music industry.  Each ISRC is unique to a specific recording and cannot represent more than one sound recording.  *See* https://usisrc.org/about/index.html.

-4-

Pryor Cashman LLP

Epidemic Tracks and that were identified by Meta's content identification and rights management systems. (*Id.*, ¶¶ 72, 81-86, 93-98.) Meta does not have a license to exploit or otherwise make available the Epidemic Tracks via its Audio Library or the OA/RR Features. (*Id.*, ¶ 25.)

### 1. *Meta's Infringement Via the Audio Library*

Meta has created a curated library of music that Meta populates, stores, manages, organizes and makes available to its users of its social media platforms – the "Audio Library" – for saving, streaming, and synchronization of such music in video content and posts. (*Id.*, ¶ 28.) Meta itself controls the selection of music in its Audio Library. (*Id.*, ¶ 32.) Meta recognizes that it must pay for works to be included in the Audio Library and Meta does, in fact, pay third parties hundreds of millions (if not billions) of dollars to offer works in the Audio Library. (*Id.*, ¶¶ 31, 35, 75-76.)

Meta has, without authorization, included at least 500 of the Epidemic Tracks in its Audio Library. (*Id.*, ¶¶ 29, 33.) Meta has stored, reproduced, made available, synchronized, performed, and distributed these Epidemic Tracks to its users without a license. (*Id.*, 28, 33.) Meta did not obtain a license from Epidemic to include these Epidemic Tracks in the Audio Library, nor did it compensate Epidemic for its use, reproduction, distribution, or synchronization of the Epidemic Tracks via the Audio Library. (*Id.*, ¶¶ 31, 33.) In fact, Meta has been repeatedly put on notice that it does not have such a license. (*Id.*, ¶¶ 70-71.) Because the Epidemic Tracks have been stored, reproduced, made available, and distributed in the Audio Library, Meta's billions of users are able to, among other things, save, stream, and synchronize Epidemic's music with visual content posted on Meta's platforms, without authorization from or compensation to Epidemic. (*Id.*, ¶¶ 31-33, 35.) Meanwhile, Meta is deriving substantial financial benefit from this unauthorized use of the Epidemic Tracks. (*Id.*, ¶ 34.)

### 2. *Meta's Infringement Via the OA/RR Features*

Meta users are given the ability by Meta to create and post audiovisual content, which video posts are often accompanied by an audio component, such as music. (*Id.*, ¶ 37 & Ex. B.) While Meta's users can add music to such content from the Audio Library, a user may also add music from another user's public post or "Reel" to their own content. (*Id.*, ¶ 39 & Ex. C.) Meta's own platforms distinguish between audio that is (purportedly) licensed by Meta from rightsholders

-5-

**Pryor Cashman LLP**

and is available in its Audio Library, and audio that is unlicensed, which Meta terms "original audio." (*Id.*, ¶¶ 42-43 & Ex. D.)

Meta offers an Original Audio[4] feature to its users, which identifies all unlicensed "original audio" in posts on its platforms and enables that audio to be "ripped" or separated from the initial audiovisual content, and reused, including by downloading, saving it to a personal music library, or synchronizing it in a user's subsequent post or audiovisual content. (*Id.*, ¶ 44.) Epidemic alleges that, when users engage the Original Audio feature, Meta extracts or separates the music from the original video content in which it was incorporated, and reproduces, distributes, performs, and stores that audio. (*Id.*, ¶¶ 47-48.) In addition to allowing exponential reproduction and reuse of unlicensed music with the Original Audio feature, Meta has also expanded the feature to incorporate "original audio" into its Audio Library, allowing its users to search for, select, and incorporate popular "original audio" directly from the Audio Library. (*Id.*, ¶ 51.) Thus, Epidemic alleges that Meta itself directly reproduces and distributes unlicensed music (including the Epidemic Tracks) through its Original Audio feature. (*Id.*, ¶¶ 49, 50.)

Meta additionally offers a Reels Remix feature to its users, which allows its users to incorporate another user's complete post, or "Reel," into their own, including any audio that was included in the original Reel, thereby creating a new and original "remix" of the original Reel. (*Id.*, ¶ 53 & Ex. F.) Epidemic alleges that, when the Reels Remix feature is used, Meta reproduces and distributes the audiovisual content being remixed, including the music content being remixed. (*Id.*, ¶ 56.)

Original Audio and Reels Remix are collectively referred to herein as the "OA/RR Features." Epidemic asserts that a substantial number of the Epidemic Tracks have been reproduced, distributed or otherwise exploited and infringed via the OA/RR Features, without authorization. (*Id.*, ¶¶ 50, 57, 59.)

---

[4] The capitalized term "Original Audio," as used herein, refers to the feature that Meta offers to its users that identifies unlicensed audio and enables users to extract and reuse such unlicensed "original audio" on Meta's platforms in their own posts, including the (unlicensed) Epidemic Tracks.

-6-

### 3.    *Meta's Secondary Infringement Via the Audio Library and the OA/RR Features*

Epidemic also alleges, in the alternative, that Meta is secondarily liable for its users' infringement via the Audio Library and the OA/RR Features.  Epidemic alleges that Meta has promoted, encouraged and otherwise induced its users to use the Audio Library and the OA/RR Features to use music for which Meta has no license, including the Epidemic Tracks.  (*Id.*, ¶¶ 106-108, 110, 117-120.)   Epidemic further attached examples of Meta's public advertising and promotion of the use of these tools to reuse unlicensed music to the Complaint.  (*Id.*, Exs. C-F.)  Epidemic further alleges that Meta materially contributes to its users' unauthorized use of unlicensed music, including the Epidemic Tracks, by tailoring its OA/RR Features to infringement.  Specifically, Epidemic has alleged that by (i) intentionally identifying and incorporating unlicensed "original audio" into its Audio Library for on-demand use to its users, and (ii) providing the OA/RR Features, which, by design, identify unlicensed music to Meta users and enable those users to reproduce distribute, synchronize, and perform such unlicensed content, including the Epidemic Tracks, without authorization and on a massive scale, Meta has tailored its tools to infringement.  (*Id.*, ¶¶ 3, 7, 9-10, 44-45, 50-51, 55, 57.)

### B.    Meta's Obstructionist and Willful Conduct

Meta, like other media platforms, offers content creators and licensors certain rights management tools for the purpose of identifying, protecting and monitoring the unauthorized use of its content.  (*Id.*, ¶ 61.)  Meta's version of this tool is called "Rights Manager."  (*Id.*, ¶ 62 & Ex. G.)

Meta has repeatedly refused Epidemic's requests for access to its rights management tool specifically designed for owners of music content (called "Rights Manager for Music").  (*Id.*, ¶ 64.)  Rather, Meta only allowed Epidemic access to its rights management tool for video content (called "Rights Manager Pro"), which fails to provide Epidemic with the ability to address rampant infringement of Epidemic's music at scale.  (*Id.*, ¶¶ 64, 66.)  Epidemic alleges that Meta has deliberately withheld the proper version of the tool, *i.e.*, "Rights Manager for Music," from Epidemic – obviously, a *music* owner and rightsholder – in an intentional and willful effort to hamper Epidemic's ability to protect its intellectual property.  (*Id.*, ¶¶ 66, 69.)  In fact, in response

-7-

Pryor Cashman LLP

to Epidemic's repeated and continued requests for access to the proper rights management tool, Meta has threatened to revoke Epidemic's access to Rights Manager altogether. (*Id.*, ¶¶ 66-68.) If Epidemic had access to the proper version of Rights Manager, it would be able to (or, at least, much better suited to) identify and stop infringement of its catalog, including the Epidemic Tracks, on Meta's platforms. (*Id.*, ¶¶ 4, 69.)

Meta has been on notice of its infringement of Epidemic's catalog for the better part of a decade, yet it continues and Meta refuses to help Epidemic stop or curb it. (*Id.*, ¶¶ 70-74.) And Meta knows it needs a license to utilize Epidemic's catalog, including the Epidemic Tracks, in the ways it does. (*Id.*, ¶¶ 75-78.) Epidemic has adequately alleged willful copyright infringement.

### C.    *EvM I*

On July 20, 2022, Epidemic sued Meta for its massive infringement across Epidemic's music catalog, which related suit is captioned, *Epidemic Sound, AB v. Meta Platforms, Inc.*, Case No. 3:22-cv-04223-JSC, and remains active. Epidemic's claims in *EvM I* concerned the infringement of approximately 900 works owned by Epidemic. The manner of infringement at issue in *EvM I* is identical to the infringements at issue in this case. That is, both this case and *EvM I* concern Meta's willful infringement via the Audio Library and the OA/RR Features. This action concerns the infringement of works that Epidemic registered with the U.S. Copyright Office *after* the commencement of *EvM I*. (*Id.*, ¶ 1.)

The allegations in the two complaints are also largely identical (of course, other than the differing infringed works). (*Compare id. with EvM I*, ECF 14.) In *EvM I*, Meta filed a motion to dismiss under Rule 12(b)(6) and this Court denied Meta's motion (which asserted similar arguments as the present Motion) in full, holding: "The complaint provides 'fair notice of what the . . . claim is and the grounds upon which it rests,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up), and Plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Ashcroft v. Iqbal*, 556

Pryor Cashman LLP

U.S. 662, 663 (2009)." *Epidemic Sound*, 2022 U.S. Dist. LEXIS 213659, at *1-2. Epidemic has adequately stated claims for infringement and Meta's dilatory Motion should be denied.[5]

### III.    ARGUMENT

#### A.    The Liberal Pleading Standard

It is axiomatic that a complaint is sufficient if it gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up); Fed. R. Civ. P. 8(a)(2) (requiring that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). On a motion to dismiss, a court must take all factual allegations as true, to determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Twombly*, 550 U.S. at 555. "A claim has facial plausibility" – and a motion to dismiss should be denied – so long as "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. Notably, the "Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Famous Birthdays, LLC v. SocialEdge, Inc.*, No. 21-cv-9562 (PA) (MRWx), 2022 WL 1591723, at *2 (C.D. Cal. Apr. 15, 2022) (citation omitted).

Despite Meta's argument otherwise here, it has long been held that, at the pleading stage, a complaint "does not need detailed factual allegations." *Facebook v. Power Ventures, Inc.*, No. 08-cv-5780 (JF) (RS), 2009 WL 1299698, at *2 (N.D. Cal. May 11, 2009) (quoting *Twombly*, 550 U.S. at 555). Specifically, courts have repeatedly held that a copyright infringement claim ***need not be pleaded with particularity***. *Sulit v. Sound Choice Inc.*, No. 06-cv-00045 (MJJ), 2006 WL 8442163, at *10 (N.D. Cal. Nov. 14, 2006) ("No heightened pleading standard applies to complaints for copyright infringement. . . . Copyright claims need not be pled with particularity."

---

[5] Meta devotes two pages of its motion to mischaracterizing discovery in *EvM I*, as if that has any impact on whether Epidemic has stated claims for direct and contributory infringement in its Complaint in this action. This Court previously decided that Epidemic has stated such claims, based on virtually identical allegations. But even if this Court were to consider discovery in *EvM I*, that discovery revealed over 5,000 infringing works on Meta's platforms related to nearly 900 works at issue (not including evidence of infringements lost via Meta's spoliation). This discovery only confirmed that Meta is in possession of information regarding the full scope of its infringement. The same will be true in this action.

Pryor Cashman LLP

(citation omitted)); *Clifton v. Houghton Mifflin Harcourt Publ'g Co.*, 152 F. Supp. 3d 1221, 1225 (N.D. Cal. 2015) (plaintiff did not have burden of pleading particularized facts at the pleading stage); *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 617-18 (S.D.N.Y. 2013) (holding that courts are "strictly proscribed" from subjecting "copyright plaintiffs to a heightened level of pleading" and a complaint need not specify "how each particular [work at issue] has been infringed" at the pleading stage).[6]  Epidemic has sufficiently alleged the facts necessary to put Meta on notice of the nature and grounds of its claims and Meta's insistence on further information (which it already has in its possession, custody and control) is beyond what is required as a matter of law.

**B.    Epidemic Sufficiently Pleaded Its Direct Infringement Claim**

*1.    Epidemic Alleged Direct Copyright Infringement By Meta*

To state a claim for copyright infringement, a plaintiff need only plausibly allege that (1) it owns a valid copyright in the work at issue, and (2) the defendant has violated at least one of the exclusive rights granted to copyright holders.[7]  *Mahon v. Mainsail, LLC,* 20-cv-01523 (YGR), 2020 WL 4569597, at *6 (N.D. Cal. Aug. 7, 2020); *Facebook*, 2009 WL 1299698, at *3.  Here, the Complaint adequately alleges each of the elements of direct infringement by Meta.  Indeed, the Court has already effectively determined that Epidemic's claims are sufficiently pleaded, as it denied in full Meta's motion to dismiss the Complaint in *EvM I*, which was based on substantively similar allegations and arose from the same infringing conduct.  *Epidemic Sound*, 2022 U.S. Dist. LEXIS 213659, at *1-2.

There appears to be no dispute that the Complaint sufficiently alleges the first element of a copyright infringement claim – *i.e.*, Epidemic's ownership of 1,000 specifically identified infringed Epidemic Tracks at issue.  (Cplt. ¶¶ 22-27, Ex. A.)  For each Epidemic Track, the

---

[6] Meta has conceded that copyright claims need not be pleaded with particularity, explicitly (and successfully) arguing against the precise position it now asserts on the present Motion. *Facebook*, 2009 WL 3562022, Dkt. 30 at 9 ("copyright claims need not be pled with particularity") (quoting *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001)).

[7] "Rights granted to copyright holders include (1) the right to reproduce the work, (2) the right to prepare derivative works, (3) the right to distribute copies, (4) the right to perform the work publicly, and (5) the right to display the work publicly." *Mahon,* 2020 WL 4569597, at *6 (citing 17 U.S.C. § 106).

-10-

Pryor Cashman LLP

Complaint identifies the song title, artist, the unique ISRC number for the sound recording of the track, and the federal copyright registration number and registration date for the sound recordings and/or musical works at issue. (*Id.*, ¶ 26, Ex. A.)  These registrations show that Epidemic is the copyright owner of all of the Epidemic Tracks. (*Id.*)  The Complaint, therefore, has indisputably satisfied the first element of a claim for copyright infringement. *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-cv-03428 (LHK), 2011 WL 1044899, at *7 (N.D. Cal. Mar. 23, 2011) (complaint satisfied first element of copyright infringement claim where it identified the copyrightable works at issue and alleged that copyright registrations were issued); *Famous Birthdays*, 2022 WL 1591723, at *4 (C.D. Cal. Apr. 15, 2022) (holding that Plaintiff plausibly alleged that it owned a valid copyright in its works where it identified relevant copyright registrations).

The Complaint also sufficiently pleads the second element – that Meta has violated at least one of Epidemic's exclusive rights as a copyright holder.  The Complaint sets forth detailed allegations that Meta has created and curated an Audio Library of music that Meta offers to all of its users for exploitation in video content and posts, and that in making the Audio Library available to users, Meta reproduces, performs, distributes, synchronizes and otherwise exploits the Epidemic Tracks contained in the Audio Library to users without a license. (Cplt. ¶ 28.)  The Complaint further specifically alleges that at least 500 of the Epidemic Tracks at issue have been, and/or as of the date of the filing of the Complaint still were being, copied and distributed by Meta through the Audio Library and made available to its users, all without a license. (*Id.*, ¶ 29.)  The Complaint alleges that Meta itself controls the selection of music in its Audio Library, *i.e.*, that it is Meta that reproduced, distributed, performed, and synchronized the Epidemic Tracks through the Audio Library. (*Id.*, ¶ 32.)  The Complaint also provides details as to how Meta further enables its billions of users to exploit the Epidemic Tracks through the Audio Library without authorization or compensation to Epidemic. (*Id.*, ¶¶ 31, 83-85, 95-97.)

Similarly, the Complaint alleges that Meta infringed Epidemic's rights through the OA/RR Features.  The Complaint alleges, in detail, that Meta created these content sharing tools to enable Meta's users to exploit unlicensed music on Meta's platforms, including unauthorized copies of

-11-

the Epidemic Tracks. (*Id.*, ¶¶ 42-44, 53.) The Complaint alleges that Meta itself extracts, stores, reproduces and distributes the unlicensed copies of the Epidemic Tracks through the OA/RR Features, thereby constituting direct infringement by Meta. (*Id.*, ¶¶ 47-49, 86, 98.) In fact, Meta expanded the Original Audio feature to incorporate "original audio," *i.e.*, unlicensed music, into its Audio Library, and that unlicensed music (including the Epidemic Tracks) is then copied and distributed by Meta to its users. (*Id.*, ¶¶ 51-52.)

Thus, the Complaint sufficiently alleges facts regarding the nature of Epidemic's direct infringement claim, including Epidemic's ownership of the Epidemic Tracks infringed, and Meta's infringing conduct. *See Take-Two Interactive Software, Inc. v. PlayerAuctions, Inc.*, No. 25-cv-01880 (ODW) (JDEx), 2025 WL 2459553, at *4 (C.D. Cal. Aug. 26, 2025) ("By alleging the infringement location—the online marketplace—and the infringing content—GTA V images—Take-Two sufficiently alleges that PlayerAuctions directly infringed its copyrighted content."); *Etereo Spirits, LLC v. James R. Ling*, No. 21-cv-00302 (JVS) (KESx), 2021 WL 3914256, at *6 (C.D. Cal. July 15, 2021) (denying motion to dismiss where complaint identified a general set of works that were potentially infringed and offered on defendants' "website and via social media," which "sufficiently notifies Defendants as to the type of infringing conduct and the source of the claims") (cleaned up); *Famous Birthdays*, 2022 WL 1591723, at *4 (denying motion to dismiss because the complaint pleaded facts about the infringing conduct and the infringed works); *Brocade*, 2011 WL 1044899, at *7-8 (plaintiff alleged a plausible claim of copyright infringement and sufficiently pleaded the second element of claim where it alleged that defendant used and copied plaintiff's source code in making its product and retained a copy of plaintiff's source code); *Mahon*, 2020 WL 4569597, at *6 (allegation that defendant requested a copy of and continued to display plaintiff's film without authorization was sufficient to create a plausible inference that defendant distributed the film without authorization and thus, sufficiently stated a claim for copyright infringement); *see also Elektra Ent. Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 238-39 (S.D.N.Y. 2008) ("[T]he [c]omplaint adequately alleges that [d]efendant has in the past used, and as of the filing of the [c]omplaint . . . has continued to use, an online media distribution system to download, distribute, and/or make available, copyright works belonging to [p]laintiffs.").

-12-

### 2. *The Court Should (Again) Reject Meta's Incorrect Pleading Standard*

Meta's Motion simply regurgitates the same argument it proffered in *EvM I* – *i.e.*, that Epidemic failed to state a claim for direct copyright infringement because the Complaint does not identify the "specific allegedly unauthorized content on Meta's platforms." **This Court has already rejected this exact argument**. Indeed, as Meta itself concedes, in *EvM I*, Epidemic filed an extremely similar complaint with the same substantive facts and allegations and this Court unambiguously held that "[t]he complaint provides 'fair notice of what the . . . claim is and the grounds upon which it rests,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up), and Plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)." *Epidemic Sound*, 2022 U.S. Dist. LEXIS 213659, at *1-2. This Court's holding in *EvM I* was and is aligned with numerous other courts that have rejected similar arguments. *See, e.g.*, *Take-Two Interactive Software*, 2025 WL 2459553, at *3 (rejecting argument that infringement allegations were "too vague" because they did not specifically identify allegedly "infringing images"); *Etereo Spirits*, 2021 WL 3914256, at *6 (denying motion to dismiss where complaint identified "a general set of intellectual property" that was potentially infringed, though did not specifically identify "which [of those hundreds of] works were allegedly infringed"); *Facebook*, 2009 WL 1299698, at *4 (denying motion to dismiss because "Facebook need not allege the exact content that Defendants are suspected of copying at this stage of the proceedings").

Meta acknowledges this Court's prior rejection of its argument, but advances it anyway. Meta argues that discovery in *EvM I* – which Meta mischaracterizes as having been "needless" and leading to "copious waste" – somehow demonstrates that Epidemic's allegations are inadequate. But Meta fails to point to anything in discovery in *EvM I* that could or does bear on whether Epidemic has adequately pleaded a claim for copyright infringement in this case.[8] Indeed,

---

[8] Meta relies upon Epidemic's withdrawal of certain works during discovery (none of which are at issue in this action) in *EvM I*, to suggest "more" is required of Epidemic in this action. The withdrawal of 52 works without prejudice and Epidemic's decision not to pursue summary judgment on a handful of works where discovery revealed that Meta's systems flagged false matches to Epidemic's tracks has no impact on the pleading standard for copyright infringement in this action.

-13-

courts routinely recognize that, on motion to dismiss, a court may take judicial notice of public filings, but such notice is limited to the fact of the filing and not the truth of matters asserted again. *See, e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (reversing the granting of a motion to dismiss where the district court "erred . . . by taking judicial notice of disputed matters of fact to support its ruling"); *Papasan v. Dometic Corp.*, No. 16-cv-02117 (HSG), 2017 WL 4865602, at \*11 (N.D. Cal. Oct. 27, 2017) (denying motion to dismiss because defendant "is seeking to take judicial notice of public records not for their existence, but to prove a disputed fact," which "is not appropriate on a motion to dismiss").[9]

Even if the Court were to consider what discovery revealed in *EvM I* on this Motion (which, on motion to dismiss, it cannot), it undermines Meta's assertion that it "has no way of knowing" what content on its platforms "gave rise to Epidemic's most recent claims of infringement."  In discovery in *EvM I*, Meta identified, from information on its own systems *to which only Meta has access*, nearly 5,000 infringing works matching the Epidemic tracks at issue.  These disclosed infringing works, which are the subject of Epidemic's pending summary judgment motion, reveal that Meta has far more information about matching tracks on its platforms than Epidemic could discover without access to Meta's information, but which supported Epidemic's allegations in its complaint.

As recognized by this Court in *EvM I* and other courts in this District, where certain facts, including regarding the infringing material, are within the knowledge of the defendant alone, a plaintiff need not allege them at the pleading stage.  *Brocade*, 2011 WL 1044899, at \*8 (more particularized facts concerning infringing work required examination of information solely within

---

[9] While Meta cites to nearly a dozen different filings from *EvM I*, it has failed to provide any basis on which this Court may consider such documents on this Motion. *See Novation Sols., Inc. v. Issuance Inc*., No. 23-cv-00696 (WLH) (KSx), 2023 WL 5505908, at \*3 (C.D. Cal. June 27, 2023) ("the party requesting judicial notice must show that the fact 'is not subject to reasonable dispute' because it is either generally known or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned'") (quoting *Lee*, 250 F.3d at 689).  Moreover, the Motion goes far beyond discussing the mere fact of filings in *EvM I*. and in many instances mischaracterizes them.  For example, Meta alludes to supposed "ethical conflicts of Epidemic's counsel" that are not referenced in the docket entries cited by Meta as support for that statement. The Court should reject Meta's efforts to improperly introduce documents on a motion to dismiss, as it did in *EvM I*. *Epidemic Sound*, 2022 U.S. Dist. LEXIS 213659 at \*2 ("Moreover, [Meta's] motion improperly relies on materials outside the complaint.").

-14-

Pryor Cashman LLP

defendant's possession); *Houghton Mifflin Harcourt*, 152 F. Supp. 3d at 1225 (additional facts were peculiarly within the possession and control of defendant); *Clifton v. Pearson Educ., Inc.*, No. 11-cv-03640 (EJD), 2012 WL 1565236, at *5 (N.D. Cal. May 2, 2012) (plaintiff had alleged sufficient facts to make its claim plausible, and additional information regarding unauthorized uses was in defendant's sole possession and control)  Indeed, Meta itself has argued this very point. *See Facebook*, 2009 WL 3562022, Dkt. 30 at 14.  Accordingly, Meta's assertion that Epidemic is required to identify the specific infringing works that give rise to Epidemic's claims for its complaint to survive is wholly unsupported by the law.

Meta also suggests that Epidemic must identify every infringing copy of each Epidemic Track so that the Court can conduct a "substantial similarity analysis" at this early stage.  In support, Meta cites and selectively quotes from inapposite cases where a defendant moved to dismiss claims on the specific grounds that a particular infringing work was not substantially similar to the protectible elements of the allegedly infringed and undeniably ***different*** work owned by the Plaintiff.  *See, e.g.*, *Jangle Vision, LLC v. Alexander Wang, Inc.*, No. 22-55642, 2023 WL 7042518, at *1 (9th Cir. Oct. 26, 2023) (comparison of different characters); *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 953 (9th Cir. 2019) (comparison of different lace designs); *Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158, 159 (9th Cir. 2020) (comparison of play with film and book); *Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 994 (9th Cir. 2025) (comparison of different sculptures).[10]  However, here, Epidemic alleges that Meta is offering copies of the actual Epidemic Tracks through its Audio Library, and permitting its users to rip Epidemic Tracks from posts and incorporate them into additional content.  In such cases, with allegations of wholesale reproduction of identified works, a substantial similarity

---

[10] Meta also again claims, as it did in *EvM I*, that *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175-76 (N.D. Cal. 2015) "is instructive."  The Court has already rejected *Blizzard*'s relevance here.  *Blizzard* is inapposite, as the plaintiff in that case, unlike here, failed to identify any of the *infringed* or infringing content at issue.  The issue was whether defendant had copied certain unidentified characters or design features within plaintiff's video games, and whether those components were *protectible* or not.  Because plaintiffs had failed to identify the specific *protectible* elements (the characters and designs) within the video games that were purportedly copied by the defendant in its own video game, the Court held that plaintiffs had not met their burden.  *Id.* at 1175-76.  Here, it is undisputed that Epidemic identified the specific infringed works at issue, all of which are on Meta's platform.

-15-

Pryor Cashman LLP

analysis is not required at the pleading stage. *See, e.g.*, *Take-Two Interactive Software*, 2025 WL 2459553, at \*4 ("Where a plaintiff's claim is premised on unauthorized copying, a plaintiff is not required to allege the exact content that defendants are suspected of copying.") (cleaned up); *Etereo Spirits*, 2021 WL 3914256, at \*6 (no substantial similarity analysis where plaintiff alleged that works were copied and distributed on defendants' "website and via social media").[11]

Moreover, none of the cases cited by Meta are mass infringement cases, like this one, in which requiring a plaintiff to identify potentially thousands of infringing works – without access to the data Meta maintains – much less comparing all of them to infringing works, would be "incompatible with the types of claims involved in this case." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001); *Etereo Spirits*, 2021 WL 3914256, at \*6 ("Here, the situation is more like *Perfect 10*, i.e., owing to the 'wide variation in number' of possibly infringing intellectual property, 'Rule 8 does not require the highly detailed pleading demanded by' defendants.") (citation omitted).

Meta's cases stand for nothing more than the unremarkable proposition that courts may, where appropriate, conduct a substantial similarity analysis on a motion to dismiss. Meta does not argue that a plaintiff is *required* to permit a substantial similarity analysis to be conducted at the pleading stage, nor does Meta wish to do one. Indeed, Meta – having previously and successfully argued that a plaintiff is not even required to specifically identify the infringed material, *Facebook*, 2009 WL 1299698, at \*3-4 – knows that this argument has no relevance here. *See Krafton, Inc. v. Apple, Inc.*, No. 22-cv-209 (GW) (MRWx), 2023 WL 2628068, at \*2 (C.D. Cal. Feb. 24, 2023) (denying motion to dismiss and declining to conduct substantial similarity analysis despite

---

[11] Meta's reliance on other cases where claims regarding infringement of admittedly different works were dismissed is similarly misguided. In *Plakhova v. Hood*, the plaintiff "failed . . . to specify which of [its] twenty-eight lamps" was the subject of its infringement claims and allegedly similar to defendants' different lamps. No. 16-cv-08245 (TJH) (FFMx), 2017 WL 10592315, at \*1 (C.D. Cal. June 20, 2017). And in *Evans v. NBCUniversal Media, LLC*, the plaintiff claimed the successful "Bee Movie" film infringed his plainly different screenplay, but he failed to allege any "details about the parties' works." No. 21-cv-0984 (CBM) (PDx), 2021 WL 4513624, at \*5 (C.D. Cal. July 23, 2021).

-16-

Pryor Cashman LLP

defendant's request because such analyses "are certainly *possible*" at the pleading stage, but not required).[12]

### C.  Epidemic Sufficiently Pleaded Its Alternative Contributory Infringement Claim

Epidemic has also sufficiently met the pleading standard to state a plausible claim, in the alternative, for contributory infringement as a matter of law.  Epidemic's allegations establish secondary liability under both the Ninth Circuit standard for contributory infringement as well as the standard articulated under *Cox Communications v. Sony Music Entertainment*, 146 S. Ct. 959 (2026).[13]  In *Cox*, the Supreme Court held that a copyright owner can prove that "[t]he provider of a service" is contributorily liable for a user's infringement "if it intended that the provided service be used for infringement," and that such intent can be shown where either (i) the provider "induced the infringement" or (ii) "the provided service is tailored to that infringement."  146 S. Ct. at 967.  Epidemic has adequately pleaded both forms of intent.[14]

---

[12] Meta misleadingly quotes from 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13D.06 (rev. ed. 2026), which is contained within the chapter on **proving** "The Prima Facie Case" of infringement.  Nimmer's chapter on **pleading** requirements actually rejects Meta's position, noting that "[s]o long as the allegations of the complaint as a whole raise a reasonable expectation that discovery will reveal evidence of the necessary elements for copyright infringement, plaintiff may continue to prosecute the case," and specifically states that a plaintiff is not required to submit the infringing works to the court for analysis.  4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.09 (rev. ed. 2026) (quotation omitted).

[13] While Meta relies on the recent *Cox* decision, it also repeatedly cites to case law decided under the pre-existing Ninth Circuit standard.  Epidemic maintains that that the Supreme Court did not expressly reject the Ninth Circuit standard on material contribution (and did not alter the inducement standard at all), especially where the decision in *Cox* was applicable to a pure internet service provider – which Meta is not – and that the Ninth Circuit standard could still be applicable here.  Nonetheless, Epidemic's Complaint survives under either standard.  Were the Court to hold otherwise, Epidemic respectfully requests an opportunity to amend its Complaint to satisfy *Cox*, which decision was issued after Epidemic filed its Complaint.

[14] The majority of the cases relied on by Meta for its contributory liability arguments were decided either on summary judgment or after trial and thus hold little – if any – weight regarding the sufficiency of Epidemic's allegations.  And its cited cases decided at the pleading stage are not remotely analogous to Epidemic's alleged infringements here.  For example, in *Luvdarts, LLC v. AT & T Mobility, LLC*, a plaintiff sued mobile carriers, including AT&T, claiming they were liable for the sharing of infringing content through its customers' text messages.  710 F.3d 1068, 1070 (9th Cir. 2013).  The claims were dismissed because carriers lack knowledge of what is sent via their customers' text messages, and thus, the Court did not even reach the issue of whether inducement or material contribution was properly pleaded.  *Id.* at 1073 & n. 2.  Meta does not even argue it lacks knowledge of what is posted on its platforms.  And in *Cobbler Nevada, LLC v. Gonzales*, a plaintiff tried holding an individual owner of an adult foster care home liable for what was downloaded on his internet connection at the home, because he supposedly failed to secure his internet connection.  901 F.3d 1142, 1144 (9th Cir. 2018).  The court outright rejected that

-17-

Pryor Cashman LLP

### 1.    *Epidemic Sufficiently Pleaded Inducement*

To state a claim for inducement, a plaintiff must allege "(1) the distribution of a device or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, and (4) causation." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005)).  The recent *Cox* decision echoed and expressly reaffirmed that *Grokster* standard.  *Cox*, 146 S. Ct. at 967 (citing *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)).  Epidemic's Complaint satisfies each of these elements.

As set forth above, Epidemic has alleged that Meta offers its products – *i.e.*, the Audio Library and OA/RR Feature – to its billions of users. (Cplt. ¶¶ 28, 31, 44, 53, 58.)  These products have resulted in rampant unauthorized uses of the copyrighted Epidemic Tracks at issue by Meta's users. (*Id.*, ¶¶ 31, 50, 57.)  Meta actively developed, promoted, and encouraged its users to use the Audio Library and the OA/RR Features to reuse *unlicensed* music available on its platforms, including by specifically identifying unlicensed music to its users as "original audio," adding that unlicensed music into its Audio Library for on-demand use by its users, and providing its users with the ability to, and advertising the capability of, ripping out unlicensed music from existing audiovisual works for use in subsequent audiovisual posts created on platform to its users.  (*See id.*, ¶¶ 3, 6, 10-11, 36, 58, 107-08, 119-20 & Exs. C-F.)  For example, Epidemic alleges that Meta publicly and openly draws a distinction between "Licensed" audio contained in Reels and original audio, thereby acknowledging and admitting that original audio is, by definition, **unlicensed**. (*Id.*, ¶¶ 42-43 & Ex. D.)  And Meta publicly encourages and promotes the use of its Original Audio feature, *i.e.*, the ripping of unlicensed audio from one Reel and its incorporation into another Reel. (*Id.*, Exs. D-E.)  Meta similarly publicly encourages and promotes the use of its Reels Remix feature. (*Id.*, Ex. F.)

Thus, while Meta attempts to argue that Epidemic has failed to state a claim because **the post-trial record** in *Cox* did not support an inducement finding in that case (an irrelevant

theory because a failure to take steps to prevent infringement, alone, cannot give rise to contributory liability. *Id.* at 1149-50.  Epidemic alleges far more than that.

-18-

Pryor Cashman LLP

comparison in any event), here, Epidemic has not only alleged explicit promotion, marketing, and intent by Meta for its users to use unlicensed music on its platforms without authorization, but has included examples of such promotion and marketing as exhibits to the Complaint.[15]  Such public promotion of the infringing tool is more than sufficient to plead inducement.  On this point, *Andersen v. Stability AI Ltd.*, a case cited **by Meta**, is instructive.  744 F. Supp. 3d 956 (N.D. Cal. 2024).  There, the court held that inducement was sufficiently pleaded where defendant's CEO publicly described the allegedly infringing AI tool as allowing the "recreat[ion]" of images, which the plaintiff alleged were copyrighted.  *Id.* at 968; *id.* at 975 (allegations that other defendant "actively induces others to download" and use infringing software "are sufficient" to plead inducement); *Beijing Meishe Network Tech. Co. v. TikTok Inc.*, No. 23-cv-06012 (SI), 2024 WL 1772833, at *9 (N.D. Cal. Apr. 23, 2024) (inducement adequately pleaded where complaint "identifies the alleged third-party infringers – TikTop app users" and further "alleges that defendants induce users to download the TikTok app and provide instructions online for doing so"); *Amazon Content Servs. LLC v. DeBarr*, 793 F. Supp. 3d 1242, 1253 (C.D. Cal. 2025) (inducement sufficiently pleaded where "Plaintiffs allege that DeBarr advertised [infringing tool] on his YouTube channel and gave away free subscriptions to Outer Limits over a recorded live chat on YouTube that attracted an audience of over 100 people"); *see also Fung*, 710 F.3d at 1034-35.  Accordingly, Epidemic's allegations sufficiently state a claim for contributory infringement on an inducement theory.

### 2.   *Epidemic Sufficiently Pleaded Material Contribution*

While the *Cox* decision did not alter any portion of the Ninth Circuit standard on inducement, it, *arguendo*, may have narrowed (though not expressly) the Ninth Circuit standard

---

[15] Meta's arguments that Epidemic cannot state a claim for inducement because Meta purportedly has sought to combat infringement is equally unavailing.  Leaving aside that such assertions are outside the four corners of the Complaint, Meta attempts to conflate its terms of service governing uploaded User Generated Content ("UGC") to reuses of content that Meta specifically identifies to its users as unlicensed music on its platforms, which Meta publicly enables, encourages and promotes despite knowing it has no license for such further use of the music.  Nor does Meta's argument that it developed Rights Manager help its argument, as the Complaint explicitly alleges that Meta has refused Epidemic access to the appropriate Rights Manager tool that would enable Epidemic to identify and address the infringements at issue.

-19-

Pryor Cashman LLP

on secondary liability on a material contribution theory. According to *Cox,* contributory liability can also be shown where the "provided service is tailored to that infringement." *Cox*, 146 S. Ct. at 967. "A service is tailored to infringement if it is 'not capable of substantial or commercially significant noninfringing uses.'" *Id*. (cleaned up) (emphasis added). Here, Epidemic has alleged that the OA/RR Features (as well as the newly developed portion of the Audio Library which knowingly features unlicensed music) were specifically designed and targeted to (i) identify audio in content featured on Meta's platforms, for which Meta knows it has no license (Cplt. ¶¶ 42-43 & Ex. D), and (ii) enable its users to reuse that unlicensed content, proliferating unlicensed music uses across its platforms. (*Id.*, ¶¶ 44-45, 50-51, 55, 57.) Epidemic alleges that the OA/RR Features are specifically designed by Meta to allow "massive" and "viral" "infringement" (*id.*, ¶ 3), "unlimited copying" by its users (*id.*, ¶ 45), "exponential reproduction and reuse of unlicensed music" (*id.*, ¶ 51), and "exponential infringement of works." (*Id.*, ¶ 55; *see also id.*, ¶ 9.) By making the OA/RR Features available with the designed intent to target and exploit unlicensed audio – which "original audio" is identified by Meta's systems and then permitted to be reused by users (*id.*, ¶¶ 40-45 & Ex. D) – the OA/RR Features are tailored to infringement. (*Id.*, ¶ 7 (infringement is "primary purpose" of features).) Thus, by designing features whose explicit function is to facilitate the ripping and redistribution of content (music or otherwise) that Meta itself classifies as *unlicensed*, Meta has effectively tailored that feature to infringement.

Epidemic has further alleged that even after being sued for these tools in *EvM I*, Meta chose to expand access and further tailor its products to unauthorized use of music, including the Epidemic Tracks, by adding a feature to its Audio Library that specifically curates and stores unlicensed audio for further use by its users. (*Id.*, ¶¶ 10, 51-52.) Such tailoring of a product to encourage rampant use of music for which Meta concedes it has no license, is precisely tailoring to infringement. *See, e.g.*, *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (reversing and holding material contribution adequately pleaded where "it would be difficult for the infringing activity to take place in the massive quantities alleged without the [infringing tool]"); *Facebook*, 2009 WL 1299698, at *4 (denying motion to dismiss claims of alleged contributory infringement by software that "creat[es] . . . unauthorized copy" of copyrighted work); *Andersen*,

-20-

Pryor Cashman LLP

744 F. Supp. 3d at 969 ("The plausible inferences at this juncture are that [the infringing AI tool] *by operation* by end users creates copyright infringement and was created to facilitate that infringement by design. . . . Whether true and whether the result of a glitch (as Stability contends) or by design (plaintiffs' contention) will be tested at a later date. The allegations of induced infringement are sufficient.").[16]

Because Epidemic has alleged, and Meta cannot dispute, that it developed, implemented and promotes features that are designed to specifically target and enable user exploitation of audio, for which it has no license, across its platforms, Meta instead attempts to redefine the product or tool at issue, arguing that "Reels" product has lawful and noninfringing uses. But the product at issue is not "Reels" or any other audiovisual post on Meta's platforms. Rather, it is the specific Original Audio and Reels Remix products that it offers to its users to enable reuses of unlicensed audio.[17] Meta cannot claim that creating a tool to perpetuate use of audio for which Meta admits it has no rights has a lawful purpose.

Epidemic has sufficiently alleged that Meta is liable for providing tools tailored to infringement.

### IV.   CONCLUSION

For the foregoing reasons, Epidemic respectfully requests that the Court deny Meta's Motion, and grant Epidemic such other and further relief as may be just and proper. Should the

---

[16] Meta cites *Andersen* for the proposition that courts have "acknowledged" that "even Stability AI's artificial intelligence software" is capable of "substantial noninfringing uses." Meta misreads *Andersen*. While the court noted that the defendant "***argues***" that the plaintiff does not allege substantial noninfringing use, the court then goes on to distinguish plaintiff's allegations of the infringing tool from the "VCRs" at issue in *Sony*, and holds that substantial noninfringing use was adequately pleaded: "Instead, this is a case where plaintiffs allege that Stable Diffusion is built to a significant extent on copyrighted works and that the way the product operates necessarily invokes copies or protected elements of those works." *Id.* at 969. In other words, plaintiff sufficiently alleged, as does Epidemic, that the tool was not capable of substantial noninfringing use. This reading is confirmed by a review of the plaintiff's brief, which plainly argues that Stability's AI tool is not capable of substantial noninfringing use. *Andersen*, Dkt. 174 at 6 (arguing that "Plaintiffs have adequately alleged that the Stable Diffusion models are fundamentally built on infringement because the copying of copyrighted work is integral to the models' training.").

[17] Meta's argument that the Original Audio feature can be used to reuse other types of unlicensed audio does not insulate Meta. Just because the "audio" is not music does not mean it is not subject to copyright protection.

-21-

Pryor Cashman LLP

Court grant Meta's Motion in any part, Epidemic respectfully requests an opportunity to replead the dismissed claims.

Dated: May 14, 2026                    PRYOR CASHMAN LLP

                                       By: *s/ Ilene S. Farkas*

                                       Ilene Farkas (*pro hac vice*)
                                       ifarkas@pryorcashman.com
                                       M. Mona Simonian (*pro hac vice*)
                                       msimonian@pryorcashman.com
                                       Marion R. Harris (*pro hac vice*)
                                       *mharris@pryorcashman.com*
                                       Brian M. Maida (*pro hac vice*)
                                       *bmaida@pryorcashman.com*
                                       7 Times Square
                                       New York, NY 10036
                                       Telephone:  +1.212.421.4100

                                       *Attorneys for Plaintiff Epidemic Sound, AB*


Dated: May 14, 2026                    BRAUNHAGEY & BORDEN LLP

                                       By: *s/Adam S. Cashman*

                                       Adam S. Cashman (Bar No. 255063)
                                       cashman@braunhagey.com
                                       747 Front Street, 4th Floor
                                       San Francisco, California 94111
                                       Phone: (415) 599-0210
                                       Fax: (415) 599-0210

                                       *Attorneys for Plaintiff Epidemic Sound, AB*

-22-

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.


Dated:  May 14, 2026                          */s/ Brian M. Maida*
                                              Brian M. Maida

**Pryor Cashman LLP**

-23-