LATHAM & WATKINS LLP
   Joseph R. Wetzel (SBN 238008)
   Brittany N. Lovejoy (SBN 286813)
505 Montgomery Street, Suite 2000
San Francisco, California  94111
Telephone:  415.391.0600
Email:  *Joe.Wetzel@lw.com*
      *Britt.Lovejoy@lw.com*

LATHAM & WATKINS LLP
   Allison L. Stillman (*pro hac vice*)
1271 Avenue of the Americas
New York, New York  10020
Telephone:  212.906.1200
Email:    *Alli.Stillman@lw.com*

LATHAM & WATKINS LLP
   Sarang V. Damle (*pro hac vice*)
   Brent T.F. Murphy (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
Telephone:  202.637.2200
Email:  *Sy.Damle@lw.com*
      *Brent.Murphy@lw.com*

*Attorneys for Defendant Meta Platforms, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| EPIDEMIC SOUND, AB, <br><br> Plaintiff, <br><br> vs. <br><br> META PLATFORMS, INC., <br><br> Defendant. | CASE NO. 3:25-cv-10355-JSC <br><br> **DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF EPIDEMIC SOUND, AB'S COMPLAINT** <br><br> Related Case:  *Epidemic Sound, AB v. Meta Platforms, Inc.*, No. 3:22-cv-04223-JSC <br><br> The Honorable Jacqueline Scott Corley <br> Hearing Date: June 18, 2026 <br> Hearing Time: 10:00 am <br> Courtroom: 8, 19th Floor |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   ARGUMENT .................................................................................................................. 1

      A.    Epidemic Fails to State a Claim for Direct Copyright Infringement ..................... 1

      B.    Epidemic Fails to State a Claim for Contributory Copyright
            Infringement .......................................................................................................... 6

            1.    *Cox* Forecloses Liability Based on Material Contribution or
                  the Simple Measures Test .......................................................................... 7

            2.    Epidemic Has Not Plausibly Alleged That Meta Induced
                  Infringement ............................................................................................... 8

            3.    Epidemic Has Not Plausibly Alleged That Original Audio
                  or Reels Remix Are Services Tailored to Infringement ........................... 11

            4.    Epidemic Has Not Justified Its Request for Leave to
                  Amend ...................................................................................................... 12

III.  CONCLUSION ............................................................................................................ 12

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*A&M Recs., Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ....................................................................................................8

*Ahmed v. Uber Techs., Inc.*,
2026 WL 1127460 (S.D. Fla. Apr. 27, 2026) ............................................................................8

*Amazon Content Servs. LLC v. DeBarr*,
793 F. Supp. 3d 1242 (C.D. Cal. 2025) ...................................................................................10

*Andersen v. Stability AI Ltd.*,
744 F. Supp. 3d 956 (N.D. Cal. 2024) .....................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................................6, 11

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*,
2024 WL 1772833 (N.D. Cal. Apr. 23, 2024) .........................................................................10

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
2011 WL 1044899 (N.D. Cal. Mar. 23, 2011) ...........................................................................4

*Cengage Learning Inc. v. Google LLC*,
2026 WL 1266265 (S.D.N.Y. May 8, 2026) ..............................................................................8

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) ...................................................................................................9

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
146 S. Ct. 959 (2026) ........................................................................................................ *passim*

*Etereo Spirits, LLC v. James R. Ling*,
2021 WL 3914256 (C.D. Cal. July 15, 2021) ............................................................................4

*Facebook, Inc. v. Power Ventures, Inc.*,
2009 WL 1299698 (N.D. Cal. May 11, 2009) .......................................................................5, 12

*Famous Birthdays, LLC v. Social Edge, Inc.*,
2022 WL 1591723 (C.D. Cal. Apr. 15, 2022) ...........................................................................4

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) ......................................................................................................12

*Ghosh v. City of Berkeley*,
2015 WL 1516925 (N.D. Cal. Apr. 1, 2015) ............................................................................12

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ............................................................................................................9

*Justice v. Uncharted Labs, Inc.*,
   2026 WL 1430232 (S.D.N.Y. May 21, 2026) ....................................................................2

*Krafton, Inc. v. Apple, Inc.*,
   2023 WL 2628068 (C.D. Cal. Feb. 24, 2023)................................................................5, 6

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ...........................................................................................8

*Mahon v. Mainsail LLC*,
   2020 WL 4569597 (N.D. Cal. Aug. 7, 2020) ....................................................................4

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)............................................................................................................9

*Miller v. Gammie*,
   335 F.3d 889 (9th Cir. 2003) (en banc) .............................................................................7

*Nazemian v. Nvidia Corp.*,
   2026 WL 1229583 (N.D. Cal. May 5, 2026) .....................................................................8

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ...........................................................................................8

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
   167 F. Supp. 2d 1114 (C.D. Cal. 2001) .............................................................................3

*Taghadomi v. United States*,
   401 F.3d 1080 (9th Cir. 2005) .......................................................................................7, 8

*Take-Two Interactive Software, Inc. v. PlayerAuctions, Inc.*,
   2025 WL 2459553 (C.D. Cal. Aug. 26, 2025)....................................................................4

*Trudeau v. Google LLC*,
   349 F. Supp. 3d 869 (N.D. Cal. 2018) .............................................................................10

*TTEC Digit., LLC v. Go Configure, LLC*,
   2025 WL 2469329 (N.D. Cal. Aug. 27, 2025) .................................................................11

*U.S. Care, Inc. v. Pioneer Life Ins. Co. of Ill.*,
   244 F. Supp. 2d 1057 (C.D. Cal. Nov. 22, 2002) ............................................................12

*United States v. Fernandez*,
   388 F.3d 1199 (9th Cir. 2004) ...........................................................................................7

*Wilson v. Target Corp.*,
   2025 WL 3114455 (N.D. Cal. Nov. 6, 2025) ...................................................................12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

META'S REPLY ISO MOTION TO DISMISS
CASE NO. 3:25-cv-10355-JSC

**OTHER AUTHORITIES**

Bryan A. Garner et al., *The Law of Judicial Precedent* 255 (2016) ...................................................6

*Induce*, Webster's New International Dictionary 1269 (2d ed. 1945)...........................................9

*Meta Terms of Service*, Facebook, https://www.facebook.com/terms (last visited
    June 1, 2026)..............................................................................................................10, 11

## I. INTRODUCTION

Epidemic's opposition (Dkt. 51, "Opp.") only reinforces that it has not provided Meta with adequate notice of the scope and contours of its infringement claims. Epidemic concedes that the Complaint does not identify a single allegedly infringing work on Meta's platforms that corresponds to any of its 1,000 Asserted Works. That concession is dispositive.

Epidemic responds that it had no obligation to identify *any* infringing work. That position is not supported by either the case law or common sense. Copyright infringement requires proof that one work copied another. But without any allegation about the alleged copy, it is impossible (1) for Meta to know which tracks on its vast platforms Epidemic believes infringe one of its Asserted Works, and therefore to have adequate notice of any of Epidemic's claims, or (2) for the Court to assess whether Epidemic has plausibly alleged substantial similarity between any accused work and any Asserted Work. Instead, Epidemic chose to withhold the identification of the accused works forming the basis of its claim and ask Meta, and the Court, to take its word for it and accept the conclusory assertion that there are infringing works on Meta's services. Neither copyright law nor the Federal Rules of Civil Procedure permit that result.

Epidemic's contributory infringement claims fail for an independent reason. Epidemic repeatedly asserts in its opposition that Meta developed and promoted Audio Library, Original Audio, and Reels Remix as tools tailored to or inducing reuse of unlicensed music available on its platforms. But Epidemic's mere say-so does not make it so. And its conclusory assertion is entirely unsupported by, and indeed contradicted by, the allegations in the Complaint and the materials attached to the Complaint.

This Court should dismiss Epidemic's Complaint in its entirety.

## II. ARGUMENT

### A. Epidemic Fails to State a Claim for Direct Copyright Infringement

All agree that Epidemic bears the burden of pleading sufficient facts to plausibly show that Meta copied each of Epidemic's works. *See* Opp. 10. Epidemic has not met this burden, because its Complaint does not identify a single track that appeared on Meta's platforms that Epidemic

asserts infringed any one of its Asserted Works.  Mot. 7-10.  Epidemic's attempts to avoid its burden all fail.  *See* Opp. 14-16.

As Meta explained, Epidemic's position that it has no obligation to identify *any* infringing work is unsupported by the case law.  *See* Dkt. 48 ("Mot.") at 8-10 (collecting cases).  Epidemic's attempts to distinguish these cases do not withstand scrutiny.  Epidemic first suggests that these cases involved infringement allegations where the asserted and accused works were "undeniably different" or "admittedly different."  Opp. 16-17 & n.11 (emphasis omitted).  But Epidemic's argument impermissibly begs the question:  it assumes the premise that the Asserted Works and the allegedly infringing tracks on Meta's platforms are the same works, *without any allegation that could support that premise*.  As alleged in the Complaint, the allegedly infringing tracks are *not* identified on Meta's platforms as Epidemic's works.  *Cf.* Compl., Ex. D.  Rather, as Epidemic concedes, the allegedly infringing tracks are either (1) uploaded by users who are not parties to this litigation as "original audio," titled "original audio" (not the Epidemic track name), and credited to the uploading user (not Epidemic), or (2) delivered by third-party licensors who are not parties to this litigation with different track and artist names (not the Epidemic track or artist name), and credited to the third-party licensor (not Epidemic).  *See id.*  The Complaint does not identify any specific Original Audio or third-party licensor's track that is allegedly an Epidemic track.  Nor does the Complaint otherwise provide any factual allegations connecting any Original Audio or third-party licensor tracks—which Epidemic alleges are stored in Meta's "systems," including Audio Library, and reused, including through the Reels Remix features—to any Epidemic track.  Epidemic's assertion that unidentified tracks available on Meta's platforms are substantially similar to or copies of Epidemic tracks is thus entirely conclusory.  One cannot determine whether two works are "undeniably different" unless one knows the identity of both works and can compare them.  *See Justice v. Uncharted Labs, Inc.*, 2026 WL 1430232, at *2 (S.D.N.Y. May 21, 2026) (dismissing copyright infringement claim because "insufficient facts were alleged to demonstrate substantial similarity to [plaintiffs'] works").

Epidemic next asserts that "none" of Meta's cited cases "are mass infringement cases," and that Meta's argument improperly requires Epidemic to "identify *every infringing copy* of each

Epidemic Track." Opp. 15. But Meta has never made that argument. Instead, Meta's argument is that Epidemic must plausibly allege *at least one* infringing work for each of its Asserted Works, not every copy known or unknown. *See* Mot. 8-9. As to Epidemic's claims related to Audio Library, this requires Epidemic merely to allege the identity of the track in the Audio Library that is purportedly infringing (i.e., substantially similar to) each Asserted Work—not every instance in which that track has been used on one of Meta's services. As to its claims related to Original Audio and Reels Remix, this requires Epidemic merely to allege the landing page for the Original Audio that is purportedly infringing (i.e., substantially similar to) each Asserted Work—not every instance in which that allegedly infringing audio has been used. This is not an outrageous or insurmountable burden to ask Epidemic to bear. But it has not even attempted to shoulder it (indeed, Epidemic has not even identified whether each Asserted Work was allegedly infringed by an Audio Library track, by Original Audio, or both). Whether Epidemic chose to sue over 1 or 1,000 works, its burden under the Federal Rules of Civil Procedure is the same—it must actually provide sufficient allegations to plausibly support the conclusion that infringement of each Asserted Work has occurred. *See* Dkt. 490, Hr'g Tr. (Mar. 9, 2026) at 26:12-14, *EvM I* ("THE COURT: Okay. That's your problem that you decided to bring mass infringement cases. Your burden isn't lessened because you decided to do it that way."). Epidemic cannot simply label this a "mass infringement case" and relieve itself of the burden to plausibly allege its infringement claims.[1]

Epidemic protests that it should not be required to supply allegations about the allegedly infringing works, pointing to cases in which additional facts about infringement "are within the knowledge of the defendant alone." Opp. 14. But the Complaint's allegations do not support that argument. Although Epidemic seeks to paint this as a case in which "mass infringement" is secretly occurring on Meta's platforms beyond Epidemic's ability to discover, there are no factual allegations that support that narrative. Epidemic must have had a Rule 11 basis for its belief that

---

[1] Epidemic's reliance on *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001), is misplaced. As an initial matter, a plaintiff must allege more than a "sample" of specific infringements. *Cf. id.* at 1120. But Epidemic has not even cleared that hurdle either, since it has not identified *a single example* of any allegedly infringing work.

the specific Asserted Works identified in the Complaint have been infringed—it needs to explain what the basis for that belief is, i.e., the identity of the tracks it has identified as infringing. *That* is information that is uniquely in *Epidemic's* possession. In fact, Epidemic does not dispute that it already knows of specific instances of tracks on Meta's platforms that allegedly infringe Epidemic's Asserted Works. Epidemic alleges that 500 of the 1,000 works identified in Exhibit A appear in Meta's Audio Library via distributors—a fact it could only assert if it were already aware of the allegedly infringing matching tracks. *See* Opp. 5 (citing Compl. ¶¶ 29, 33); *see also* Dkt. 1-1. It merely refuses to disclose that information, providing no notice as to which of its Asserted Works is the subject of Epidemic's Audio Library allegations.

And even assuming there is additional, more detailed information about alleged infringement that is peculiarly within Meta's knowledge, that does not relieve Epidemic of the initial burden to identify and accuse an allegedly infringing work forming the basis of each of its infringement claims. For example, Epidemic cites *Brocade*, but in that case the plaintiff *identified the allegedly infringing work*—the defendants' software products. *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011 WL 1044899, at *7-8 (N.D. Cal. Mar. 23, 2011) (plaintiffs alleged defendants "used [their] source code" in defendants' "A10 products" (alterations accepted)).[2] It was not required to allege additional facts about the defendant incorporating the plaintiff's copyrighted computer code in those products because "[s]ource code is often not publicly available," and therefore "it can be difficult or impossible for a plaintiff to examine accused source code before some discovery has occurred." *Id.* at *8. Here, by contrast, Epidemic has had access to a Rights Manager account *for years*, which allows it to monitor content on Meta's services that matches its reference files. *See* Compl. ¶¶ 61-64; Compl., Ex. G.

---

[2] The same is true of many other cases Epidemic cites. *See, e.g.*, *Take-Two Interactive Software, Inc. v. PlayerAuctions, Inc.*, 2025 WL 2459553, at *4 (C.D. Cal. Aug. 26, 2025) ("infringing content" was "GTA V images"); *Etereo Spirits, LLC v. James R. Ling*, 2021 WL 3914256, at *6 (C.D. Cal. July 15, 2021) ("the FAC sufficiently identifies the infringing work" and "specific infringing acts," namely the "download[ing]" of plaintiff's work); *Famous Birthdays, LLC v. Social Edge, Inc.*, 2022 WL 1591723, at *3 (C.D. Cal. Apr. 15, 2022) (plaintiff provided "nine examples" of infringement); *Mahon v. Mainsail LLC*, 2020 WL 4569597, at *2, *6 (N.D. Cal. Aug. 7, 2020) (plaintiff alleged that defendant "received copies of [plaintiff's] Film" and identified specific instances of defendant "showing [the film] without authorization").

Epidemic's reliance on *Facebook* is similarly misplaced. There, Facebook also identified the allegedly infringing work—the defendant's website that copied Facebook website data (user profiles) and then incorporated some of that data into the defendant's website. *Facebook, Inc. v. Power Ventures, Inc.*, 2009 WL 1299698, at *3-4 (N.D. Cal. May 11, 2009). Because Facebook plausibly alleged that the defendant "ma[d]e a 'cache' copy of the website on each occasion of unauthorized access," including "mak[ing] a copy of a user's entire Facebook profile page in order to collect that user content," Facebook did not need to specify more particularly at the pleading stage what subparts of the *asserted* website were protectible to allege a plausible infringement claim. *Id.* at *4. Here, by contrast, Epidemic has not alleged even a prima facie case of infringement as to *any* allegedly infringing work; the information necessary to make such allegations is within Epidemic's knowledge; and Epidemic has confirmed that it knows the necessary information in other allegations in its Complaint.

In response, Epidemic falls back on the argument that even if it could provide the allegations necessary to compare the Asserted Works and the allegedly infringing works, it need not do so because a comparison for substantial similarity is "not required." Opp. 16-17. That argument misstates the law. Epidemic cites *Krafton, Inc. v. Apple, Inc.*, to support this argument. *Id.* (citing 2023 WL 2628068 (C.D. Cal. Feb. 24, 2023)). But that case *supports Meta*. There too the plaintiff actually identified the allegedly infringing work. *Krafton*, 2023 WL 2628068, at *1-3. The court recognized that Ninth Circuit law requires a comparison of the asserted and accused works to determine whether the works are substantially similar. *See id.* at *2. And the court attempted to analyze the two works to determine whether the plaintiff had plausibly alleged that the two works were substantially similar. *Id.* Based on the unique facts of that case, which made it logistically impossible for the court to meaningfully compare the two works,[3] the court

---

[3] The asserted work in *Krafton* was "a non-linear, network-connected, dynamic, and interactive game with infinite outcomes." *Id.* at *1 (citation omitted). "While the Court can view [the allegedly infringing movie] as part of a Rule 12(b)(6) analysis and can attempt to play [the plaintiff's video game] (poorly), given the nature of the [plaintiff's] game there is virtually no way of having a 'typical' gameplay experience, or the same gameplay experience each time, etc." *Id.* at *2. In that unusual circumstance, the court recognized that "the copyrighted item and the alleged infringing material" were only "theoretically" "capable of examination and comparison" at the pleading stage, but not "in any real, meaningful sense." *Id.* (citation omitted).

ultimately concluded that it was not able to analyze the question whether the plaintiff had plausibly alleged substantial similarity as a matter of law at the pleadings stage. *Id.* But, at the same time, the court distinguished the unique facts of *Krafton* from the mine run of cases "where a court is able to examine both the copyrighted work and the alleged infringing work." *Id.* Just because there may be an occasional outlier case where substantial similarity *cannot feasibly be analyzed* at the pleadings stage, that does not mean that a plaintiff is free to withhold any allegation identifying the work accused of infringement.

Finally, Epidemic argues that because the Court denied Meta's motion to dismiss in *EvM I*, it must also deny Meta's motion to dismiss here. Opp. 13. That does not follow. This Court is not bound by its previous ruling. *See* Bryan A. Garner et al., *The Law of Judicial Precedent* 255 (2016) ("[T]rial courts aren't bound at all by other trial-court decisions, or even their own decisions."). And for the reasons set forth above, Meta urges the Court to grant Meta's motion here. Epidemic also objects to Meta's reference of proceedings in *EvM I*, but these objections are unfounded. As explained, "any references to *EvM I* are provided solely for context"—not as an independent factual reason why the claims in this case should be dismissed. Mot. 8 n.2. In any case, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The existence of prior proceedings—including Epidemic's continuous refusal to identify alleged infringing works in *EvM I* and its ultimate dropping hundreds of asserted and accused tracks from that lawsuit, including accused tracks that were "undeniably different" once identified by Epidemic—is part of this "judicial experience."

### B.    Epidemic Fails to State a Claim for Contributory Copyright Infringement

In addition to failing to identify any accused work supporting any of its infringement claims, Epidemic has failed to plausibly allege either (1) that Meta actively induced infringement using Original Audio and Reels Remix, or (2) that Meta tailored those services to infringement. Its opposition does not change that result.

### 1. *Cox Forecloses Liability Based on Material Contribution or the Simple Measures Test*

In its opposition, Epidemic argues that the Supreme Court's recent decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026), does not apply here for two reasons. Opp. 17 n.13; *see also id.* at 19-20. Neither has merit.

First, Epidemic argues that it can still plead a claim under the Ninth Circuit's material contribution standard for contributory copyright infringement because "the Supreme Court did not expressly reject the Ninth Circuit standard on material contribution." *Id.* Whether the Supreme Court "expressly" overruled the Ninth Circuit's simple measures test is irrelevant. The Ninth Circuit has repeatedly recognized that one of its decisions "is no longer good law" when "it is inconsistent with subsequent Supreme Court precedent." *United States v. Fernandez*, 388 F.3d 1199, 1228 (9th Cir. 2004); *accord Taghadomi v. United States*, 401 F.3d 1080, 1087 (9th Cir. 2005) ("[T]he *Delta Country Ventures* approach is flatly inconsistent with the Supreme Court's subsequent decision in *Grubart* and hence is no longer good law."). What matters is not whether the Supreme Court mentioned the Ninth Circuit's material contribution standard by name, but rather whether the Court's decision in *Cox* "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

*Cox*'s standard for contributory infringement and the Ninth Circuit's previous material contribution / simple measures test are "clearly irreconcilable." *Cox* explicitly held that the "*only*" viable theories for contributory infringement are inducement or tailoring to infringement. 146 S. Ct. at 967 (emphasis added).[4] It rejected material contribution (or "aiding and abetting") as a viable theory of liability. *See id.*; *id.* at 969-70 (Sotomayor, J., concurring in the judgment) (recognizing this). And—most relevant to the viability of the simple measures test—it held that

---

[4] Epidemic remarks that Meta "repeatedly cites to case law decided under the pre-existing Ninth Circuit standard," suggesting this is inconsistent with the position that *Cox* overruled the Ninth Circuit's material contribution standard. Opp. 17 n.13. But there is no inconsistency. Those pre-*Cox* cases remain good law to the extent they dealt with inducement or tailoring—the two "specific forms of secondary liability that predated the Copyright Act" and that the Supreme Court was "loath to expand [contributory] liability beyond." *Cox*, 146 S. Ct. at 967.

"contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." *Id.* at 969. But that is precisely what the simple measures test previously did: hold a defendant contributorily liable for direct infringement if it "ha[d] actual knowledge that specific infringing material is available using its system," could "take simple measures to prevent further" infringement, but failed to do so. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007). That standard is "flatly inconsistent" with the reasoning of *Cox* and is therefore no longer good law. *Taghadomi*, 401 F.3d at 1087.[5]

Second, Epidemic argues that, even if *Cox* changed the contributory infringement standard, that new standard applies only to "pure internet service provider[s]." Opp. 17 n.13. This argument fares no better. Nothing in *Cox* suggests that the decision is so limited. Far from announcing a fact-bound decision limited to internet service providers, the Court broadly announced a standard to govern "secondary contributory liability," and infringement liability for *any* "provider of a service." 146 S. Ct. at 967. It explained that its decision brought copyright law as a whole in line with "patent law." *Id.* at 968. And the standard it announced was drawn from "the two forms of liability recognized in *Grokster* and *Sony*," neither of which involved an internet service provider. *Id.* Unsurprisingly, given this framing, *Cox* has since been applied in a range of cases that did not involve ISPs. *See, e.g.*, *Nazemian v. Nvidia Corp.*, 2026 WL 1229583, at *5-7 (N.D. Cal. May 5, 2026) (software); *Ahmed v. Uber Techs., Inc.*, 2026 WL 1127460, at *7-8 (S.D. Fla. Apr. 27, 2026) (Uber Eats); *Cengage Learning Inc. v. Google LLC*, 2026 WL 1266265, at *3-4 (S.D.N.Y. May 8, 2026) (Google's Shopping platform). It applies here too.

### 2. Epidemic Has Not Plausibly Alleged That Meta Induced Infringement

To plead an inducement claim, Epidemic must plausibly allege that Meta engaged in "specific acts" that "actively encourage[d] infringement." *Cox*, 146 S. Ct. at 967. This requires

---

[5] Even if Epidemic were right that the simple measures test survived *Cox*, Epidemic fails to state a claim under that standard anyway because it has not plausibly alleged that Meta had "actual knowledge of specific acts of infringement." *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (quoting *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001)). Indeed, as discussed above, Epidemic has not identified any specific infringing material *at all*—much less alleged Meta's actual knowledge that any specific material is infringing. *See supra* § II.A.

allegations that Meta engaged in affirmative conduct to influence users to infringe. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (explaining inducement requires "[e]vidence of 'active steps taken to encourage direct infringement'"); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) ("The term 'induce' means 'to lead on; to influence; to prevail on; to move by persuasion or influence.'" (quoting *Induce*, Webster's New International Dictionary 1269 (2d ed. 1945))). Epidemic argues that it has pleaded an inducement claim because it has plausibly alleged that Meta "actively developed, promoted, and encouraged its users to use the Audio Library and the OA/RR Features to reuse *unlicensed* music available on its platforms." Opp. 18 (emphasis in original). But this conclusory statement is not supported by any concrete factual allegations in the Complaint.

Indeed, Epidemic does not identify *a single instance* of Meta advertising or promoting the use of Audio Library, Original Audio, or Reels Remix for infringement. At most, Epidemic points to allegations that Meta advertised or promoted use of *the tools generally*, *see* Opp. 18 (citing Compl., Exs. D-F)—not that Meta "promoted and marketed [Original Audio and Reels Remix] as a tool *to infringe copyrights*," as *Cox* requires. *Cox*, 146 S. Ct. at 967 (emphasis added) (quoting *Grokster*, 545 U.S. at 926). That leaves Epidemic with nothing more than allegations that Meta makes Original Audio or Reels Remix "available to users," which users may then ostensibly use for "infringement." Compl. ¶ 36; *see also, e.g.*, *id.* ¶ 58 (Meta allegedly "encourage[s]" infringement by "provid[ing] its users with . . . Original Audio and Reels Remix"); *id.* ¶ 108 (Meta provides its users "with the ability and tools to infringe"); *id.* ¶ 120 (similar). But as the Supreme Court "has repeatedly made clear," "mere knowledge that a service will be used to infringe is insufficient to establish the required intent to infringe" that will support inducement liability. *Cox*, 146 S. Ct. at 968; *id.* ("'[T]here is no precedent in the law of copyright' for liability based only 'on the fact that the defendant has sold equipment with constructive knowledge of the fact that its customers may use that equipment to make unauthorized copies of copyrighted material.'" (citation omitted) (alterations modified)).

Epidemic's cases are easily distinguishable. *See* Opp. 19. Several involved express promotion and marketing of the defendant's own product for infringing uses. *See Columbia*

*Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1036 (9th Cir. 2013) (defendant "active[ly] encourage[d] . . . the uploading of torrent files concerning copyrighted content"); *Amazon Content Servs. LLC v. DeBarr*, 793 F. Supp. 3d 1242, 1249, 1253 (C.D. Cal. 2025) (defendant's service provided "subscribers with unauthorized access to 'more than 13,000 movie titles and over 3,000 television series," and defendant "advertised [the service] on his YouTube channel and gave away free subscriptions of [the service] over a recorded live chat"). Another involved advertising and promotion for a product that *itself* allegedly infringed the plaintiff's copyrighted computer code. *See Beijing Meishe Network Tech. Co. v. TikTok Inc.*, 2024 WL 1772833, at *9 (N.D. Cal. Apr. 23, 2024). And the last involved allegations that the defendant's product enabled users to create copyright-infringing images. *See Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 968-69 (N.D. Cal. 2024).[6]

These cases stand in stark contrast to this one, where Epidemic has not identified a single statement by Meta or "affirmative step" taken by Meta "to foster infringement." Rather, Meta takes numerous steps to *prevent* infringement, such as by maintaining "IP reporting forms" and developing the "Rights Manager" tool, Dkt. 1-7, as well as by implementing terms of use that prohibit users from "shar[ing] anything . . . [t]hat you do not own or have the necessary rights to share" or "[t]hat infringes or violates someone else's rights, including their intellectual property rights," and that grant Meta a license related to all re-use of content uploaded by users (including Original Audio), *Meta Terms of Service* §§ 3.2 & 3.3.2, Facebook, https://www.facebook.com/terms (last visited June 1, 2026);[7] *see Cox*, 146 S. Ct. at 965-66, 968

[6] In addition to being factually distinguishable, *Andersen* is also inconsistent with *Cox*. The court acknowledged that Stability AI's product had substantial noninfringing uses, and it did not identify any allegations demonstrating affirmative conduct by Stability AI encouraging users to infringe, but it nonetheless permitted an inducement claim to proceed based merely on the fact that Stability AI's product could be used to create infringing images. 744 F. Supp. 3d at 968-69. In other words, the court essentially allowed a claim premised only on Stability AI's failure to take action to stop infringement using its product. *Id.* That is incompatible with *Cox*. *See* 146 S. Ct. at 968-69.

[7] Epidemic does not dispute that courts routinely take judicial notice of publicly available terms of service. *See, e.g.*, *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018) (taking judicial notice of past and present versions of Google's terms of service because "they are not the subject of reasonable dispute and their authenticity is not in question"), *aff'd*, 816 F. App'x 68 (9th Cir. 2020). Instead, Epidemic argues only that the terms of use do not apply to "reuses of content"

(rejecting inducement liability in light of Cox's terms of use and enforcement efforts against infringement). Epidemic's allegations thus fall far short of stating a claim for contributory infringement based on inducement.

### 3. Epidemic Has Not Plausibly Alleged That Original Audio or Reels Remix Are Services Tailored to Infringement

Epidemic also argues that it has adequately alleged a contributory infringement claim premised on the theory that Original Audio and Reels Remix are tailored to infringement. Opp. 19-21.[8] This argument fails too.

Epidemic concedes that "[a] service is tailored to infringement if it is 'not capable of substantial or commercially significant noninfringing uses.'" Opp. 20 (quoting *Cox*, 146 S. Ct. at 967). Epidemic repeatedly references its assertions that Original Audio and Reels Remix were "ma[de] . . . available with the designed intent to target and exploit unlicensed audio," and that "infringement is [the] 'primary purpose' of [both] features." Opp. 20 (citation omitted). But Epidemic does not have any plausible, nonconclusory factual allegations to support those assertions. *Cf. Iqbal*, 556 U.S. at 678; *TTEC Digit., LLC v. Go Configure, LLC*, 2025 WL 2469329, at *5 (N.D. Cal. Aug. 27, 2025) (dismissing claim and observing "the second amended complaint contains no specific factual allegations supporting [plaintiff's] conclusory assertion"). They are purely Epidemic's say-so. At the same time, Epidemic does not meaningfully dispute that Original Audio and Reels Remix are in fact used for purposes besides sharing infringing music. *Cf.* Mot. 14-16 (discussing these noninfringing uses). In fact, Epidemic *concedes* (albeit in a footnote) that these features have other uses besides sharing unlicensed music. Opp. 21 n.17. Taken together, none of this plausibly alleges that Original Audio and Reels Remix are tailored to infringement.

---

on Meta's platform. Opp. 19 n.15. But this argument is flatly inconsistent with the terms of use, which applies to the use of any Meta "Products to do or share anything." *Terms of Service* §§ 3.2, 3.3.2. Indeed, Epidemic has acknowledged as much in *EvM I*. *See, e.g.*, Dkt. 442 at 26-27, *Epidemic Sound, AB v. Meta Platforms, Inc.*, No. 3:22-cv-4223 (N.D. Cal. Dec. 19, 2025).

[8] Epidemic nests this argument under a header referencing "material contribution" and repeats its argument that the Ninth Circuit's standard for material contribution survives before addressing the Supreme Court's tailoring standard. *See* Opp. 19-20. As explained above, Epidemic is wrong. *See supra* § II.B.1.

Once again, Epidemic's cases are inapposite. *See* Opp. 20-21. Neither case involved tailoring or a holding that the defendant's product lacked substantial noninfringing uses. In *Fonovisa, Inc. v. Cherry Auction, Inc.*, the Ninth Circuit applied the now-rejected material contribution standard, under which "providing the site and facilities for known infringing activity is sufficient to establish contributory liability." 76 F.3d 259, 264 (9th Cir. 1996). And *Facebook, Inc. v. Power Ventures, Inc.*, similarly denied a motion to dismiss based on inducement and material contribution theories. 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009). Neither supports the conclusion that any of Meta's services lacks substantial noninfringing uses. The Court should dismiss this claim.

### 4. *Epidemic Has Not Justified Its Request for Leave to Amend*

In a footnote, Epidemic briefly requests leave to amend if the Court finds that it failed to state an inducement claim. Opp. 17 n.13. Epidemic "fails, however, to identify any additional facts [it] could allege to state a claim . . . and, consequently, has failed to show the requested further amendment would not be futile." *Ghosh v. City of Berkeley*, 2015 WL 1516925, at *2 (N.D. Cal. Apr. 1, 2015); *see also Wilson v. Target Corp.*, 2025 WL 3114455, at *4 (N.D. Cal. Nov. 6, 2025) (dismissing with prejudice where the plaintiff "offers no facts or legal authority in the opposition brief to support the contention that leave to amend should be granted"). That kind of "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought"—is insufficient to meet Epidemic's burden to justify leave to amend to state an inducement claim. *U.S. Care, Inc. v. Pioneer Life Ins. Co. of Ill.*, 244 F. Supp. 2d 1057, 1065 (C.D. Cal. Nov. 22, 2002) (dismissing with prejudice). And in any event, Epidemic concedes it has no additional facts to allege to state a tailoring claim, since it has not included any similar request for leave to amend that claim—not even a conclusory one. The Court should therefore dismiss Epidemic's contributory infringement claim with prejudice.

## III.    CONCLUSION

Meta's motion should be granted and Epidemic's Complaint should be dismissed.

Dated:  June 1, 2026

**LATHAM & WATKINS LLP**

By  _/s/ Joseph R. Wetzel_
   Joseph R. Wetzel (SBN 238008)
   *Joe.Wetzel@lw.com*
   Brittany N. Lovejoy (SBN 286813)
   *Britt.Lovejoy@lw.com*
   505 Montgomery Street, Suite 2000
   San Francisco, California  94111
   Telephone:  415.391.0600

   Allison L. Stillman (*pro hac vice*)
   *Alli.Stillman@lw.com*
   1271 Avenue of the Americas
   New York, New York  10020
   Telephone:  212.906.1200

   Sarang V. Damle (*pro hac vice*)
   *Sy.Damle@lw.com*
   Brent T.F. Murphy (*pro hac vice*)
   *Brent.Murphy@lw.com*
   555 Eleventh Street, NW, Suite 1000
   Washington, DC  20004
   Telephone:  202.637.2200

   *Attorneys for Defendant*
   *Meta Platforms, Inc.*