UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPIDEMIC SOUND, AB, <br><br> Plaintiff, <br><br> v. <br><br> META PLATFORMS, INC, <br><br> Defendant. | Case No.  25-cv-10355-JSC <br><br> **ORDER RE: MOTION TO DISMISS** <br> Re: Dkt. No. 48 |

Epidemic Sound, AB ("Epidemic") sues Meta Platforms, Inc. ("Meta") for direct and contributory copyright infringement.  (Dkt. No. 1.)[1]  Now pending before the Court is Meta's motion to dismiss.  (Dkt. No. 48.)  Having carefully considered the parties' submissions, the Court considers oral argument unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS Meta's motion to dismiss.  Because Epidemic has not plausibly alleged any of its 1,000 asserted works are substantially similar to any allegedly infringing work, Epidemic fails to state a claim for direct infringement by Meta or a third party.

**BACKGROUND**

**I.    COMPLAINT ALLEGATIONS**

"Epidemic is a global leader in the music industry and is the owner, producer, and distributor of over 50,000 world-class music tracks," including "both the sound recordings and underlying musical compositions within its catalog."  (Dkt. No. 1 ¶¶ 2, 14.)  To use Epidemic's catalog, including on "social media platforms," "Epidemic requires users to enter into a license

---

[1] Record citations are to material in the Electronic Case File ("ECF") in Case No. 25-cv-10355-JSC, unless otherwise stated; pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

with Epidemic." (*Id.* ¶¶ 23-24.) "Meta is one of the most well-known social media and technology companies in the world" and "owns and operates, among other things, the widely used social media platforms and apps Facebook, Instagram and WhatsApp." (*Id.* ¶ 17.)

"Despite the lack of any license to Meta permitting it to make Epidemic's tracks available for its billions of users, and despite the repeated demands made by Epidemic to Meta to cease its infringement, Meta has been offering, and continues to offer, Epidemic's music . . . to all users on Meta's platforms such as Facebook and Instagram, through its Audio Library and through its Original Audio and Reels Remix tools, without authorization." (*Id.* ¶ 25.) Although Meta's infringement includes the 1,000 copyrighted works identified in Docket No. 1-1 (the "Works"), this list is only "a representative sample of Epidemic tracks that Meta is infringing through its Audio Library and/or its Original Audio feature, [and] may be amended as discovery reveals additional infringed works." (*Id.* ¶¶ 25-26; Dkt. No. 1-1.)

Meta has created an "Audio Library," which is "a curated library of music that Meta populates, stores, manages, organizes, [and] makes available to its users . . . for saving, streaming, and synchronization of [] music in video content and posts." (Dkt. No. 1 ¶ 28.) "Meta has included at least 500 of the Works in its Audio Library and has stored, reproduced, made available, and distributed these Works to its users without a license." (*Id.* ¶ 29.)

Meta's "Original Audio" and "Reels Remix" tools also "enable, encourage, and contribute to the massive infringement of Epidemic's works." (*Id.* ¶ 36.) Specifically, Meta gives users "the ability . . . to create and post audiovisual content called 'Reels,' which . . . are video posts often accompanied by an audio component, such as music." (*Id.* ¶ 37.) "In addition to accessing Meta's Audio Library to add music to a Reel, a user may also add to a Reel their own music or the music from another user to the post." (*Id.* ¶ 39.) "Meta refers to this unlicensed music as 'original audio.'" (*Id.*) "Epidemic's music, including several of the Works, have been ripped and reused from Reels by Meta and its users multiple times without a license or proper authorization." (*Id.* ¶ 50.) "Meta also offers the Reels Remix feature, which . . . allows a user to incorporate another user's Reel into their own, including any audio that was included in the original Reel." (*Id.* ¶ 53.) "A substantial number of Epidemic's Works have been and are being reproduced without

2

authorization on Meta's platforms through Meta's Original Audio and Reels Remix features." (*Id.* ¶ 57.)

## II.    PROCEDURAL HISTORY

On December 2, 2025, Epidemic sued Meta for:

(1) direct copyright infringement of sound recordings,
(2) direct copyright infringement of musical compositions,
(3) inducement of copyright infringement of sound recordings,
(4) inducement of copyright infringement of musical compositions,
(5) contributory copyright infringement of sound recordings, and
(6) contributory copyright infringement of musical compositions.

(Dkt. No. 1.)  The Court related this case to Case No. 22-cv-04223-JSC, but denied Meta's motion to stay this case pending summary judgment in Case No. 22-cv-04223-JSC.  (Dkt. Nos. 17, 28, 41; Case No. 22-cv-04223-JSC, Dkt. No. 490 at 126.)  Meta now moves to dismiss Epidemic's complaint.  (Dkt. No. 48.)

**DISCUSSION**

## I.    DIRECT COPYRIGHT INFRINGEMENT (CAUSES OF ACTION I, II)

To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Gray v. Hudson*, 28 F.4th 87, 96 (9th Cir. 2022).  This second element "contains two separate components: [1] 'copying' and [2] 'unlawful appropriation.'" *Skidmore as Trustee for Randy Craig Wolf Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (quotation marks and citation omitted).  First, "[b]ecause independent creation is a complete defense to copyright infringement, a plaintiff must prove that a defendant copied the work." *Id.* (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345-46 (1991)).  Second, "the hallmark of 'unlawful appropriation' is that the works share *substantial* similarities." *Id.* (emphasis in original) (citation omitted).

Although substantial similarity also depends on "a two-part test, . . . [a]t the pleading stage, a court may only apply the first part of the test, what [courts] call the 'extrinsic test.'" *Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 997 (9th Cir. 2025) (cleaned up).  The extrinsic test "assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression," to "ask[] whether—based on articulable, objective factors—*any* reasonable juror

3

could find that the allegedly infringing work is substantially similar to the copyrighted expression." *Id.* (quotation marks and citations omitted). So, after "filter[ing] out the unprotectable elements of the work," a court "must compare the selection and arrangement of elements in the registered works with that in the allegedly infringing works to determine whether [a plaintiff] has alleged substantial similarity." *Id.* (cleaned up); *see also Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158, 159-60 (9th Cir. 2020) ("At the pleading stage, [the plaintiff] must plausibly allege substantial similarity between the two works, . . . [and] [t]he copyrighted and allegedly infringing works must be presented to the court, such that the works are 'capable of examination and comparison.'" (citations omitted)).

Meta moves to dismiss Epidemic's direct infringement claims because Epidemic "does not identify *any* specifically allegedly unauthorized content on Meta's platforms that contains audio substantially similar to *any* of Epidemic's Asserted Works." (Dkt. No. 48 at 14.) Epidemic alleges "Meta . . . offer[s] Epidemic's music," including the 1,000 Works, "through its Audio Library and through its Original Audio and Reels Remix tools." (Dkt. No. 1 ¶¶ 25, 26.) Epidemic also alleges "Meta has included at least 500 of the Works in its Audio Library," and "[a] substantial number" of Works have been "reproduced without authorization . . . through Meta's Original Audio and Reels Remix features." (*Id.* ¶¶ 29, 57.) But Epidemic does not identify or allege any facts about any infringing work in either Meta's Audio Library or its Original Audio and Reels Remix features. Absent such allegations, the Court cannot "compare the selection and arrangement of elements in the registered works with that in the allegedly infringing works to determine whether [a plaintiff] has alleged substantial similarity." *Tangle, Inc.*, 125 F.4th at 997 (cleaned up). So, even drawing inferences in Epidemic's favor, Epidemic has not alleged any facts supporting a plausible inference each of Epidemic's 1,000 asserted Works are—under the extrinsic test—substantially similar to an allegedly infringing work on Meta's platform.[2] And without plausibly alleging substantial similarity, Epidemic cannot state a claim for copyright

---

[2] Epidemic's argument the Court previously denied Meta's motion to dismiss Epidemic's similar complaint in Case No. 22-cv-04223-JSC is unavailing. Not only is the Court's decision in that case not binding, but the Court's decision also preceded the Ninth Circuit's clarification of the pleading requirements in *Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991 (9th Cir. 2025).

United States District Court
Northern District of California

infringement.  *See Skidmore*, 952 F.3d at 1064.

Epidemic's argument the Court need not consider substantial similarity because Epidemic has plausibly alleged "wholesale reproduction of identified works" is unavailing.  (Dkt. No. 51 at 20.)  According to Epidemic, the Ninth Circuit in *Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991 (9th Cir. 2025), only needed to evaluate substantial similarity between the alleged copyright-protected and infringing works because the plaintiff had not alleged the infringing sculptures were exact copies of the plaintiff's copyright-protected sculptures.  *See id.* at 994, 998 (describing similar and different elements of the plaintiff's and the defendant's sculptures).  But even assuming Epidemic is correct that it can avoid presenting the allegedly infringing works if it plausibly alleges those infringing works were "wholesale reproduction[s]" of its Works, (Dkt. No. 51 at 20), Epidemic must still allege facts from which the Court can draw a reasonable inference Meta's platforms had wholesale reproductions of each of its 1,000 Works.  Epidemic does not allege such facts; instead, its complaint includes only conclusory allegations like "Meta has been offering Epidemic's works"; "Meta has included at least 500 of the Works in its Audio Library"; and "Epidemic's music, including several of the Works, have been ripped and reused from Reels by Meta and its users multiple times without a license or proper authorization."  (Dkt. No. 1 ¶¶ 8, 29, 50.)  Because Epidemic's repeated allegations its "Works" are in the Audio Library and uploaded and reproduced as Original Audio are entirely conclusory, they are insufficient to create a plausible inference Meta's platforms contain exact copies or wholesale reproductions of each of its 1,000 Works.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (cleaned up)).

Epidemic's failure to allege facts supporting a plausible inference of exact copying distinguishes this case from several of the cases Epidemic cites.  In *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2011 WL 1044899 (N.D. Cal. Mar. 23, 2011), for example, the plaintiff alleged the defendant "retain[ed] an unauthorized copy of the [allegedly infringed] source code" and "used [that] source code in making and developing the [accused] products," so that "the [accused] products utilize software code copied from, or

5

United States District Court
Northern District of California

substantially similar to, Plaintiffs' copyrighted software code." *Id.* at *8.  Given the plaintiff's specific allegations about how the defendant would have copied the copyrighted work, the Court held the plaintiff "ha[d] alleged facts sufficient to make its copyright claim 'plausible' rather than merely 'possible.'" *See id.*  Similarly, in *Etereo Spirits, LLC v. James R. Ling*, No. 21-cv-00302 (JVS) (KESx), 2021 WL 3914256 (C.D. Cal. July 15, 2021), the plaintiff alleged the defendants "had access to" its copyrighted works during their collaboration, "downloaded [them] after their relationship broke down," and then "used . . . photographs and videos either prepared by [the copyright owner] or depicting him" on their website and "posted the logo and photographs on social media." *Id.* at *1, 6-7 (cleaned up).  And in *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-5780 JF (RS), 2009 WL 1299698 (N.D. Cal. May 11, 2009), the court considered plausible Facebook's allegations the defendants "ma[d]e a 'cache' copy of the website on each occasion of unauthorized access," thereby "mak[ing] a copy of a user's entire Facebook profile page," and capturing Facebook's copyright-protected "graphics, video, and sound files" in the process.  *Id.* at *3-4.  Unlike the plaintiffs in these cases, Epidemic does not allege any facts regarding how Meta obtained Epidemic's Works or, more broadly, how a wholesale reproduction could have been made.  Absent such allegations, the Court cannot draw a reasonable inference any of the allegedly infringing works are exact copies of Epidemic's copyright-protected works.

Epidemic's reliance on other district court cases to argue it has sufficiently alleged Meta's infringing conduct is also unavailing.  In several of these cases, the plaintiffs' complaints included samples of the allegedly infringing works or their advertisement from which the courts could draw a reasonable inference of substantial similarity.  *See, e.g.*, *Famous Birthdays, LLC v. Social Edge, Inc.*, No. CV 21-9562 PA (MRWx), 2022 WL 1591723, at *1 (C.D. Cal. Apr. 15, 2022) (noting the plaintiff "reproduced" in its complaint "[n]ine samples from Defendant's marketing materials . . . show[ing] that [Defendant] is displaying Plaintiff's copyrighted biographies"); *Mahon v. Mainsail LLC*, No. 20-CV-01523-YGR, 2020 WL 4569597, at *2, 6 (N.D. Cal. Aug. 7, 2020) (noting the plaintiff's complaint attached a screenshot showing distribution of the allegedly infringing work on YouTube), *aff'd sub nom. Mahon v. Apple Inc.*, No. 24-3571, 2026 WL 509565 (9th Cir. Feb. 24, 2026).  And although Epidemic relies on the court's rejection of the

defendant's vagueness arguments in *Take-Two Interactive Software, Inc. v. PlayerAuctions, Inc.*, No. 25-cv-01880 (ODW) (JDEx), 2025 WL 2459553 (C.D. Cal. Aug. 26, 2025), that plaintiff alleged far more than Epidemic does here. *See id.* at *2 (noting the plaintiff, who owned the Grand Theft Auto V ("GTA V") copyright, alleged the defendant's website included "thousands of listings for unauthorized, infringing GTA V content" and "infringing images of gameplay from 'Modded' versions of GTA V"); *see also Take-Two Interactive Software, Inc. v. PlayerAuctions, Inc.*, No. 25-cv-01880-ODW-JDE, Dkt. No. 1 ¶¶ 41, 44 (including screenshots of the defendant's marketing for "GTA 5 Modded Accounts" and "promoting [of] a 'PlayerAuctions GTA Marketplace' and 'GTA store,'" as well as "Legit GTA Accounts").

Epidemic also argues it need not allege further facts because it "has sufficiently alleged the facts necessary to put Meta on notice of the nature and grounds of its claims." (Dkt. No. 51 at 15.) But Epidemic does not explain how such a standard is consistent with the Supreme Court's direction "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up); *cf. Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1121 (C.D. Cal. 2001) (before *Iqbal*, holding the "question" whether the plaintiff had stated a direct infringement claim "boils down to whether or not [the defendant] has fair notice of the allegations against it"). Rather than merely plead facts sufficient to put Meta on notice of its claims, Epidemic must plead facts which, accepted as true, create a plausible inference Epidemic is entitled to relief on those claims. *See also Iqbal*, 556 U.S. at 678 (explaining "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully," such that when "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" (cleaned up)). Epidemic has not done so here.

Ultimately, Epidemic's argument the facts it needs are uniquely within Meta's knowledge is unavailing. Under Federal Rule of Civil Procedure 11, by filing this complaint, Epidemic has represented to the Court it has some basis to believe each of the 1,000 asserted Works have been infringed by works on Meta's platform. So, Epidemic must merely allege that factual basis in its

United States District Court
Northern District of California

complaint to plausibly state its direct infringement claim. However, Epidemic's gathering of evidence 869 of its works—at issue in Case No. 22-cv-4223-JSC but not asserted in this case—are substantially similar to other infringing works on Meta's platform, does not make plausible Epidemic's allegation each of the 1,000 Works asserted here are substantially similar to works on Meta's platform.

So, because Epidemic has not plausibly alleged any works on Meta's platform are substantially similar to or exact copies of its 1,000 copyright-protected Works, Epidemic fails to state a direct infringement claim.

## II.      CONTRIBUTORY COPYRIGHT INFRINGEMENT (CAUSES OF ACTION III-VI)

"Contributory copyright infringement is a form of secondary liability with roots in the tort-law concepts of enterprise liability and imputed intent." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794-95 (9th Cir. 2007). However, "[s]econdary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) (quotation marks and citation omitted). Meta moves to dismiss Epidemic's contributory infringement claims because Epidemic has not plausibly alleged any direct infringement by a third party. Epidemic's only response is that it has plausibly alleged direct infringement. But, as explained above, Epidemic has not plausibly alleged any of its Works are substantially similar to any infringing work. So, Epidemic has not plausibly alleged any direct infringement, and the Court grants Meta's motion to dismiss Epidemic's inducement of infringement and contributory infringement causes of action.

### CONCLUSION

For the reasons stated above, the Court GRANTS Meta's motion to dismiss. However, because Epidemic may be able to allege facts regarding the infringing works, the Court grants Epidemic leave to amend to the extent it can plausibly allege Meta's infringing works are substantially similar to each of its copyright protected works. *See Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quotation marks and citation omitted)). Epidemic's amended complaint is due **August 14, 2026**. Epidemic may

8

not add new claims or assert additional works without leave of Court.

The initial case management conference remains on calendar for **September 23, 2026**.

This Order disposes of Docket No. 48.

**IT IS SO ORDERED.**

Dated: July 10, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge

9