LATHAM & WATKINS LLP
Joseph R. Wetzel (SBN 238008)
Brittany N. Lovejoy (SBN 286813)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415.391.0600
Email: *Joe.Wetzel@lw.com*
*Britt.Lovejoy@lw.com*

LATHAM & WATKINS LLP
Allison L. Stillman (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: 212.906.1200
Email: *Alli.Stillman@lw.com*

LATHAM & WATKINS LLP
Sarang V. Damle (*pro hac vice*)
Brent T.F. Murphy (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202.637.2200
Email: *Sy.Damle@lw.com*
*Brent.Murphy@lw.com*

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EPIDEMIC SOUND, AB,<br><br>Plaintiff,<br><br>vs.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | CASE NO. 3:25-cv-10355-JSC<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFF EPIDEMIC SOUND, AB'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Related Case: *Epidemic Sound, AB v. Meta Platforms, Inc.*, No. 3:22-cv-04223-JSC<br><br>The Honorable Jacqueline Scott Corley<br>Hearing Date: November 5, 2026<br>Hearing Time: 10:00 am<br>Courtroom: 8, 19th Floor |

## NOTICE OF MOTION AND MOTION

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 5, 2026, at 10:00 am, or as soon thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley of the United States District Court for the Northern District of California, at the San Francisco Courthouse, Courtroom 8 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Meta Platforms, Inc. ("Meta") by and through its undersigned counsel will, and hereby does, move this Court for an order dismissing, pursuant to Federal Rule of Civil Procedure 12(b)(6), Count II (inducement of copyright infringement) and Count III (contributory copyright infringement) of Plaintiff Epidemic Sound, AB's ("Epidemic") Amended Complaint. Meta's Partial Motion to Dismiss is based on this Notice, the supporting Memorandum of Points and Authorities below, and any additional material and arguments as may be considered in connection with the hearing.

**ISSUE TO BE DECIDED**

Whether Counts II and III of Epidemic's Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: September 11, 2026

**LATHAM & WATKINS LLP**

By /s/ *Joseph R. Wetzel*

Joseph R. Wetzel (SBN 238008)
*Joe.Wetzel@lw.com*
Brittany N. Lovejoy (SBN 286813)
*Britt.Lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415.391.0600

Allison L. Stillman (*pro hac vice*)
*Alli.Stillman@lw.com*
1271 Avenue of the Americas
New York, New York 10020
Telephone: 212.906.1200

Sarang V. Damle (*pro hac vice*)
*Sy.Damle@lw.com*
Brent T.F. Murphy (*pro hac vice*)
*Brent.Murphy@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. Meta And Its Services .......... 2

B. Meta's Rights Manager Tool .......... 3

C. Epidemic And Its Services .......... 3

D. Procedural History .......... 4

1. Epidemic's First Lawsuit (EvM I) .......... 4

2. This Lawsuit (EvM II) .......... 6

III. LEGAL STANDARD .......... 7

IV. EPIDEMIC FAILS TO STATE A CLAIM FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT .......... 7

A. Issue Preclusion Bars Epidemic's Contributory Infringement Claims .......... 8

1. Epidemic Cannot Relitigate Whether Meta Induced Users' Infringement .......... 8

2. Epidemic Cannot Relitigate Whether Original Audio Is Tailored To Infringement .......... 11

B. Epidemic Has Not Plausibly Alleged a Contributory Infringement Claim .......... 12

1. Epidemic Has Not Plausibly Alleged That Meta Induced Infringement .......... 12

2. Epidemic Has Not Plausibly Alleged That Original Audio Is A Service Tailored To Infringement .......... 15

V. CONCLUSION .......... 18

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956 (N.D. Cal. 2024) ....16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....7, 17

*B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015) ....9

*Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018) ....16

*Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026) .... *passim*

*Epidemic Sound, AB v. Meta Platforms, Inc.*, 2026 WL 2001154 (N.D. Cal. July 10, 2026) ....6

*Epidemic Sound, AB v. Meta Platforms, Inc.*, 2026 WL 2021347 (N.D. Cal. July 13, 2026) ....1

*Howard v. City of Coos Bay*, 871 F.3d 1032 (9th Cir. 2017) ....9

*In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017 (N.D. Cal. 2021) ....15

*Janjua v. Neufeld*, 933 F.3d 1061 (9th Cir. 2019) ....8

*Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068 (9th Cir. 2013) ....16

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) .... *passim*

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) ....12

*Rimini Street, Inc. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158 (D. Nev. 2020) ....9

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ....12, 16

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
93 F.4th 222 (4th Cir. 2024), *rev'd*, 146 S. Ct. 959 (2026) ....................................................13

*Tangle, Inc. v. Aritzia, Inc.*,
125 F.4th 991 (9th Cir. 2025) ..........................................................................................6

*Taylor v. Sturgell*,
553 U.S. 880 (2008)..........................................................................................................8, 11

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)..........................................................................................................7

*Trudeau v. Google LLC*,
349 F. Supp. 3d 869 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020) ......................15

*TTEC Digit., LLC v. Go Configure, LLC*,
2025 WL 2469329 (N.D. Cal. Aug. 27, 2025) ........................................................................17

*VHT, Inc. v. Zillow Grp., Inc.*,
918 F.3d 723 (9th Cir. 2019) ............................................................................................16

## I. INTRODUCTION

The allegations of contributory copyright infringement in Epidemic's amended complaint fall short in two fundamental respects: (1) these claims are precluded by the Court's findings in *EvM I*, and (2) even if they were not, they still fail to state a plausible claim on the merits under the Supreme Court's decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026).

*First*, Epidemic's contributory infringement claims seek to relitigate two issues that this Court expressly and unambiguously decided in *Epidemic Sound, AB v. Meta Platforms, Inc.*, No. 22-cv-4223 (N.D. Cal.) (*EvM I*): (1) whether Meta actively encourages its users' infringement by promoting or marketing its Original Audio feature, and (2) whether the Original Audio feature is tailored to infringement. The Court has already answered both questions with a resounding no. In granting summary judgment to Meta on Epidemic's contributory infringement claims in *EvM I*, the Court concluded that there is "no evidence Meta affirmatively encouraged infringement of known copyright-protected works" or that "Meta's advertisements, public statements, actions, or internal communications ever referenced using Original Audio . . . to distribute copyright-protected audio." *EvM I* Dkt. 516 (*EvM I* SJ Op.) at 62–63.[1] In fact, the Court noted that there is "undisputed evidence" to the contrary—namely, "Meta's Terms of Use and enforcement mechanisms to prevent copyright infringement." *Id.* at 62. The Court further concluded that there is no evidence that the only purpose and functionality of Original Audio is to distribute "unlicensed, copyright-protected music" or otherwise "promote infringement." *Id.* at 65–66. Again, it concluded that the record "compels" the opposite inference—that there are "'substantial noninfringing uses' of Meta's Original Audio . . . feature[]." *Id.* at 66. The Court's finding that Epidemic failed to prove Meta's intent to infringe—under either an inducement or a tailoring theory—was dispositive of Epidemic's claims. In Epidemic's own words, this action alleges conduct that is a "continu[ation]" of the conduct in *EvM I*. Dkt. 59 (Am. Compl.) ¶ 1. It alleges the same causes of action, under the same statutory provisions, based on the same Original Audio

---

[1] The Court's opinion is reported at *Epidemic Sound, AB v. Meta Platforms, Inc.*, 2026 WL 2021347 (N.D. Cal. July 13, 2026).

feature and similar alleged conduct by Meta. Issue preclusion thus bars Epidemic from relitigating these issues, which are again dispositive of its contributory infringement claims.

*Second*, even if this Court were to permit Epidemic a second bite at the apple, Epidemic still fails to state a claim for contributory infringement under the Supreme Court's standard in *Cox*. Epidemic fails to plausibly allege that Meta induced infringement or that Original Audio is a service tailored to infringement. That failure is fatal to Epidemic's claims.

For either reason—issue preclusion or failure to plausibly allege a claim—the Court should dismiss Counts II and III of Epidemic's Amended Complaint with prejudice.

## II. BACKGROUND

### A. Meta And Its Services

Meta is one of the world's leading social media and technology companies. *See* Am. Compl. ¶ 22. It owns and operates a wide variety of services that help people share life's moments, nurture and build relationships, find and develop communities, and grow businesses. Facebook and Instagram are two of Meta's social networking services, which individuals from all around the world use every day to connect with others and share vast amounts of creative content. *See id.*

Meta's social networking services permit users to post video content, such as "Reels." *Id.* ¶¶ 37, 69. This video content often has an audio component, with audio sourced from (1) the Audio Library, Meta's catalog of music that users can add to their videos, or (2) Original Audio, audio that users upload as part of their videos, such as the ambient sound captured when the audio was recorded, or a voiceover. *See id.* ¶¶ 37, 70; *see also* Dkt. 59-9 (Ex. I) at 2. A user can select audio for her video from the Audio Library, her own Original Audio, or another user's Original Audio. Dkt. 59-8 (Ex. H) at 2, 4; Ex. I at 2. Any time audio is used, attribution to the source of the audio will appear in the video. *See* Ex. I at 2.

Meta gives users full control over how to share their videos and Original Audio. Users can choose privacy settings for their videos, which determine whether other users can view or share their videos and any accompanying Original Audio, and can change these settings "at any time." Ex. I at 2; Dkt. 59-10 (Ex. J) at 2. If a user chooses a "public" setting, her videos can be shared, and her Original Audio can be used in other users' videos. Ex. I at 2. But if a user chooses a

"private" or "non-public" setting, "only [her] chosen audience (such as [her] friends or followers) can view [her] content," and her Original Audio "cannot be reused by others." Dkt. 59-7 (Ex. G) at 4. And if a user changes the setting of a Reel "from public to private," or if the user deletes the original Reel, "any content that reused [the user's] original audio will be muted." *Id.*; *see also* Ex. J at 2. Users are not permitted to download audio classified as Original Audio. Ex. J at 2. ("If someone creates a reel using [another user's] original audio" and "they download their reel, the downloaded version will be muted.").

**B. Meta's Rights Manager Tool**

Meta provides rightsholders with several tools to protect their copyrighted content on its services. Am. Compl. ¶ 118. One such tool is Meta's "IP reporting forms," which a rightsholder can use if it believes content on one of Meta's services infringes its copyright. Dkt. 59-14 (Ex. N) at 3. Another such tool is "Rights Manager," a content management tool that Meta makes available to some rightsholders and that is designed to help rightsholders protect, authorize, and manage their intellectual property at scale across Meta's services. *See* Am. Compl. ¶¶ 119–20; Ex. N; Dkt. 59-15 (Ex. O) at 2. Rightsholders must meet certain eligibility criteria to gain access to Rights Manager. *See* Ex. N at 1. Even after these factors are satisfied, Meta still has discretion in determining whether to provide a user with Rights Manager. *Id.* at 1–2; Am. Compl. ¶ 121. Meta does not guarantee access to Rights Manager or grant access to Rights Manager as a matter of right. *See* Ex. N at 1–2; Ex. O at 2.

**C. Epidemic And Its Services**

Epidemic is a production music library that owns a catalog of approximately 50,000 tracks. *See* Am. Compl. ¶ 18. Epidemic licenses these works through paid subscriptions, permitting licensees to incorporate Epidemic's tracks into their own content, such as "online video content, podcasts, television and film production, and other media." *Id.* ¶ 19. Epidemic has had access to a Rights Manager account since 2017. *See id.* ¶ 122; *EvM I* Dkt. 383-31 at Request for Admission No. 17.

**D. Procedural History**

**1. *Epidemic's First Lawsuit (EvM I)***

On July 10, 2022, Epidemic sued Meta, alleging direct and contributory copyright infringement. Epidemic alleged that Meta engaged in direct copyright infringement by storing Epidemic's works in its Audio Library and by allowing the use of its audio via its Original Audio and Reels Remix features. *See EvM I* Dkt. 1 (*EvM I* Compl.) ¶¶ 61–62. And it alleged that Meta engaged in contributory copyright infringement by "provid[ing] its users with the ability and tools to infringe"—namely, Audio Library, Original Audio, and Reels Remix. *Id.* ¶ 69 (inducement theory); *see also id.* ¶ 76 (material contribution theory).

After three years of extensive, contested discovery, the parties cross-moved for summary judgment. On July 13, 2026, the Court granted in part and denied in part each party's motions. *EvM I* SJ Op. 114. As relevant here, "[t]he Court grant[ed] Meta summary judgment on Epidemic's contributory infringement claims." *Id.* (emphasis omitted).

As the Court observed, "the provider of a service is contributorily liable for the user's infringement only if it intended that the provided service be used for infringement." *Id.* at 54 (alteration omitted) (quoting *Cox*, 146 S. Ct. at 967). "And 'the intent required for contributory liability can be shown only if the party induced the infringement or the provided service is tailored to that infringement.'" *Id.* (alteration omitted) (quoting *Cox*, 146 S. Ct. at 967). Under that standard, the Court concluded that Meta did not intend that its Original Audio and Reels Remix features be used for copyright infringement. *Id.* at 65.

*First*, the Court concluded that no reasonable trier of fact could find that Meta induced its users' infringement. *Id.* at 61. It explained that "Meta's encouragement of its users to share 'unlicensed' music through the [Original Audio and Reels Remix] features" does not "constitute[] inducement to infringe, that is, active encouragement of infringement." *Id.* at 61. "To the contrary, when a Meta user uploads Original Audio with their Reels, their uploaded audio is contributed subject to Meta's Terms of Use, pursuant to which the user warrants they have the necessary rights to the audio and licenses any reuse of that audio on Meta's platform." *Id.* "So, pursuant to Meta's Terms of Use, the reuse on Meta's platforms of a user's own uploaded audio is not infringement."

*Id.* at 61–62. "Neither is the reuse of another user's content if, as the user warrants through the Terms of Use, the user had authority to share the music for re-use." *Id.* at 62.

The Court further concluded that there is "no evidence Meta affirmatively encouraged infringement of known copyright-protected works." *Id.* at 62. The record contained no evidence that "Meta's advertisements, public statements, actions, or internal communications ever referenced using Original Audio or Reels Remix to distribute copyright-protected audio." *Id.* at 63. "Indeed, the only evidence of the [Original Audio or Reels Remix] Features leading to copyright infringement involves the Epidemic Tracks." *Id.* at 62. And as explained, "there is undisputed evidence of Meta's Terms of Use and enforcement mechanisms to prevent copyright infringement." *Id.*

The Court also rejected Epidemic's argument that "Meta failed to take steps to curb infringement." *Id.* at 63. The Court explained that "inducement requires affirmative acts." *Id.* at 64. In any case, the Court emphasized that "Meta's Terms of Use prohibit copyright infringement on its platform, and Meta has developed tools for reporting and responding to infringement, including takedown forms." *Id.* Because Epidemic offered no evidence that could establish Meta's intent, the Court concluded that Meta was "entitled to summary judgment on an inducement theory of contributory liability." *Id.* at 65.

*Second*, the Court concluded that no reasonable trier of fact could find that Original Audio or Reels Remix are "tailored to infringement." *Id.* at 66. It emphasized that Epidemic provided no evidence that the only purpose and functionality of the tools was to distribute "unlicensed, copyright-protected music" or otherwise "'promote infringement.'" *Id.* at 65–66 (alteration accepted) (citation omitted). Rather, "Meta aimed to compete with TikTok." *Id.* at 66. The Court thus found that "the record compels an inference of 'substantial noninfringing uses' of Meta's Original Audio and Reels Remix features," further reinforcing that no reasonable trier of fact could find that the Original Audio and Reels Remix features were tailored to infringement. *Id.* *EvM I* remains pending before this Court.

**2. *This Lawsuit (EvM II)***

Midway through briefing summary judgment motions in *EvM I*, Epidemic sued Meta again, alleging a "continu[ation]" of the conduct in *EvM I* but as to a different set of 1,000 asserted tracks. Dkt. 1 (Compl.) ¶¶ 1, 6, 26. Meta moved to dismiss, Dkt. 48, and the Court granted Meta's motion on July 10, 2026, Dkt. 58 (MTD Op.) at 1.[2] The Court concluded that Epidemic had "not plausibly alleged any of its 1,000 asserted works are substantially similar to any allegedly infringing work." *Id.* at 1. Specifically, "Epidemic does not identify or allege any facts about any infringing work[s] in either Meta's Audio Library or its Original Audio and Reels Remix features." *Id.* at 4. "Absent such allegations," the Court concluded that it could not "'compare the selection and arrangement of elements in the registered works with that in the allegedly infringing works to determine whether [Epidemic] ha[d] alleged substantial similarity.'" *Id.* (quoting *Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 998 (9th Cir. 2025)). Put differently, "even drawing inferences in Epidemic's favor, Epidemic has not alleged any facts supporting a plausible inference each of Epidemic's 1,000 asserted Works are . . . substantially similar to an allegedly infringing work on Meta's platform," "[a]nd without plausibly alleging substantial similarity, Epidemic cannot state a claim for copyright infringement." *Id.* at 4–5. The Court concluded that having failed to state a claim for direct infringement, Epidemic could not state a claim for contributory infringement, and it thus dismissed those claims as well. *Id.* at 8. But the Court granted Epidemic "leave to amend to the extent it can plausibly allege Meta's infringing works are substantially similar to each of its copyright protected works." *Id.*

On August 14, 2026, Epidemic filed the Amended Complaint. The Amended Complaint withdraws all claims related to Meta's Reels Remix feature. *See, e.g.*, Dkt. 59-16 (Section I.B) (redline comparison). Epidemic alleges direct infringement based on Meta's Audio Library and Original Audio features and provides examples, for each asserted work, of works on Meta's platforms that Epidemic believes are infringing. *See* Am. Compl. ¶¶ 137–149 (Count I); *see also* Dkt. 59-1 (Ex. A) (providing examples). And it alleges contributory infringement based on Meta's

---

[2] The Court's opinion is reported at *Epidemic Sound, AB v. Meta Platforms, Inc.*, 2026 WL 2001154 (N.D. Cal. July 10, 2026).

Original Audio feature on the grounds that (1) Meta induced its users' copyright infringement by "provid[ing] Meta's users with the ability and tools to infringe" and "promot[ing] the Original Audio feature," *see id.* ¶¶ 150–161 (Count II); and (2) Meta provided its users with a tool "specifically designed . . . to make that copyrightable audio separately available for copying, streaming, saving, and synchronization by other users," *see id.* ¶¶ 162–173 (Count III). Epidemic again provides examples of Original Audio that it asserts infringed its asserted works. *See* Ex. A.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, a claim is "plausible" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

## IV. EPIDEMIC FAILS TO STATE A CLAIM FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT

The Supreme Court recently clarified that "[t]he provider of a service is contributorily liable for [a] user's infringement only if it intended that the provided service be used for infringement." *Cox*, 146 S. Ct. at 967. As this Court has recognized, "[t]he intent required for contributory liability can be shown *only* if [1] the party induced the infringement or [2] the provided service is tailored to that infringement." *Id.* (emphasis added); *see EvM I* SJ Op. 59.[3]

[3] To the extent Epidemic *again* suggests that the material contribution standard survived *Cox*, *see, e.g.*, Am. Compl. ¶ 168 (alleging that Meta "materially contributes to [its users'] unlawful reproduction, distribution and performance of Epidemic's copyrighted sound recordings and musical compositions"), this argument has no merit for the many reasons already briefed at length. *See* Dkt. 52 at 7–8; *EvM I* Dkt. 504 at 1–3; *see also EvM I* SJ Op. 54 (acknowledging that inducement and tailoring are the "only" ways to prove intent (quoting *Cox*, 146 S. Ct. at 967)).

Here, issue preclusion bars Epidemic's claim. In any case, Epidemic has not plausibly alleged either affirmative inducement by Meta, or that Meta's Original Audio feature is a service tailored to infringement. Nor can it possibly do so consistent with Rule 11. Its contributory liability claims must therefore be dismissed.

**A. Issue Preclusion Bars Epidemic's Contributory Infringement Claims**

Issue preclusion "bars the relitigation of issues actually adjudicated in previous litigation," *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (citation omitted), "even if the issue recurs in the context of a different claim," *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Its purpose is to "protect against 'the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (citation and alterations omitted).

"For issue preclusion to apply, four conditions must be met: '(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits.'" *Janjua*, 933 F.3d at 1065 (citation omitted). Here, it cannot reasonably be disputed that issue preclusion bars relitigation of whether (1) Meta induced its users' infringement, and (2) Meta's Original Audio feature is tailored to infringement. Both issues were extensively briefed in *EvM I*, and the Court's conclusion that Meta did not induce its users' infringement and that Meta's Original Audio feature is not tailored to infringement was necessary to granting summary judgment in Meta's favor on contributory infringement.

**1. *Epidemic Cannot Relitigate Whether Meta Induced Users' Infringement***

All four factors are readily met regarding the question whether Meta induced its users' infringement.

*First*, the issue at stake in *EvM II* is identical to that in *EvM I*: whether Meta induced its users' infringement by "actively encourag[ing] infringement through specific acts." *Cox*, 146 S. Ct. at 967. In *EvM I*, Epidemic argued that Meta encouraged its users' infringement by "actively promot[ing], market[ing] and intend[ing] to promote infringement via . . . its [Original Audio] Feature[]." *EvM I* Dkt. 508 at 4. So too in *EvM II*. *See* Am. Compl. ¶¶ 154–156. Both cases

assert the same causes of action. And, because Epidemic's contributory infringement claims broadly target the Original Audio feature rather than any work-specific conduct by Meta, resolution of this issue in both cases would involve overlapping evidence. Indeed, the "specific acts" that Epidemic identifies in *EvM II* that are allegedly indicative of inducement are largely identical to those in *EvM I*. *See Cox*, 146 S. Ct. at 967. For example, Epidemic again alleges that Original Audio "enable[s]" the "reuse of copyrightable but unlicensed audio," that "Meta promotes the Original Audio feature" as a tool for infringement, and that Meta's "business model depends on" Original Audio. Am. Compl. ¶¶ 155–156.

In Epidemic's own words, *EvM II* simply alleges a "continu[ation]" of the conduct in *EvM I*. Am. Compl. ¶ 1; *see, e.g.*, *Rimini Street, Inc. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1192–94 (D. Nev. 2020) (finding that the alleged infringer was collaterally estopped from contesting liability where the two lawsuits allege that it "committed the same acts with the same software, the only difference being that those acts occurred during a different time period," even though the lawsuits turned on different licensing agreements). Where the same issue arises in the same "factual setting" and in the context of the same "legal standard," issue preclusion is appropriate. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 155 (2015); *see also Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017) (issues are more likely to be identical when there is "substantial overlap between the evidence or argument" advanced in the proceedings, and the issues "involve the application of the same rule of law").

*Second*, the issue was actually litigated and decided in *EvM I*. In *EvM I*, the Court rejected Epidemic's argument that "there is at least a genuine dispute Meta promoted infringement," concluding instead that no reasonable trier of fact could find that "Meta encourages infringement through its [Original Audio] Feature[]." *EvM I* SJ Op. 60–61. In fact, in *EvM I*, this Court expressly rejected the same arguments that Epidemic makes again here. For instance, Epidemic alleges that because Original Audio "enable[s]" the "reuse of copyrightable but unlicensed audio," Meta induced infringement. Am. Compl. ¶ 155. But this Court has already concluded that no reasonable trier of fact could find that "Meta's encouragement of its users to share 'unlicensed music' through the [Original Audio] feature[] constitutes inducement to infringe, that is, active

encouragement of infringement." *EvM I* SJ Op. 61. Epidemic also alleges that "Meta promotes the Original Audio feature to its users to induce them to reproduce unlicensed copyrighted audio . . . without authorization." Am. Compl. ¶ 155. But this Court has expressly found "[t]o the contrary"; that is, that "no reasonable trier of fact could find Meta's promotion of the [Original Audio] feature constitutes active inducement of infringement." *EvM I* SJ Op. 62. Epidemic further alleges that "Meta's business model depends on the Original Audio tool." Am. Compl. ¶ 155. But this Court has concluded that Meta's "revenues" from Original Audio are "not sufficient for any reasonable trier of fact to find Meta induced infringement through its [Original Audio] Feature[]." *EvM I* SJ Op. 64–65. And Epidemic alleges that the fact that "Meta is capable of disabling the Original Audio tool but has not done so" is indicative of inducement. Am. Compl. ¶ 156. But this Court has already rejected the similar argument that "Meta failed to take steps to curb infringement," emphasizing that "Meta's Terms of Use prohibit copyright infringement on its platform, and Meta has developed tools for reporting and responding to infringement, including takedown forms." *EvM I* SJ Op. 63–64. Despite three years of extensive discovery, Epidemic produced no evidence that "Meta's advertisements, public statements, actions, or internal communications ever referenced using Original Audio or Reels Remix to distribute copyright-protected audio." *Id.* at 63. Epidemic should not be afforded another opportunity to go on a senseless fishing expedition for evidence it failed to unearth in *EvM I* because it simply does not exist.

*Third*, Epidemic had a full and fair opportunity to litigate the issue in *EvM I*. After three years of extensive discovery, the parties cross-moved for summary judgment on contributory infringement. *See EvM I* Dkt. 360 at 32–34; *EvM I* Dkt. 388 at 23–31. The Court heard lengthy argument on the cross-motions. *See EvM I* Dkt. 487. And both parties filed supplemental briefs regarding the effect of *Cox* on Epidemic's contributory infringement claims. *EvM I* Dkts. 504 & 508; *see also EvM I* Dkts. 275, 284 & 290 (the parties' briefing on Meta's motion to stay pending *Cox*).

*Finally*, the issue of whether Meta induced its users' infringement was necessary to decide the merits of Epidemic's contributory infringement claim. Indeed, the Court's conclusion that

Meta did not induce infringement was dispositive: "because a reasonable trier of fact could not find Meta encourages infringement through its [Original Audio] Feature[], Meta is entitled to summary judgment on an inducement theory of contributory liability." *EvM I* SJ Op. 65.

Epidemic is thus precluded from relitigating the issue whether Meta induced its users' infringement via Original Audio.

**2. *Epidemic Cannot Relitigate Whether Original Audio Is Tailored To Infringement***

All four factors are also readily satisfied for the question whether Meta's Original Audio feature is tailored to infringement.

*First*, the issue at stake in *EvM II* is the same as that in *EvM I*: whether Meta's Original Audio feature is tailored to infringement. In *EvM I*, Epidemic argued that Meta's Original Audio feature is tailored to infringement because "Meta developed and implemented the [Original Audio] Feature[] to *specifically identify* content containing *unlicensed* audio . . . and enable reuse of that unlicensed audio," and Original Audio is "'not capable of substantial or commercially significant noninfringing uses.'" Dkt. 508 at 6–7 (citation omitted). Here, Epidemic argues the same. *See* Am. Compl. ¶ 167. Where the feature is the same, and Meta's alleged conduct is the same, and the legal standard is the same, permitting Epidemic to relitigate the question of whether Original Audio was designed or promoted to foster infringement—a finding about the technology's design and business purpose—would risk "inconsistent decisions," which issue preclusion expressly guards against. *See Taylor*, 553 U.S. at 892 (citation omitted).

*Second*, the issue was actually litigated and decided in *EvM I*. In *EvM I*, the Court rejected Epidemic's argument that "the only purpose and functionality of the Original Audio feature" is to "promot[e] the reuse of [infringing] music," explaining that this argument, like Epidemic's argument as to inducement, erroneously "relies on the unsupported assertion [that] 'things that aren't Licensed Music' are predominantly unlicensed, copyright-protected music." *EvM I* SJ Op. 65–66; *see also* Am. Compl. ¶ 167 (nonetheless alleging again that Original Audio is "specifically designed to extract . . . unlicensed, copyrightable audio" for reuse by other users "without license"). The Court emphasized that Meta developed the tool "to compete with TikTok, rather

than to 'promote infringement.'" *EvM I* SJ Op. 66 (citation omitted); *see also* Am. Compl. ¶ 155 (acknowledging that Meta developed Original Audio "to keep up with other video content platforms"). And the Court concluded that Meta's Original Audio feature had "substantial noninfringing uses," a complete defense to contributory infringement even pre-*Cox*. *EvM I* SJ Op. 66 (citation omitted); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442, 456 (1984).

*Third*, for the reasons explained above, Epidemic had a full and fair opportunity to litigate the issue in *EvM I*. *Supra* at 10. And *finally*, for similar reasons explained above, Epidemic had to prove that the Original Audio feature was tailored to infringement in order to survive summary judgment. *Supra* at 10–11. Because "a reasonable trier of fact could not find the Original Audio . . . feature[] [was] tailored to infringement," the Court granted Meta summary judgment on Epidemic's contributory infringement claim based on tailoring. *EvM I* SJ Op. 66.

### B. Epidemic Has Not Plausibly Alleged a Contributory Infringement Claim

Even if Epidemic were permitted to relitigate contributory infringement, Epidemic has not plausibly alleged Meta's intent that Original Audio be used for infringement. *See Cox*, 146 S. Ct. at 967.

#### 1. *Epidemic Has Not Plausibly Alleged That Meta Induced Infringement*

Epidemic has not stated a claim of contributory infringement based on inducement. As this Court has recognized, "[a] provider induces infringement if it actively encourages infringement through specific acts." *EvM I* SJ Op. 59 (quoting *Cox*, 146 S. Ct. at 967); *see also Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 672 (9th Cir. 2017). "'The classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations,' such as by 'advertising an infringing use or instructing how to engage in an infringing use.'" *EvM I* SJ Op. 60 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 926 (2005)). Thus, the defendants in *Grokster* "could be liable for inducing infringement when they 'promoted and marketed their software as a tool to infringe copyrights,' such that 'the "principal object" of their business models "was use of their software to download [and infringe] copyrighted works."'" *Id.* (alteration omitted) (quoting *Cox*, 146 S. Ct. at 967).

When there is “no evidence of express promotion, marketing, and intent to promote infringement” by the defendant, however, “the defendant ‘did not “induce” or “encourage” its [users] to infringe.’” *Id.* at 60 (quoting *Cox*, 146 S. Ct. at 968).

In *Cox*, for example, the Supreme Court found no contributory infringement even where the trial record below “viewed in the light most favorable to Sony, showed more than the mere failure to prevent infringement.” *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 236 (4th Cir. 2024), *rev'd*, 146 S. Ct. 959 (2026). That record included: (1) “evidence that Cox knew of specific instances of repeat copyright infringement occurring on its network”; (2) “that Cox traced those instances to specific users”; (3) “that Cox chose to continue providing monthly internet access to those users despite believing the online infringement would continue because it wanted to avoid losing revenue.” *Id.* It included “extensive evidence about Cox's increasingly liberal policies and procedures for responding to reported infringement on its network, which Sony characterized as ensuring that infringement would recur.” *Id.* And it included internal Cox emails and chats that could be interpreted as “displaying contempt for laws intended to curb online infringement.” *Id.* at 236–37.

Notwithstanding that record, the Supreme Court concluded that Cox could not be found liable for having induced infringement when the plaintiffs “provided no ‘evidence of express promotion, marketing, and intent to promote’ infringement” by Cox. *Cox*, 146 S. Ct. at 968 (quoting *Grokster*, 545 U.S. at 926). A theory based on “supplying a product with knowledge that the recipient will use it to infringe copyrights” is not enough to support inducement liability. *Id.* at 968–69 (citation and alteration omitted). As the Supreme Court observed, such a theory “conflict[s] with this Court's repeated admonition that contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it.” *Id.* at 969.

Epidemic's allegations here fail to plead inducement for the same reasons the plaintiffs in *Cox* could not establish inducement. As in *Cox*, Epidemic does not identify a single instance of Meta “express[ly] promoti[ng]” or “marketing” Original Audio or Reels Remix for infringing uses, *id.* at 968—despite repeatedly being put on notice by Meta and the Court that it must do so, *EvM I* SJ Op. 63 (criticizing Epidemic for failing to provide “any evidence [of] Meta's advertisements,

public statements, actions, or internal communications"); Dkt. 52 at 10–16 (Meta arguing the same in its first motion to dismiss). Nor are there any plausible allegations of Meta "actively encourag[ing] infringement through specific acts." *Cox*, 146 S. Ct. at 967 (citing *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)).

Instead, Epidemic again alleges that Meta is liable for contributory infringement because "Meta's Original Audio feature provides Meta's users with the *ability* and *tools* to infringe." Am. Compl. ¶ 154 (emphasis added); *see also id.* ¶ 155 (alleging that Original Audio "enable[s]" infringement). But these allegations amount to the same theory rejected in *Cox* (and that this Court rejected in *EvM I*, *see supra* at 4–5)—that Meta should be liable merely for supplying a product that potentially can be misused for infringement. As the Supreme Court "has repeatedly made clear," "mere knowledge that a service will be used to infringe is insufficient to establish the required intent to infringe" that will support inducement liability. *Cox*, 146 S. Ct. at 968; *see also id.* ("'[T]here is no precedent in the law of copyright' for liability based only 'on the fact that the defendant has sold equipment with constructive knowledge of the fact that its customers may use that equipment to make unauthorized copies of copyrighted material.'" (citation omitted) (alterations modified)); *Grokster*, 545 U.S. at 939 n.12 ("[A] court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement.").

Moreover, as in *Cox*, Epidemic's own allegations make clear that Meta *prohibits* misuse of Original Audio for infringement and has a robust system in place for combating infringement and empowering rightsholders to protect their intellectual property. *See Cox*, 146 S. Ct. at 968 (rejecting inducement liability in light of Cox's enforcement efforts). For example, Meta's terms of use prohibit users from "shar[ing] anything . . . [t]hat you do not own or have the necessary rights to share" or "[t]hat infringes or violates someone else's rights, including their intellectual property rights," "such as by infringing another's copyright." *Meta Terms of Service* § 3.2, Facebook, https://www.facebook.com/terms/ (last visited Sep. 11, 2026) ("*Terms of Service*"); *see also id.* § 3.3 (providing that users grant a broad license to Meta for the use of any content they upload, subject to these requirements); *EvM I* SJ Op. 61–62 (concluding that Meta's Terms of Use

undermine any finding of inducement).[4] Meta also gives users full control over the privacy settings of their Reels. If a user chooses a "private" or "non-public" setting, her Original Audio "cannot be reused by others," and therefore cannot be put to the allegedly infringing re-uses about which Epidemic complains. Ex. G at 4. Meta also expressly warns users that "[i]f music rights change" on its services, and a user has "added a song to [her] reel that Meta no longer has the rights to, [the] reel will be blocked from being viewed by other people." Ex. H at 2; *see also* Ex. I at 3 ("Keep in mind that as we make sure to uphold our agreements with music rights holders, audio tracks in your posts can become muted as a result of any changes made to these agreements."). Meta also maintains "IP reporting forms," which rightsholders like Epidemic can use to report content on Meta platforms that they believe infringes their copyrights. Ex. N at 3. And Meta has developed "Rights Manager," a content management tool designed to help rightsholders protect, authorize, and manage their intellectual property across Meta's platforms and at scale. *See id.* at 2–3; Ex. O at 2; Am. Compl. ¶¶ 119–120. Tellingly, and unlike the plaintiffs in *Cox*, Epidemic does not even allege it ever used Meta's tools to report any content on Meta's services as infringing. Nor does it allege that it has ever used Rights Manager to block allegedly infringing content that matched to any of Epidemic's tracks.

For all of these reasons, Epidemic has failed to state a claim of contributory infringement based on inducement.

### 2. *Epidemic Has Not Plausibly Alleged That Original Audio Is A Service Tailored To Infringement*

Epidemic also fails to state a claim of contributory infringement based on the theory that Meta's Original Audio feature is a service "tailored to infringement." *Cox*, 146 S. Ct. at 967 (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)). As this Court has recognized, "[a] service is tailored to infringement if it is not capable of substantial or commercially significant noninfringing uses." *EvM I* SJ Op. 65 (quoting *Cox*, 146 S. Ct. at 967). "Courts have found

[4] "Public terms of service and privacy policies are proper subjects of judicial notice." *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1026 n.2 (N.D. Cal. 2021); *see, e.g.*, *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018) (taking judicial notice of past and present versions of Google's terms of service because "they are not the subject of reasonable dispute and their authenticity is not in question"), *aff'd*, 816 F. App'x 68 (9th Cir. 2020).

tailoring when a product has been 'especially' made for infringement; or is 'good for nothing else but infringement.'" *Id.* (first quoting *Sony*, 464 U.S. at 436 & 440, then quoting *Grokster*, 545 U.S. at 932).

In *Grokster*, for example, there was significant evidence that the defendant companies sought to tailor their services to infringing uses, including evidence that "each company showed itself to be aiming to satisfy a known source of demand for copyright infringement, [i.e.,] the market comprising former Napster users"; their "software function[ed] as Napster did except that it could be used to distribute more kinds of files, including copyrighted movies and software programs"; and "neither company attempted to develop filtering tools or other mechanisms to diminish the infringing activity using their software." 545 U.S. at 939. All of this evidence suggested a service designed to enable and promote copyright-infringing uses.

By contrast, the Supreme Court rejected contributory infringement liability premised on the mere sale of the Betamax videotaping product in *Sony*, finding that the Betamax was "capable of substantial noninfringing uses" because it "[wa]s widely used for legitimate, unobjectionable purposes," including "'time-shifting'—the practice of recording a program to view it once at a later time, and thereafter erasing it," which the Court concluded constituted fair use. 464 U.S. at 418, 423, 440–42, 456. The same was true in *Cox*. There, as in *Sony*, the Supreme Court held that Cox did not "provid[e] a service tailored to infringement" because "Internet service [i]s clearly 'capable of "substantial" or "commercially significant" noninfringing use,'" since "Internet access . . . is used for many purposes other than copyright infringement." *Cox*, 146 S. Ct. at 968 (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)); *see also Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1149 (9th Cir. 2018) ("Providing internet access can hardly be said to be distributing a product or service that is not 'capable of substantial' or 'commercially significant noninfringing uses.'" (citation omitted)). Courts have similarly acknowledged substantial noninfringing uses of services like Zillow's real estate websites, AT&T's mobile wireless services, and even Stability AI's artificial intelligence software. *See, e.g.*, *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019); *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013); *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 968 (N.D. Cal. 2024).

So too here. Although Epidemic includes conclusory allegations that "the intention behind the Original Audio feature" is "unlimited copying, sharing, synchronization, and distribution of unlicensed music," Am. Compl. ¶ 83; *see also id.* ¶ 167, it does not include any factual allegations that would support those assertions or make them plausible, *see Iqbal*, 556 U.S. at 678; *TTEC Digit., LLC v. Go Configure, LLC*, 2025 WL 2469329, at *5 (N.D. Cal. Aug. 27, 2025) (dismissing claim where "second amended complaint contains no specific factual allegations supporting [plaintiff's] conclusory assertion"). That is because no such allegations are possible consistent with Epidemic's Rule 11 obligations—especially given the Court's recent express finding to the contrary. *See EvM I* SJ Op. 66.

As this Court has acknowledged, Epidemic cannot plausibly allege that all (or all but an insubstantial number of) uses of Original Audio are infringing, or that the purposes of the feature are exclusively or even predominantly infringement of copyrighted sound recordings. *See id.* To the contrary, the exhibits to the Amended Complaint acknowledge that Original Audio can be "unique audio [a user] created, either while filming [their] reel in the Instagram app or in a video [they] uploaded," Ex. I at 2, and Epidemic does not (and cannot) allege that this "unique audio," such as ambient background noises or a user's original voiceover or musical performance, is always (or even often) infringing. In any case, any user-uploaded audio is contributed subject to Meta's terms of use (which warrants the user has the necessary rights to any audio and licenses any re-use of that audio on Meta's services). *See Terms of Service*, *supra*, §§ 3.2 & 3.3. And any subsequent use is also subject to Meta's terms of use, which make clear that Meta does not intend these features to be used for infringement. *See Terms of Service*, *supra*, §§ 3.2 & 3.3.

Epidemic's contrary theory of liability cannot overcome this. Epidemic asserts that Meta should be found contributorily liable because it provides its users a tool that enables them to engage in copyright infringement and has "actual and constructive knowledge of the specific infringing activity by its users that occurs on its platforms." Am. Compl. ¶¶ 166–167. Even accepting those allegations as true, *Cox* squarely forecloses this theory of liability. The Supreme Court explained that it "has repeatedly made clear that mere knowledge that a service will be used to infringe is insufficient to establish the required intent to infringe." *Cox*, 146 S. Ct. at 968. And it reversed

the Fourth Circuit's contrary holding that "supplying a product with knowledge that the recipient will use it to infringe copyrights is sufficient for contributory infringement." *Id.* at 968–69 (citation and alteration omitted). This controlling precedent requires rejection of Epidemic's theory of contributory liability here.

## V. CONCLUSION

For the foregoing reasons, Meta's motion to dismiss should be granted and Counts II and III of Epidemic's Amended Complaint should be dismissed with prejudice.

Dated: September 11, 2026

**LATHAM & WATKINS LLP**

By *\/s/ Joseph R. Wetzel*

Joseph R. Wetzel (SBN 238008)
*Joe.Wetzel@lw.com*
Brittany N. Lovejoy (SBN 286813)
*Britt.Lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415.391.0600

Allison L. Stillman (*pro hac vice*)
*Alli.Stillman@lw.com*
1271 Avenue of the Americas
New York, New York 10020
Telephone: 212.906.1200

Sarang V. Damle (*pro hac vice*)
*Sy.Damle@lw.com*
Brent T.F. Murphy (*pro hac vice*)
*Brent.Murphy@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*